IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NEXSTEP, INC.,

        Plaintiff,

    v.                               Civil Action No. 19-1031-RGA

COMCAST CABLE
COMMUNICATION, LLC,

        Defendant.

**MEMORANDUM ORDER**

I referred this patent case to a magistrate judge. (D.I. 16). In due course, after briefing, the magistrate judge held a *Markman* hearing. (D.I. 93). The magistrate judge issued a *Markman* opinion. (D.I. 113). Plaintiff objects to some of the constructions, and Defendant responds in support of those constructions. (D.I. 128, 143). I now review *de novo* the constructions to which Plaintiff objects.

While Plaintiff purports to object to four constructions, on the fourth construction – "VoIP" – the objection is essentially just an incorporation by reference of earlier briefing. Since that is insufficient to raise an objection, the purported objection to "VoIP" is overruled.

Plaintiff's objections to the other terms – (1) control device and (2) palm held remote/remote control device – are related. (*See* D.I. 82 at 32) ("Construction for 'control device' is parallel to that for 'palm held remote' and 'remote control device.'"). Nevertheless, I reach different conclusions on the objections.

Plaintiff's argument before the magistrate judge was that "control device" – a term in the '964 patent – had a plain and ordinary meaning, which it described as "a device capable of

controlling a controlled device." (D.I. 113 at 15). It now states that plain and ordinary meaning in more of a means plus function format: "a device for controlling another device." (D.I. 128 at 1). The magistrate judge adopted Defendant's proposed construction – "a simple apparatus, not a universal remote or smart phone capable of acting as a universal remote control, for controlling a device." (D.I. 113 at 15).

Defendant argued prosecution disclaimer, and the magistrate judge agreed. (*Id.* at 16-17). Plaintiff raises numerous objections to the magistrate judge's ruling (D.I. 128 at 1-4), but none of the objections matter unless the fifth objection is correct. The fifth objection is that there was no prosecution disclaimer. (*Id.* at 4-5).

The '964 patent issued in 2017, but it claims priority to a patent application filed in 2006 and further to a provisional application filed in 2005. (D.I. 1-1, Ex. 8, '964 patent at 1:7-47).

The magistrate judge cited five different instances in the prosecution history as the basis for disclaimer. (D.I. 113 at 17, citing D.I. 84, ex. B-34 (Response to Final Office Action (Aug. 4, 2015)), B-35 (Interview Summary and Supplemental Response after RCE to Final Office Action (Sept. 11, 2015)), B-37 at 16 (Applicant's Response to Office Action (Feb. 8, 2016)), B-38 (Final Office Action (March 9, 2016)), B-39 (Applicant's Response to Final Office Action (September 8, 2016))). In its objections, Plaintiff cites one of those five (B-37 at 15), arguing that what is cited is not clear and unmistakable prosecution disclaimer, but merely reliance on "limitations already present in the claims." (D.I. 128 at 5). In response, Defendant (unintentionally) concedes that the magistrate judge's construction may be too limiting: "at most, ... a control device may include a display, menu, input sensors, and/or send and receive signals." (D.I. 143 at 3).

Upon my independent review, I agree with the magistrate judge that there was disclaimer. The clearest place is the chart in which the Applicant lists the "control device" of the invention, and contrasts that with Hayes, about which the Applicant says, "none, only a universal remote control." (D.I. 84-1 (B-39) at 366 of 442). The Applicant twice says, "The distinction between a simple home control device and a universal remote control in these claims has not been given adequate consideration and patentable weight. Our Figure 7 . . . illustrates a simple switch in contrast to a smart phone capable of acting as a universal remote control." (D.I. 84-1 (B-34) at 287 of 442; (B-37) at 319 of 442). What I think was disclaimed was a universal remote control and a smart phone capable of acting as a universal remote control. Thus, based on the entire record, I modify the magistrate judge's proposed construction, and I construe "control device" as "a device, not a universal remote control or smart phone capable of acting as a universal remote control, for controlling another device."

"Palm held remote" appears in the '130 patent. "Remote control device" appears in five other patents (the '753, '669, '710, '132, and '802 patents). The magistrate judge gave both terms the same construction: "a simple handheld device that, in contrast to a smartphone, cannot decode complex data streams, such as IPTV or VoIP." (D.I. 113 at 6, 13).

I note a certain discomfort with the proposed constructions, in that they seem to ignore the "remote" part of the claim. Even though Plaintiff does not object on that basis, Plaintiff does note the plain and ordinary meaning, "devices used to control other devices from a distance." I do not doubt that is the plain and ordinary meaning of a "remote control device," although I do doubt that it captures the "palm held" portion of "palm held remote."

One of Plaintiff's objections is that the magistrate judge relied upon prosecution disclaimer in the '130 patent to limit the different term in the other five patents. (D.I. 128 at 10).

Defendant's response essentially is that Plaintiff conceded the point when it wrote, "The same arguments [made in the reply discussion of palm-held remote] equally apply to 'remote control device.'" (D.I. 143 at 10, citing D.I. 82 at 31). If that were all Plaintiff said, perhaps Defendant would have a point. But on the same page that Defendant points to, Plaintiff writes two sentences that make it clear as day that Plaintiff did not concede that point: "Comcast's citations to the file history are limited to the '130 Patent application . . . . Comcast does not identify **anything** in the file histories [of the five patents] as purportedly supporting its proposed construction [of remote control device]." (D.I. 82 at 31) (emphasis in original). The briefing before me does not assert that the '130 patent prosecution history is relevant to the other five patents (although I do see that all the asserted patents are said to descend from the same provisional patent application (D.I. 82 at 4)). The six patents have a common specification. (D.I. 113 at 14). It appears that the five patents are continuations of the '130 patent, which was a continuation-in-part of the unasserted '103 patent. I do not think disclaimer with regard to a term in a parent patent is necessarily binding (or perhaps even relevant) to the construction of a different term in a child patent.[1]

I have read the sections of the specification that the magistrate judge relied upon to limit the palm held remote. I do not agree with the magistrate judge's analysis of the specification. In no particular order, (1) I do not think the description of the console necessarily means that the palm held remote does not have some or all of the features of the console; it merely means that whether or not the palm held remote has them, the console has to have them; (2) the palm held remote "integrates at least" several limitations, including (and I'm paraphrasing) that it be usable as a telephone, has a display, has the ability "to select and control resources of the console," has

---

[1] In light of my ultimate determination, I do not have to decide the issue.

a keypad, has keys suitable for "web browsing" and has the ability to communicate with the console wirelessly; the "integrates at least" language indicates there can be more unclaimed features; and (3) I do not read the references to the cost or power of a smartphone as disparaging them such that they are disclaimed; rather, they are not required. The magistrate judge cites claim 10 for the proposition that the palm held remote "depends" upon the console for processing power. If that is correct, and a smart phone does not so depend in the accused system, then it won't infringe, but it won't be because it's a smart phone, it will be because it does not meet another limitation. Ditto for the limitation that the console has "resources adapted to" "decode VoIP to a remote control device format . . . ." The console has to have those resources. That does not mean that they are excluded from being a part of the palm held remote.

What about prosecution disclaimer for the '130 patent? Defendant points to various statements in which the Applicant said some version of, "the remote of the invention is a lot simpler and/or cheaper than a smartphone." (D.I. 84-1, Ex. B-2 at 12 ("simpler" and "one-tenth or less the cost of building McQuaide's handheld"); Ex. B-4 at 13-14 ("[favorable] price point" contrasted with "expensive"); Ex. B-50 at 7("price point which will be attractive in the marketplace")).

Prosecution disclaimer is an exacting standard. I do not think it is met here. Essentially, the Applicant claimed "a multi-media and communications system" with many included features. ('130 patent, claim 10). I think the prosecution history is saying that the system works with a simple remote control. That is why it is an improvement over the prior art. That is why it can be a lot cheaper. But the system does not require that the simple remote control have no additional features. It just doesn't need to have any additional features. If those features are in an accused product, it won't matter that they are, because they are simply additional unclaimed features.

Thus, for the '130 patent, I reject the magistrate judge's construction. I agree with Plaintiff that "palm held remote" does not need construction. Jurors will understand the plain meaning of the term. For the other five patents, since "remote control device" is based on the same specification, and since the only prosecution disclaimer asserted is, at most, no more persuasive as to them than it is as to the "palm held remote" term of the '130 patent, I also reject the magistrate judge's construction for "remote control device" and construe it to have its plain meaning.

IT IS SO ORDERED this 9th day of August 2021.

United States District Judge