IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| NEXSTEP, INC., <br><br> Plaintiff; <br><br> v. <br><br> COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Defendant. | Civil Action No. 19-1031-RGA |

## MEMORANDUM OPINION

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON, LLP, Wilmington, DE; Paul J. Andre, Lisa Kobialka, KRAMER LEVIN NAFTALIS & FRANKEL LLP, Menlo Park, CA; Jonathan S. Caplan, Aaron M. Frankel, Marcus A. Colucci, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, NY.

    Attorneys for Plaintiff.

Jack B. Blumenfeld, Brian P. Egan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; William F. Lee, Sarah B. Petty, Kate Saxton, WILMER CUTLER PICKERING HALE AND DORR LLP, Boston, MA; Amy Kreiger Wigmore, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, DC; Mary (Mindy) V. Sooter, Nora Q.E. Passamaneck, WILMER CUTLER PICKERING HALE AND DORR LLP, Denver, CO.

    Attorneys for Defendant.

September 16, 2021


**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is the Magistrate Judge's Report and Recommendations (D.I. 267) regarding Plaintiff's and Defendant's Motions for Summary Judgment and to Exclude Expert Opinions (D.I. 196, D.I. 197). I have considered the parties' objections and responses, but only in relation to the issues raised concerning the two "trouble-shooting" patents. (D.I. 273, D.I. 286). For the reasons set forth below, I am adopting the Report and Recommendation of the Magistrate Judge on all issues except for Mr. Reading's damages opinion. Defendant's motion to exclude Mr. Reading's opinion is granted.

### I.  BACKGROUND

Plaintiff NexStep filed this lawsuit against Defendant Comcast, alleging infringement of several patents relating to personal computing devices and services. The parties cross-moved for summary judgment and to exclude the opposing party's expert reports. (D.I. 196, 197). The Magistrate Judge issued a Report and Recommendation regarding the disposition of those motions. (D.I. 267).

### II.  LEGAL STANDARD

#### A. Standard of Review

The parties agree that the standard of review for a motion to exclude expert opinions is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); (D.I. 273 at 1; D.I. 286 at 3). "A Magistrate Judge's order is contrary to law when the magistrate judge has misinterpreted or misapplied the applicable law." *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 388 (D. Del. 2014) (internal citations and quotations omitted).

#### B. Daubert

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.   The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit.   Qualification refers to the requirement that the witness possess specialized expertise.   We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert."   Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief.   In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity."   Finally, Rule 702 requires that the expert testimony must fit the issues in the case.   In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.   The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury.   *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (footnote and internal citations omitted).[1]

### III. DISCUSSION

Defendant seeks to exclude Mr. Reading's opinions and testimony regarding damages as arbitrary and thus contrary to Federal Circuit precedent. (D.I. 196, D.I. 273 at 4). Plaintiff argues that Mr. Reading's report is adequately based on the facts of this case. (D.I. 286 at 6).

In his expert report, Mr. Reading states that the appropriate royalty rate for the Customer Troubleshooting Patents is based on Comcast's cost savings due to reduced service calls and truck rolls. (D.I. 216 Ex. V ¶ 376). Mr. Reading then notes:

> Clearly, Comcast would not pay 100% of the cost savings realized from the use of this technology, as it would have no incentive to utilize the technology in that case. It is reasonable to conclude that a 50/50 split of the cost savings would be a reasonable starting point for a negotiation of the sharing of the cost savings. (*Id.* ¶ 377).

Finally, Mr. Reading applies the Georgia-Pacific factors to "determine their effect on the 50/50 split" (D.I. 214 at 40) and arrives at a royalty rate of 40% after a net downward adjustment. (D.I. 216 Ex. V ¶¶ 378-79).

Defendant argues that Mr. Reading's choice of a 50/50 starting point for a hypothetical negotiation is a "rule of thumb" that is "unrelated to the facts." (D.I. 273 at 5 (citing *VirnetX Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014))). Plaintiff replies that Mr. Reading's expert report is based on facts specific to this case. First, both parties would recognize that Comcast's use of the patents would result in cost savings "which would be pure profit to Comcast," making Comcast willing to share a high percentage of the cost savings with NexStep.

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the subsequent amendments to it were not intended to make any substantive change.

3

(D.I. 214 at 40). Second, Comcast "would need an incentive to use the technology and thus would likely agree to a license where it retained a meaningful percentage of the savings." (*Id.*).

The Federal Circuit has made it clear that the starting point for a hypothetical negotiation must be tied to "the facts of the case at issue." *Uniloc USA Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). Here, the facts offered by Plaintiff could be true of a negotiation of cost-savings technology (or anticipated profits) by any two parties, meaning that they are not particular to the facts of this case.

In *VirnetX, Inc. v. Cisco Systems, Inc.*, the Federal Circuit rejected a 50/50 starting point based on the Nash Bargaining Solution "without sufficiently establishing that the premises of the theorem actually apply to the facts of the case at hand." 767 F.3d at 1332. Although the *VirnetX* expert opinion estimated royalty rates based on incremental profits, *id.* at 1331, the *VirnetX* court's rationale is equally applicable to the cost savings at issue in the present case, which Plaintiff has acknowledged to be "pure profit to Comcast." (D.I. 214 at 40). While Mr. Reading did not mention the Nash Bargaining Solution, his defense of the use of a 50/50 split as "reasonable" without support by facts specific to these parties does not fare any better. (D.I. 216 Ex. Z ¶ 132). A "25 percent rule of thumb" was similarly rejected by the Federal Circuit in *Uniloc*, 632 F.3d at 1315.

It is true that Mr. Reading applies the Georgia Pacific factors to adjust the 50/50 starting point, but as the *Uniloc* court pointed out, "[b]eginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion." *Id.* at 1317.[2]

---

[2] Plaintiff's citation to *Gree, Inc. v. Supercell Oy*, 2021 WL 514757, at *4-5 (E.D. Tex. Feb. 11, 2021) also falls flat due to the stage of the analysis at which Mr. Reading applied the case-

Because Mr. Reading's opinion failed to support a 50/50 starting point with facts specific to the case at hand, I will grant Defendant's *Daubert* motion with regards to Mr. Reading's damages testimony.

## IV. CONCLUSION

An appropriate order will issue.

---

specific factors. In *Gree*, "[a]fter analyzing the *Georgia-Pacific* factors, [the expert witness] concluded that neither party would have had stronger bargaining power, and thus the parties were likely to meet at the midpoint." *Id.* at *4. In other words, it appears from the opinion that the *Gree* expert analyzed specific factors relating to the case before coming to the conclusion that the parties would "split the difference."

5