**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NEXSTEP, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1031-RGA-SRF |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | |
| LLC a Delaware Limited Liability Company | ) | |
| | ) | |
| Defendant. | ) | |

**NEXSTEP'S MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO FED. R. CIV. P. 50(a)**

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Jonathan S. Caplan
Aaron M. Frankel
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: September 23, 2021

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff
NexStep, Inc.*

## I.      INTRODUCTION

The Court should enter judgment as a matter of law ("JMOL") that the Asserted Claims[1]
are valid and infringed by Comcast because there is not a legally sufficient evidentiary basis for a
reasonable jury to find in Comcast's favor on either issue.[2]

Comcast provided a conclusory invalidity defense, offering only one obvious
combination for each of the Asserted Patents.  Comcast failed to provide a legally sufficient
motivation to combine either pairs of references, failed to provide clear and convincing evidence
that the proposed obviousness combinations meet every element of the Asserted Claims, failed to
provide clear and convincing evidence that its proposed combinations are enabled; and failed to
provide clear and convincing evidence that its proposed combination of Hofrichter and Werth is
prior art to the Asserted Claims of the '009 Patent.  Each of these flaws is an independent basis
to grant JMOL of validity of the Asserted Claims.

Comcast also failed to provide a viable non-infringement defense.  Comcast concedes that
the accused My Account products satisfy every claim limitation except for the "responsive to a
single action" element.  In response to NexStep's showing of overwhelming proof of infringement,
Comcast offered only the unsupported testimony of Dr. Villasenor.  Rather than address NexStep's
actual infringement allegations or the limitations of the Asserted Claims, Dr. Villasenor
misconstrued the Asserted Claims as precluding any process involving more than a single step,
focused on when trouble shooting processes are finished — rather than when they are initiated,

---

[1] NexStep asserts Claims 1, 16, and 22 of U.S. Patent No. 8,280,009 ("the '009 patent") and
Claim 1 of U.S. Patent No. 9,866,697 ("the '697 patent") (collectively, the "Asserted Claims" of
the "Asserted Patents").

[2] This motion supports the oral JMOL arguments NexStep made to the Court on September 22,
2021. (Trial Tr. at 789:10-794:20.) NexStep reserves all appellate rights regarding pre-trial and
trial rulings, including *Daubert*, summary judgment, and evidentiary rulings.

which is what the Asserted Claims require — and failed to rebut NexStep's showing that there are multiple single-button pushes which alone satisfy all of the elements of the Asserted Claims. Therefore, JMOL that Comcast infringes the Asserted Claims is warranted.

## II.    JMOL IS WARRANTED

NexStep's motion for JMOL should be granted because Comcast "has been fully heard on [its defenses] during [the] jury trial and the court [should] find[] that a reasonable jury would not have a legally sufficient evidentiary basis to find for [Comcast] on [those] issue[s]." Fed. R. Civ. P. 50(a). "The question' before the Court is "whether the evidence, construed in the light most favorable to [Comcast], permits only one reasonable conclusion.'" *Shum v. Intel Corp.*, 633 F.3d 1067, 1076 (Fed. Cir. 2010) (citation omitted).

The conclusory and unsupported testimony of Comcast's expert is insufficient to stave off JMOL.[3] "A mere scintilla of evidence presented by [the opposing party] is not sufficient to deny a motion for judgment as a matter of law." *Stewart v. Walbridge, Aldinger Co.*, 882 F. Supp. 1441, 1443 (D. Del. 1995); *see also Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003) ("A scintilla of evidence is not enough for the verdict winner to survive a Rule 50 motion."); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1228 (Fed. Cir. 2011) ("JMOL is appropriate when 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'") (citing Fed. R. Civ. P. 50(a)(1)). "The Court must determine not whether there is literally no evidence supporting the non-moving party, but whether there is evidence upon which the jury could properly find for the non-moving party." *Stewart*, 882 F. Supp. at 1443 (citing *Walter v.*

---

[3] Comcast's only other witness, Mr. Karinshak, admitted he did not know the technical details of how the Accused Products work. *See e.g.*, Trial Tr. 516:3-517:25.

*Holiday Inns., Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993)).  Here, no reasonable jury could find for Comcast.

## III.   NEXSTEP IS ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT THE ASSERTED PATENTS ARE VALID UNDER 35 U.S.C. § 103

JMOL of validity is warranted.  Under 35 U.S.C. § 282, the Asserted Patents are presumed valid and, as the party asserting invalidity as a defense to infringement, Comcast must present "clear and convincing evidence that the patent[s are] invalid" to survive the JMOL.  *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004).  This burden of proof remains on Comcast, and NexStep never bears the burden of proving validity.  *Id.*  Comcast failed to satisfy that burden.

Comcast relied on a single obviousness argument for each of the Asserted Patents. Comcast alleged that the '009 Patent Asserted Claims are obvious over a combination of U.S. Patent 7,260,597 ("Hofrichter") and U.S. Patent Application Publication No. 2011/0022641 ("Werth").  Comcast alleged that Claim 1 of the '697 Patent is obvious over a combination of Hofrichter and U.S. Patent Application Publication No. 2005/0039214 ("Lorenz").

JMOL of validity is warranted because Comcast failed to present: (1) a legally sufficient motivation to combine the asserted references, (2) clear and convincing evidence that its asserted alleged prior art combinations meet every single claim element of the asserted patents, (3) clear and convincing evidence that its alleged combinations are enabled, and (4) evidence supporting that Werth is prior art to the Asserted Claims of the '009 Patent.

### A.   Comcast Failed to Present Legally Sufficient Evidence of Motivation to Combine Either Alleged Obviousness Combination

Comcast's invalidity defense should be disposed of as a matter of law because it failed to provide sufficient evidence that a person of ordinary skill in the art at the time of the invention ("POSITA") would have been motivated to combine Hofrichter with Werth or

Lorenz.  As the party asserting a combination of alleged prior art references, Comcast was

required to specifically address how and why the references in its proposed combinations would

be combined.  *See InTouch Techs.*, 751  F.3d at 1351-53.

Defendant's expert, Dr. Villasenor, failed to substantively offer a basis for a

reasonable jury to conclude that a POSITA would have had a motivation to combine those

references with a reasonable expectation of success, as is required to show obviousness.  *See*

*InTouch Techs., Inc. v. VGO  Commc'ns, Inc.*, 751 F.3d 1327, 1351-53 (Fed. Cir. 2014)

(reversing district court's failure to  grant a JMOL when there was a failure to do a proper

analysis of motivation to combine).  For example, with respect to the proposed combination of

Hofrichter and Lorenz, Dr. Villasenor provided only conclusory testimony, reproduced below,

that was devoid of any evidence other than to note that the references are generally in the same

broad field of customer support:

> Q. What motivation would a person of ordinary skill in the art have had to
> combine the Hofrichter patent with the teachings of Lorenz?
>
> A. Again, Hofrichter and Lorenz are in the same field of endeavor. A person
> of ordinary skill in the art would have understood that there was a
> reasonable expectation of success when combining elements to -- to result
> in this claim and would have understood that it would not have required
> undue experimentation -- undue experimentation, and the resulting claim
> would have been extremely narrow and is obvious in addition to that.

*See, e.g.,* Trial Tr. 669:11-21; *see also*, Trial Tr. at 664:7-17 (Dr. Villasenor providing

conclusory statements about the motivation to combine Hofrichter with Werth).

Without evidence of a motivation to combine, Dr. Villasenor's opinion was based on

legally impermissible hindsight.  Critically, Dr. Villasenor did not explain why a POSITA would

have been motivated to take certain aspects of Werth or Lorenz and incorporate those aspects

into Hofrichter (or vice versa) in a way that would yield the method and systems of the Asserted

Claims.  Dr. Villasenor presented no evidence that it would be obvious to try such a combination other than bald *ipse dixit* testimony.  Trial Tr. 664:7-17, 669:11-21; *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1338 (Fed. Cir. 2013) (concluding that *ipse dixit* statements by an expert are insufficient to sustain an invalidity case).  And Dr. Villasenor did not contend that there were only a finite number of identified, predictable solutions.  *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

Dr. Villasenor's testimony that Hofrichter is in the same general customer service field as Werth and Lorenz is insufficient to provide a motivation to combine.  *See Microsoft Corp. v. Enfish, LLC*, 662   F.App'x 981, 990 (Fed. Cir. 2016) (rejecting obviousness argument because the petitioner gave no evidence of a motivation to combine "except that the references were directed to the same art or same techniques").

Further evidence of the absence of any motivation to combine is that Dr. Villasenor did not provide substantial evidence on how Hofrichter would operate or work in combination with Werth or Lorenz.  *See ActiveVideo,*   694 F.3d at 1327 (finding non-obviousness in part because of a failure to explain "how specific   references could be combined" or "how any specific combination would operate"); *Broadcom*,   732 F.3d at 1335 (requiring "plausible rational . . . as to why the prior art references would have  worked together") (citations omitted).

Accordingly, the Court should grant JMOL on the issue of obviousness.

**B.      Comcast Failed to Present Clear and Convincing Evidence That Its Asserted Alleged Prior Art Combinations Meet Every Single Claim Element of the Asserted Patents**

Comcast did not present clear and convincing evidence that the asserted combinations satisfied all elements of any of the Asserted Claims.  Therefore, JMOL of validity is appropriate.

### 1.    Hofrichter and Werth Do Not Disclose the Elements of the Asserted Claims of the '009 Patent

Hofrichter and Werth, to the extent they could even be combined, do not disclose the elements of the Asserted Claims of the '009 Patent.  Dr. Villasenor did not map the alleged concierge device and alleged home gateway in Hofrichter to any claim limitation.  For example, Dr. Villasenor argued that Hofrichter's "aggregator agent" is a concierge device, but failed to explain how the aggregator agent performs the actions of the claimed concierge device.  Trial Tr. at 663:12-24.

Dr. Villasenor did not testify that the "aggregator agent" meets all of the elements of Claim 1 of the '009 Patent.  For example, Dr. Villasenor did not identify any disclosure in Hofrichter that the aggregator agent is associated with a consumer device, of taking action in response to a single action performed by a user, causing a home gateway to buffer consumer devices identification information for the selected consumer device, determining a support center for a support session, initiating a support session for the consumer device, forwarding automatically the consumer device identification information during the support session, a support session bypassing an automated attendant or interactive voice recognition, or initiating an automated support protocol as required by Claims 1, 16, and 22 of the '009 Patent.  Trial Tr. at 663:12-24.  Moreover, for Claims 16 and 22, Dr. Villasenor failed to show that the "aggregator agent" meets the limitation "associating the concierge device with a selected consumer device including selecting the consumer device from a menu of candidate consumer device known to a home gateway."  Trial Tr. at 665:14-20; *see also* Trial Tr. at 666:1-16 (relying on Werth's "aggregator agent" as the concierge device and "centralized servers" as the home gateway).

Dr. Villasenor also failed to show that the limitation of "responsive to a single action performed by a user" is disclosed by Hofrichter with Werth.  Trial Tr. at 660:5-663:24.  For the

limitation "causing the home gateway to buffer consumer device identification for a selected consumer device," Dr. Villasenor failed to show that Hofrichter with Werth would disclose buffering consumer device identification at a home gateway.  Trial Tr. at 715:20-22 (testifying that he does not recall if Hofrichter discloses "buffer").

Nor did Dr. Villasenor show that Hofrichter with Werth determines a support center for a support session because simply downloading a file or a manual in advance of a problem is not support session.  Trial Tr. at 661:19-662:14.  In addition for the limitation "causing the home gateway to initiate the support session for the consumer device and to forward automatically the consumer device identification information during the support session," Dr. Villasenor was unable to identify what "device identification" is sent *during* the support session as opposed to in initiating a support session.  Trial Tr. at 662:15-21 (Dr. Villasenor testifying that the device identification is sent to select a server, but failing to address the requirement that the device identification is sent during the support session), 713:24-714:5 (Dr. Villasenor confirming that a "device ID goes to download a service application"), 714:21-25 (Dr. Villasenor confirming that the device identification is sent to initiate a session and is not sent again).  While Dr. Villasenor argued that Hofrichter with Werth discloses an automated support protocol, he failed to identify any support for that opinion.  Trial Tr. at 662:22-663:4.  Accordingly, Dr. Villasenor failed to meet his burden for obviousness.

Dr. Villasenor's analysis for Claims 16 and 22 is deficient for the same reasons as Claim 1.  In addition, for Claim 16, Dr. Villasenor failed show that Hofrichter and Werth disclose the "associating the concierge device with a selected consumer device including selecting the consumer device from a menu of candidate consumer device known to a home gateway" limitation.  Trial Tr. at 665:14-20.  For Claim 22, Dr. Villasenor failed to show that Hofrichter with Werth

discloses home gateway that is a cloud based device.  Trial Tr. at 666:1-16.  Thus, Dr. Villasenor failed to meet his burden in regards to Claims 16 and 22.

Accordingly, no reasonable juror could find Claims 1, 16, and 22 invalid over Hofrichter and Werth, and JMOL of validity of those claims is warranted.

### 2. Hofrichter and Lorenz Do Not Disclose the Elements of Claim 1 of the '697 Patent

Comcast's proposed combination of Hofrichter and Lorenz does not disclose the elements of Claim 1 of the '697 Patent.  Dr. Villasenor's testimony on this proposed combination was entirely conclusory.  *See generally* Trial Tr. at 666:24-669:5.  Dr. Villasenor's threadbare testimony is legally insufficient.

Specifically, Dr. Villasenor does not provide any analysis for the limitations "responsive to a single user action directed to the concierge device, automatically determining which of a plurality of service centers with which to initiate an interactive support session and initiating an interactive support session with the determined service center, wherein the determined service center supports the particular device, including automatically transmitting to the determined service center, via a second two-way non-audio data channel, identifier information from which the determined service center can uniquely identify the particular device" and "wherein during the interactive support session the concierge device relays diagnostic requests from the determined service center to the particular device and relays responses by the particular device back to the determined service center via the second two-way non-audio data channel."  Indeed, Dr. Villasenor did not identify in Hofrichter combined with Lorenz a plurality of service centers and failed to show that diagnostic requests are relayed from a service center to a particular device as well as responses from the concierge device to the service center.

For the other claim limitations, Dr. Villasenor failed to address the claim requirements. For example, for the "receiving…" limitation, Dr. Villasenor failed to show that the combination of Hofrichter and Lorenz discloses a "first signal" that "includes a device identifier that identifies a particular device." Trial Tr. at 667:2-18 (Dr. Villasenor ignoring the claim limitation). Similarly, for the "conducting…" limitation, Dr. Villasenor failed to show that Hofrichter and Lorenz disclose using an audio channel during an interactive support session. Trial Tr. at 755:5-757:23. Thus, Comcast has not provided evidence that a combination of Hofrichter and Lorenz discloses all elements of Claim 1 of the '697 Patent. Accordingly, JMOL of validity is warranted.

### C.    Comcast Failed to Present Clear and Convincing Evidence That its Asserted Alleged Prior Art Combinations are Enabled

A further reason that Comcast did not meet its burden to prove obviousness by clear and convincing evidence is the total absence of any evidence that its proposed combinations of prior art are enabled. Recently, the Federal Circuit clarified that to render a patent claim obvious, the prior art, ***taken as a whole***, must enable a skilled artisan to make and use the claimed invention. *Id.* (emphasis added). *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1380 (Fed. Cir. 2021) (reversing the PTAB's decision that a patent is unpatentable as obvious because the prior art combination was not enabled).

Further, as the party challenging validity, Comcast has the burden to put forth evidence that its proposed combination is enabled, such that a POSITA could make or use the claimed invention. *Helifix Ltd. v. Blok–Lok Ltd.,* 208 F.3d 1339, 1346, 54 USPQ2d 1299, 1303 (Fed. Cir. 2000) ("An issued patent is presumed valid and the burden is on the party challenging the validity of a patent to show that it is invalid by clear and convincing evidence."); *Budde v. Harley-Davidson*, Inc., 250 F.3d 1369, 1376 (Fed. Cir. 2001) ("Because the claims of a patent are afforded

a statutory presumption of validity, overcoming the presumption of validity requires that any facts supporting a holding of invalidity must be proved by clear and convincing evidence.").

Because determining whether prior art is enabling is a question of law based upon underlying factual findings, this issue is ripe for judgment as a matter of law, given the total absence of evidence of enablement. *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002) ("whether a prior art reference is enabling is a question of law based upon underlying factual findings"); *see also Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1334 (Fed. Cir. 2003).

Comcast failed to meet its burden to present evidence at trial, much less clear and convincing evidence, that Comcast's prior art combinations are enabled.  Dr. Villasenor alleged that Hofrichter in view of Werth '641 render obvious claims 1, 16, and 22 of the '009 Patent. 9/22/2021 Trial Tr. at 657:19-666:23.  Dr. Villasenor also presented testimony that Hofrichter in view of Lorenz render obvious claim 1 of the '697 Patent.  09/22/2021 Trial Tr. at 666:22-669:10. However, Dr. Villasenor presented no evidence that either of these combinations taken as a whole enable a skilled artisan to make and use the claimed inventions of the '009 and '697 Patents. 09/22/2021 Trial Tr. at 599:7671:21.  In fact, Dr. Villasenor did not discuss enablement of these combinations at all.  *Id.* Accordingly, NexStep is entitled to judgment as a matter of law that Comcast has not demonstrated that either the '009 or '697 Patents are obvious.

### D.    Villasenor Failed to Prove Werth is Prior Art to the '009 Patent

NexStep swore behind Werth by showing that Dr. Stepanian conceived the '009 Patent prior to the July 20, 2010 filing date of Werth and reduced his invention to practice with reasonable diligence.  09/20/2021 Trial Tr. at 180:25-200:11.  Priority of an invention "goes to the first party to reduce an invention to practice unless the other party can show that it was the first to conceive the invention and that it exercised reasonable diligence in later reducing that invention to practice."

*Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). The Federal Circuit defines "reasonable diligence" as continuous activity toward reduction to practice so that the invention's conception and reduction to practice are substantially one continuous act. *Id.*

NexStep filed a provisional patent application on January 5, 2011 and the '009 Patent application on January 6, 2012. NexStep presented the unrefuted and unchallenged testimony of inventor Dr. Stepanian to establish that he conceived the claimed inventions in the Spring of 2010, several months before the July 23, 2010, publication date of Werth. 09/20/2021 Trial Tr. at 180:25-200:11 ("Q. Do you recall what the idea was at the time frame when you came up with the ideas that found a way into these two patents? A. I do. It was spring of 2010 and . . . this is when I conceived the idea. That's right."). In fact, Dr. Stepanian explained to the jury his handwritten sketch which captures the cloud concierge device invention covered by the '009 and '697 Patents. Trial Tr. at 184:6-187:20 (discussing how PTX-1126 covers the '009 and '697 Patents). Dr. Stepanian also provided evidence of his diligence from conception until the provisional application was filed:

- PTX-1038, dated May 7, 2010, refines the concept sketched in PTX-1126. Trial Tr. at 187:21-190:1.

- PTX-1068, dated June 28, 2010 captures a mock-up of the user interface for the cloud concierge device. Trial Tr. at 190:17-192:8.

- PTX-1128 dated July 9, 2010 provides a revision of the user interface in PTX-1068. Trial Tr. at 192:16-193:8.

- PTX-1036 dated August 26, 2010 provides a further revision of the user interface in PTX-1068. Trial Tr. at 193:9-194:3.

- PTX-1144 dated November 29, 2010 shows Dr. Stepanian's efforts to introduce NexStep's technology, including the Concierge Device to his then-current business partner IBM. Trial Tr. at 195:17-197:1.

- PTX-1171 is the provisional application for the '009 and '697 Patents filed on January 5, 2011. As noted by Dr. Stepanian, the provisional was filed to protect his

intellectual property prior to its disclosure at the Consumer Electronics Show in 2011.  Trial Tr. at 181:4-182:7; 197:23-198:13.

This evidence exemplifies Dr. Stepanian's reasonable diligence to his constructive reduction to practice with the filing of the January 5, 2011 provisional application (PTX-1171), which the '009 Patent claims priority to. Comcast failed to refute this evidence. *See* Trial Tr. at 211:10-253:9 (Dr. Stepanian's cross-examination). The Werth reference is only entitled to a priority date of July 23, 2010 based on the face of the patent [DTX-588 at 1]. Dr. Villasenor failed to provide evidence that challenges the '009 priority date. Trial Tr. at 710:24-712:4; *see generally*, Trial Tr. 599:7-671:21. Given Werth's earliest priority date is July 23, 2010, NexStep is able to swear behind Werth and disqualify it as a prior art reference.

## IV.    NEXSTEP IS ENTITLED TO JMOL THAT COMCAST INFRINGES THE ASSERTED CLAIMS OF THE ASSERTED PATENTS

NexStep is entitled to JMOL that Comcast infringes the Asserted Claims.  NexStep provided overwhelming evidence that Comcast directly infringes the Asserted Claims and, in addition, induces its customers to infringe Claim 1 of the '009 Patent.  NexStep proved that Comcast literally infringes or, at a minimum, infringes under the doctrine of equivalents by making, using, selling, and/or offering for sale in the United States, the Accused Products.  As demonstrated below, based on the evidence presented at the trial, no reasonable jury could find that the Accused Products do not meet every limitation of the asserted claims, either literally or under the doctrine of equivalents. Accordingly, the Court should grant NexStep's motion for judgment as a matter of law.

### A.    No Reasonable Jury Could Find That the Accused Products Do Not Infringe Claims 1, 16, and 22 of the '009 Patent.

NexStep's evidence establishes that Comcast directly infringes Claims 1, 16 and 22 of the '009 patent, and no reasonable jury could find otherwise.  Claim 1 is a method claim directed to

initiating a support session for a consumer device using a "Concierge Device."  JTX-02 ('009 Patent) at Claim 1.  Claim 16 claims the "Concierge Device" itself.  JTX-02 ('009 Patent) at Claim 16.

The first element of Claim 1 associates the concierge device with a selected consumer device.  JTX-02 ('009 Patent) at Claim 1.  Claim 16 similarly requires associating the concierge device with a selected consumer device, but adds a requirement of including selecting the consumer device from a menu of candidate consumer devices known to a home gateway.  JTX-02 ('009 Patent) at Claim 16.  The remaining claim limitations for Claims 1 and 16 are identical, and involves the concierge device communicating with a home gateway, responsive to a single action performed by a user, including causing the home gateway to buffer consumer device identification information for the selected consumer device and determine a support center for a support session, and causing the home gateway to initiate the support session for the consumer device and to forward automatically the consumer device identification information during the support session, thereby allowing the support session either to bypass an automated attendant or interactive voice recognition system or to initiate an automated support protocol.  JTX-02 ('009 Patent) at Claims 1 and 16.

Claim 22 claims the concierge device of claim 16, wherein the home gateway is a cloud-based device to which the concierge device sends messages via a network that extends outside the home.  JTX-02 ('009 Patent) at Claim 22.  The Court construed "concierge device" to mean "a device including functionality for the remote control of at least one consumer device and that meets the other claim requirements," which NexStep's expert Dr. Selker applied.  Trial Tr. at 307:11-308:11.  Comcast does not dispute Xfinity My Account meets the Court's claim construction of "concierge device."  Trial Tr. at 685:8-686:5.

NexStep set forth substantial evidence to support that the Accused Products are a concierge device that initiates a support session to automatically diagnose or troubleshoot consumer devices, such as set-top boxes, routers, modem, gateways, and home security devices.  PTX-381; PTX-517; PTX-631; Trial Tr. at 315:14-322:17; 322:18-326:16.  Comcast does not dispute this element. Trial Tr. at 684:9-25.

Comcast concedes that the infringement alleged by NexStep takes place in the United States.  Trial Tr. at 463:24-464:8, 470:17-18. Comcast is headquartered in Philadelphia.  Trial Tr. at 463:24-464:8.

For Claim 16's device, NexStep explained how all the required elements are met by the Xfinity My Account App operating on smartphones because they include wireless data communication adapters (e.g., radio, such as WiFi and Bluetooth), one or more input sensors (e.g., touchscreen, sensors, effectors), one or more outputs (e.g., display), processors (e.g., CPUs), and memory (e.g., Flash memory and RAM).   Trial Tr. at 257:1-258:1, 372:5-376:4.

Further, set-top boxes also meet the requirements of the concierge device of Claim 16 because they include wireless data communication adapters (e.g., wireless communication of the remote), one or more input sensors (e.g., IR, RF inputs for the remote, cable inputs), one or more outputs (e.g., display output, remote), processors (e.g., CPUs), and memory (e.g., Flash memory and RAM).  *Id*.

The Accused Products also associate with the consumer devices, which is demonstrated in the My Account App's display of a menu of all the customer's Comcast devices.  PTX-187 at 13, 14, 18; PTX-626 at 3; PTX-637 at 99; Trial Tr. 257:1-262:15; 340:11-349:15.  Comcast does not dispute this limitation. Trial Tr. 685:1-6.  The Accused Products, responsive to a single action of launching the Xfinity Assistant, communicate with the Xfinity Backend cloud servers (i.e., home

gateway) and perform issue detection of all the customer's Comcast consumer devices.  PTX-393 at 1, 2, 3; PTX-381 at 2; PTX-68 at 4; PTX-637 at 173; Trial Tr. at 340:11-349:15.

The Accused Products, also responsive to the above single action, cause the Xfinity Backend (e.g., AIQ and CONVOY) to buffer consumer device identification information for each of the consumer devices (e.g., serial number, mac address, etc.) and determine a support center (e.g., generating the URL to contact the appropriate support center based on the device type and issue) for a support session (e.g., triggering issue detection for the troubled device).  PTX-522 at 4; PTX-379 at 1; PTX-68 at 4; PTX-637 at 144; PTX-637 at 152; PTX-637 at 128; Trial Tr. at 257:1-262:15.  Additionally and still responsive to the above single action, the Xfinity Backend initiates the issue detection and forwards automatically the consumer device identification information, which is needed to communicate with the consumer devices to remotely access the devices.  PTX-381 at 2; PTX-512 (native) at 1; PTX-522 at 58; PTX-637 at 129; Trial Tr. at 296:22-297:24; 360:19-372:4.

Without any further action from the user, if the My Account App detects an issue with any consumer device, a troubleshooting card appears in the Xfinity Assistant, which provides a suggested solution to fix the solution, such as an option to restart or refresh the consumer device (i.e., an automated support protocol).  *Id.*  This process also bypasses any automated attendant or interactive voice recognition system.  *Id.*  Comcast does not dispute this limitation. Trial Tr. at 686:6-11.  At the very least, the "responsive to…" element is met under the doctrine of equivalents because it performs the same function, way, and result.  Trial Tr. at 382:19-385:16.

NexStep demonstrated that the only additional limitation of dependent Claim 22 is met because the home gateway operates on a cloud-based device (e.g., Xfinity Backend) to which

Xfinity My Account sends messages via a network that extends outside the home.  PTX-68 at 4; Trial Tr. at 379:25-382:19.  Comcast does not dispute this claim.  Trial Tr. 687:9-13.

Comcast's sole non-infringement defense is predicated on the incorrect premise that a "single action" must be a single button press that causes the home gateway to "buffer consumer device identification information for the selected consumer device and determine a support center for a support session."  Trial Tr. at 684:9-687:13.  However, even under Comcast's incorrect view of the meaning "single action," NexStep indeed proved that the Accused Products meet the single action requirement by simply pressing the Xfinity Assistant button, even under Comcast's narrow interpretation.  PTX-393 at 3; PTX-381 at 2; PTX-68 at 4; PTX-637 at 173; Trial Tr. at 324:2-326:6; 329:13-330:16; 340:11-349:15.  Thus, no reasonable jury could find that Comcast does not infringe, regardless of which party's version of "single action" they apply, and the Court should thus grant NexStep's motion because Comcast has not submitted sufficient evidence to rebut NexStep's infringement claims under either literal infringement or the doctrine of equivalents.

Because Comcast's only non-infringement argument for the '009 patent lacks any legal or evidentiary basis, the Court should grant NexStep's motion for a judgment that Comcast directly infringes Claims 1, 16, and 22 of the '009 patent as a matter of law.

**B.**      **No Reasonable Jury Could Find That the Accused Products Do Not Infringe Claim 1 of the '697 Patent.**

NexStep's evidence also establishes that Comcast directly infringes Claim 1 of the '697 Patent, and no reasonable jury could find otherwise.  Claim 1 of the '697 patent covers a concierge device which includes at least one processor and memory holding computer instructions that, when executed on one or more processors of the concierge device, cause performance of a method of supporting a device.  JTX-06 ('697 Patent), Claim 1.  The method of Claim 1 includes receiving a first signal from a particular device to be supported, via a two-way wireless, non-audio data

channel used by the particular device to provide diagnostic related information to the concierge device, wherein the first signal includes a device identifier that identifies the particular device. JTX-06 ('697 Patent), Claim 1.

Claim 1 also requires, responsive to a single user action directed to the concierge device, automatically determining which of a plurality of service centers with which to initiate an interactive support session and initiating an interactive support session with the determined service center, wherein the determined service center supports the particular device, including automatically transmitting to the determined service center, via a second two-way non-audio data channel, identifier information from which the determined service center can uniquely identify the particular device; and conducting the interactive support session with the determined service center regarding the particular device using the concierge device to capture a user's voice and to reproduce audio for the user to hear via a two-way audio channel, wherein during the interactive support session the concierge device relays diagnostic requests from the determined service center to the particular device and relays responses by the particular device back to the determined service center via the second two-way non-audio data channel.  JTX-06 ('697 Patent), Claim 1.

NexStep proved during trial and Comcast concedes that the Accused Products are a concierge device that include at least one processor and memory which hold instructions (e.g., the Xfinity My Account app) that, when executed on the processor(s), perform steps of supporting a device (e.g., troubleshooting your consumer devices).  Trial Tr. at 257:1-258:1; 315:14-322:17; 385:16-391:3; Trial Tr. at 687:20-688:1 (confirming Comcast did not challenge this claim limitation).

Comcast further concedes that the Accused Products receive a first signal from a particular device to be supported (e.g., a troubled consumer device, such as set-top box, router, home security

- 17 -

touchscreen) via a WiFi channel to provide diagnostic related information, such as whether the consumer device is working properly or not.  Trial Tr. at 688:2-5; PTX-187 at 4; PTX-637 at 3, lines 71-124; PTX-637 at 148-149, lines 12-85; Trial Tr. at 257:1-262:15; 391:5-394:11.  The first signal includes a device identifier (e.g., serial number, mac address, etc.).  *Id.*

There is overwhelming proof that the Accused Products, responsive to a single user action (e.g., scheduling a call via the Xfinity Assistant), automatically determines which of a plurality of service centers (e.g., based on region and type of device that the service center may support) with which to initiate an interactive support session (e.g., troubleshooting your consumer device) and initiating an interactive support session with the determined service center, wherein the determined service center supports the particular device, including automatically transmitting to the determined service center, via a second two-way non-audio data channel, identifier information from which the determined service center can uniquely identify the particular device (e.g., transmitting information, such as mac address, serial number, intent, etc.).  PTX-584 at 1; PTX-564 at 1-2; PTX-568; PTX-637 at 90-91; Trial Tr. at 257:1-262:15; 394:12-403:17.

The Accused Products, by scheduling a call, conduct a voice call, which captures customer's voice and reproduces audio for the customer to hear via a two-way audio channel (e.g., phone call).  PTX-585 at 3; Trial Tr. at 403:18-406:12. Comcast concedes this limitation as well.  Trial Tr. at 688:6-8.  During the interactive support session, Xfinity My Account relays diagnostic requests from the determined service center to the particular device and relays responses by the particular device back to the determined service center via the second two-way non-audio data channel by opening the communication channel between the customer service agent (e.g., at the service center) and the supported device.  PTX-459 at 15; PTX-586 at 1; PTX-517 at 30; PTX-637 at 148; Trial Tr. at 406:13-414:12.  Trial Tr. at 688:9-11.  At the very least, the "wherein…"

element is met under the doctrine of equivalents because it performs the same function, way, and result by establishing the communication channel used to relay requests and responses between the consumer device and the service center.  Trial Tr. at 414:13-416:17.

Comcast's sole non-infringement defense is predicated on the incorrect premise that NexStep did not show that the "single action performed by a user" was met under Comcast's narrow interpretation that "single action" must be met by a single button press that causes the home gateway to  "buffer consumer device identification information for the selected consumer device and determine a support center for a support session." Trial Tr. at 687:18-688:11.

However, NexStep indeed proved that the Accused Products meet the single action requirement by simply pressing the Xfinity Assistant button, even under Comcast's narrow interpretation.  PTX-393 at 3; PTX-381 at 2; PTX-68 at 4; PTX-637 at 173; Trial Tr. at 324:2-326:6; 329:13-330:16; 340:11-349:15.  Thus, even if the Court were to agree with Comcast's narrow interpretation, the Court should still grant NexStep's motion because Comcast has not submitted sufficient evidence to rebut NexStep's infringement claims under neither literal infringement, nor under the doctrine of equivalents.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant NexStep's Motion for Judgment as a Matter of Law.

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Jonathan S. Caplan
Aaron M. Frankel
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated:  September 23, 2021

POTTER ANDERSON & CORROON LLP

By:  */s/ Philip A. Rovner*
      Philip A. Rovner (#3215)
      Jonathan A. Choa (#5319)
      Hercules Plaza
      P.O. Box 951
      Wilmington, DE  19899
      (302) 984-6000
      provner@potteranderson.com
      jchoa@potteranderson.com

*Attorneys for Plaintiff*
*NexStep, Inc.*