IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEXSTEP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1031 (RGA) (SRF) |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | **REDACTED –** |
| LLC, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

## DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S
## RULE 50(a) MOTION FOR JUDGMENT AS A MATTER OF LAW

OF COUNSEL:
William F. Lee
Sarah B. Petty
Kate Saxton
WILMER CUTLER PICKERING HALE AND DORR
LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Amy Kreiger Wigmore
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6096

Mary (Mindy) V. Sooter
Nora Q.E. Passamaneck
WILMER CUTLER PICKERING HALE AND DORR
LLP
1225 17th Street, Suite 1660
Denver, Colorado 80202
Tel: (720) 274-3135

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O.  Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
*Attorneys for Defendant*

Original Filing Date: September 23, 2021
Redacted Filing Date: October 8, 2021

## [TABLE OF CONTENTS]

I.    COMCAST IS ENTITLED TO JMOL OF NONINFRINGEMENT ON ALL ASSERTED CLAIMS ................................................................................................... 1

    A.    No Reasonable Jury Could Find That NexStep Has Met Its Burden To Prove Direct Infringement Of Any Asserted Claim ............................................................................ 2

    B.    No Reasonable Jury Could Find that NexStep Has Met Its Burden To Prove Infringement Under The Doctrine Of Equivalents For Any Asserted Claim ............... 10

    C.    No Reasonable Jury Could Find that NexStep Has Met Its Burden To Prove Induced Infringement of Claim 1 of the '009 Patent ................................................................. 15

II.    THE COURT SHOULD GRANT JMOL THAT THE ASSERTED CLAIMS ARE INVALID ............................................................................................................................. 17

III.    COMCAST IS ENTITLED TO JMOL OF NO LIABILITY BECAUSE THERE ARE NO DAMAGES ................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2020 WL 7024867 (D.
   Del. Nov. 30, 2020)...................................................................................................13

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324 (Fed. Cir. 2006).......................11

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)...........................3

*Cassidian Commc'ns, Inc. v. MicroDATA GIS, Inc.*, No. 2:12-CV-00162-JRG,
   2014 WL 3924255 (E.D. Tex. Aug. 8, 2014) ......................................................................5

*Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) ........................................................17

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir.
   2009) ................................................................................................................................13

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006)....................................................16

*Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917 (Fed. Cir.
   2021) ................................................................................................................................12

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398 (Fed. Cir.
   2018) ................................................................................................................................15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368 (Fed. Cir.
   2007) ................................................................................................................................15

*Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2021 WL 292033 (N.D.
   Cal. Jan. 28, 2021) ...........................................................................................................14

*G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275 (Fed. Cir. 2017) ..............................13, 14

*Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079 (3d Cir. 1995) ...........................................1

*Intendis GmbH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355 (Fed. Cir. 2016) ................12, 13

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371 (Fed. Cir.
   2001) ................................................................................................................................13

*Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 15 F. Supp. 3d 499 (D. Del.
   2014) ................................................................................................................................13

*Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500-GHW, 2021 WL
   4066596 (S.D.N.Y. Sept. 1, 2021).....................................................................................12

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340 (Fed. Cir. 2008) .................16, 17

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403
 (Fed. Cir. 1990).............................................................................................................18

*Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331 (Fed.
 Cir. 2008) .......................................................................................................................10

*MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015) .........................................1

*Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461 (Fed. Cir. 1997) ...................................1

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315
 (Fed. Cir. 2016)...............................................................................................................17

*Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289 (3d Cir. 1991)......................................................18

*TC Tech. LLC v. Sprint Corp.*, 379 F. Supp. 3d 305 (D. Del. 2019) ..............................................10

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360 (Fed. Cir. 2000) .....................13

*Wisconsin Alumni Res. Found. v. Apple Inc.*, 905 F.3d 1341 (Fed. Cir. 2018) ..............................5

## STATUTES, RULES, AND REGULATIONS

Federal Rule of Civil Procedure 50 ................................................................................................1

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(a), Comcast moves for judgment as a matter of law ("JMOL").  The Court may grant JMOL when, after "a party has been fully heard on an issue during a jury trial[,] … the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  JMOL is warranted on any issue where a jury's verdict in favor of the nonmovant would lack supporting substantial evidence or would be predicated on erroneous legal conclusions. *See Gomez v. Allegheny Health Servs., Inc*., 71 F.3d 1079, 1083 (3d Cir. 1995); *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1466 (Fed. Cir. 1997).  Conclusory testimony—including that of experts—is not substantial evidence. *See MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015).

NexStep has failed to present substantial evidence from which a reasonable jury could find Comcast infringed any asserted claim of U.S. Patent No. 9,866,697 (the "'697 patent") or U.S. Patent No. 8,280,009 (the "'009 patent") (collectively, "Asserted Patents").  Comcast has proven that all asserted claims of the Asserted Patents are invalid, and no reasonable jury could conclude otherwise based on the record evidence.  Because no reasonable jury could find for NexStep on any issue, Comcast respectfully moves for JMOL on all claims and defenses.[1]

## I.  COMCAST IS ENTITLED TO JMOL OF NONINFRINGEMENT ON ALL ASSERTED CLAIMS

NexStep asserts that Comcast infringes claims 1, 16, and 22 of the '009 patent and claim 1 of the '697 patent based on Comcast's Xfinity My Account App operating on a smartphone or a

---

[1] This motion supports the oral JMOL arguments Comcast made to the Court on September 21 and 22, 2021.  (9/21/2021 Tr., 544:9-550:16; 9/22/2021 Tr., 814:11-815:20.)  Comcast reserves all appellate rights regarding pre-trial and trial rulings, including *Daubert*, summary judgment, and evidentiary rulings.

1

set-top box in connection with other Comcast devices and systems. NexStep bears the burden of proving infringement by a preponderance of the evidence. NexStep has failed to present substantial evidence from which a reasonable jury could find infringement of any asserted claim.

### A. No Reasonable Jury Could Find That NexStep Has Met Its Burden To Prove Direct Infringement Of Any Asserted Claim.[2]

#### 1. No "Single" Action (All Asserted Claims)

All asserted claims of the Asserted Patents require that, in response to the single action by a user, a series of events must occur.

As to the '009 patent, all the asserted claims require that "responsive to a single action performed by a user," four events must occur: (1) "causing the home gateway to buffer consumer device identification information for the selected consumer device," (2) "causing the home gateway to … determine a support center for a support session," (3) "causing the home gateway to initiate the support session for the consumer device," and (4) "causing the home gateway… to forward automatically the consumer device identification information during the support session." (JTX-2 ['009 patent], Claims 1, 16, and 22; *see also* 9/21/2021 Tr., 430:24-431:3 (NexStep's expert, Dr. Selker, agreeing claims require four events to happen in response to single action).)

Similarly, claim 1 of '697 patent requires that "responsive to a single user action directed to the concierge device," three events must occur: (1) "automatically determining which of a plurality of service centers with which to initiate an interactive support session," (2) "initiating an interactive support session with the determined service center," and (3) "automatically transmitting

---

[2] In addition to the fatal flaws discussed in detail below, NexStep failed to present substantial evidence of (1) any instance of actual use of the functionality Dr. Selker analyzed, and therefore any performance of the method of claim 1 of the '009 patent; and (2) any making, using, selling, or offering for sale in the United States, or importation into the United States, of any smartphone or tablet with the My Account App installed, and therefore any direct infringement of the devices of claims 16 and 22 of the '009 patent and claim 1 of the '697 patent.

to the determined service center, via a second two-way non-audio data channel, identifier information from which the determined service center can uniquely identify the particular device." (JTX-6 ['697 patent], claim 1; *see also* 9/21/2021 Tr., 434:10-435:11 (Dr. Selker, agreeing claim requires three events happen in response to single action).)

a)      No "Single" Action

NexStep has not identified any single action performed by a user with the accused My Account App that causes the required events of either the '009 and '697 patents.  Instead, NexStep's expert on infringement, Dr. Selker, opined that the single-action limitations of the claims are satisfied because the required events occur in response to multiple actions performed by a user.  (*See, e.g.*, 9/21/2021 Tr., 444:2-3 ("Q. Now, you call these five steps a single action? A. I do.").)[3]  In fact, Dr. Selker not only acknowledged that he applied the term "single action" to encompass what he called multiple "steps," he further posited that the term must have such a broad scope because "nothing is a single action."  (*See* 9/21/2021 Tr., 341:25-342:18 ("[W]hatever a single action is, whether a single press or other things, there's some parts to it. And I call those steps in a single action."); 438:18-22 ("[N]o [s]ingle action does anything in the world."); 438:23-25 ("[A]ll single actions are composed of some steps."); 450:17-19 ("[N]othing is a single action, everything is a process.").)

More specifically, in connection with the asserted '009 patent claims, Dr. Selker opined on direct examination that the four events required to occur in response to a "single action" are satisfied by My Account App behaviors that require a series of actions, such as taking multiple actions to perform troubleshooting using the My Account App.  (9/21/2021 Tr., 319:20-320:20, 323:14-22, 326:7-11, 329:17-330:16, 340:18-341:8, 342:10-18, 343:9-344:3, 345:5-14.).   Dr.

---

[3] Emphases are added except where otherwise noted.

Selker opined that the precipitating "single action" for that restart behavior, which supposedly satisfies the "single action" requirement of the claims, is the following series of actions: (1) "opening" the app; (2) "click[ing]" a "home" icon; (3) "making a single click on the TV [icon]"; and (4) selecting a "restart" option. (*See* 9/21/2021 Tr., 343:20-344:3.) On cross examination, Dr. Selker acknowledged that there are actually "five" steps—each of which requires a user to "press a button to make something happen"—that leads to restarting a user's set-top box in the My Account App. (*See* 9/21/2021 Tr., 438:14-441:25.) Dr. Selker unequivocally agreed that, in his view, "these five steps [are] a single action," as required by the asserted claims of the '009 patent. (9/21/2021 Tr., 443:24-444:3.) Dr. Selker identified no "single" action that, by itself, satisfies the claim limitation, and instead he identified five actions that he called "steps" (despite referring to some of the same actions as "actions" in his expert report (9/22/2021 Tr., 445:14-447:10)). *See Wisconsin Alumni Res. Found. v. Apple Inc*., 905 F.3d 1341, 1348 (Fed. Cir. 2018) (holding "no reasonable juror could have found literal infringement" when plaintiff argued a "particular" instruction could mean more than a "single" instruction).

For the '697 patent, Dr. Selker offered no explanation as to what specific action or set of actions supposedly satisfied the "single user action" requirement. (*See* 9/21/2021 Tr., 394:12-395:10.) Instead, he stated that the "single action … is to diagnose and look for issues" (*id.*), without specifying what action taken by the user constituted the required "single action." *See Cassidian Commc'ns, Inc. v. MicroDATA GIS, Inc.*, No. 2:12-CV-00162-JRG, 2014 WL 3924255, at *9 (E.D. Tex. Aug. 8, 2014) (no reasonable jury could accept infringement claim based solely on expert testimony that "is mostly vague, conclusory and lacks specificity"). Moreover, as with the '009 patent, he acknowledged that his opinion concerning the single-action requirement of the '697 patent claims depended on treating multiple actions as a single action. (*See* 9/21/2021 Tr.,

4

438:14-441:25, 388:5-389:6 (opining that series of chats with Xfinity Assistant is a "single action"), 395:24-396:12, 403:7-16.)

> b) The Claimed Events Do Not Occur "Responsive To" A Single Action

In addition to having failed to provide adequate evidence in support of the "single" action requirement described above, NexStep failed to establish that the required resulting events occur "responsive to" a single action.

As to the '009 patent, any testimony provided by Dr. Selker regarding the required four resulting events was entirely conclusory, vague, and internally inconsistent.  He never clearly identified how any of the required events were caused by any alleged single action, let alone that all four events were caused by the same single action, as the claims require.  (9/21/2021 Tr., 349:16-360:18 (testifying as to opinions regarding the limitation "causing the home gateway to buffer consumer device identification information for the selected consumer device and determine a support center for a support session" and failing to adequately explain how the identified behavior is caused by the alleged "single action"); *id.*, 360:19-369:19 (testifying as to opinions regarding the limitation "causing the home gateway to initiate the support session for the consumer device and to forward automatically the consumer device identification information during the support session" while failing to clearly explain how those events are caused by the alleged single action).)

As to the '697 patent, Dr. Selker's testimony suffered from the same flaws regarding the three events that must happen in response to the claimed single user action.  (9/21/2021 Tr., 394:12-403:12 (providing opinions concerning the limitation "automatically determining which of a plurality of service centers with which to initiate an interactive support session and initiating an interactive support session with the determined service center, wherein the determined service

center supports the particular device, including automatically transmitting to the determined service center, via a second two-way non-audio data channel, identifier information from which the determined service center can uniquely identify the particular device," but failing to explain how those events are responsive to the alleged single action).)

### 2. No "Determin[ation]" of a "[Support/Service] Center" (All Asserted Claims)

*First*, Dr. Selker failed to provide any comprehensible explanation as to how any feature of the My Account App "determin[es]" a "[support/service] center."  When asked how this limitation was satisfied in relation to the '009 patent, he stated that "[b]asically the idea is that this gateway up there has this information and it's going to keep it at the ready and add to it to make – to make this, to solve this problem for this person we call a support session."  (9/21/2021 Tr., 349:22-350:4; *see also id.*, 358:8-17 ("Q. [H]ow does this support your opinion … that it's meeting the element of … determin[ing] a support center for a support session?  A.  Well, it is definitely very engaged in identifying.  It's so engaging that they're using medical terminology about what's going to be the problem."); *id.*, 351:3-8 (alluding to a "support center that's in the cloud").)  And Dr. Selker's testimony regarding the '697 patent was similarly vague:

> "So VADER is the new thing that comes in with this -- with this patent. It's voice and digital experiences router. … [I]t's a piece of software that Xfinity has made that basically is deciding all those things that I was just talking about. It says uh-huh, this is something about the home, the home gateway in the Midwest. And so it's going to know that those services in the Midwest are a set of such and which agent is going to be able to talk about that kind of stuff.
>
> Q. So when you click that schedule a call that single action in your previous slide when you click that button does VADER determine the plurality of service centers with which to connect?
>
> A. Absolutely. That's exactly what it does."

(*Id.*, 396:24-397:15; *see also id.*, 403:1-6 ("that's really the point is that this thing is doing different

things for these different devices and those are going to different service center[s]").) But he failed to explain how any functionality relating to the My Account App chooses a particular support center among multiple options, as the claim requires.

*Second*, even if Dr. Selker's testimony could be understood as identifying the required "determin[ation]" of a "support center" or "service center," he never provided any testimony as to how that occurs in response to anything he identified as the claimed "single action." (*See* 9/21/2021 Tr., 349:22-350:4, 358:8-17.)

### 3. No "Buffer[ing] of a "Consumer Device" ('009 Patent, All Asserted Claims)

All asserted claims of the '009 patent require that when the user performs the "single action," it causes "the home gateway to buffer consumer device identification information for the selected consumer device." (JTX-2 ['009 patent], claims 1, 16, and 22.) Dr. Selker testified that this limitation is met when a Comcast subscriber performs a series of troubleshooting actions on the My Account App, including "pressing Xfinity Assistant" (9/21 Tr., 345:10), because doing so allegedly causes the Xfinity Cloud, which Dr. Selker apparently identified as the "home gateway," to buffer consumer device identification information (*id.*, 350:16-351:2). However, this is insufficient as a matter of law to show literal infringement of this claim element.

As an initial matter, Dr. Selker never identified a specific "home gateway" that allegedly performs the required buffering step. Instead, he testified that the alleged "home gateway" is "everything in service of the home," *i.e.*, "all of the, you know, stuff that's known about you and about your devices and all of the machinery to make decisions about how to solve those problems and, you know, the ways of solving them with support centers." (9/22/21 Tr., 342:22-343:8.) And although numerous discrete Comcast servers store different information and perform different functions (*see* PTX-459 at 3), Dr. Selker's most specific statement was that the alleged home

gateway is "a bunch of servers at Xfinity that can communicate anywhere to anybody." (9/21 Tr., 342:22-343:8, id. at 312:17-313:7 ("[A] cloud is just a bunch of computers that are somewhere else that everybody can use").) Dr. Selker's failure to identify a specific Xfinity server that he alleges performs the required buffering step is therefore fatal because he provided no evidence that any specific servers perform any specific aspects of the claimed buffering step in response to the same single user action that also performs the remaining three claimed steps. (JTX-2 ['009 Patent], claims 1, 16, and 22.)

Moreover, as Dr. Selker conceded on cross examination, the asserted claims of the '009 patent require that the single action *cause* the home gateway to perform the claimed buffering step. (*Id.*; 9/21/2021 Tr., 429:6-13 ("What it tells you is several things have to be happening in response to the single action? A. Yes. Q. Correct? And there are two in this first paragraph revision, there's causing the home gateway to buffer consumer device identification information for the select the consumer device; correct? A. Yes.").) Yet, Dr. Selker testified on direct examination that the Xfinity Cloud allegedly buffers consumer device identification data without any action from the user. (9/21/2021 Tr., 350:16-351:2 ("Q…. [C]an you just explain…how this is demonstrating this limitation to causing home gateway to buffer limitation that ends in a support session?... .What you're seeing here is, without the person involved, right, it's kind of a shadow. We're already -- we're out there doing it. We're out there looking at this thing and getting information and sending it back and forth and figuring out that there's -- if there's problems or not.").) Indeed, Dr. Selker pointed to the memory cache—a component of the Xfinity Cloud that is present regardless of whether a user performs a single action on the My Account App—as evidence that the Xfinity Cloud performs the claimed buffering step. (*Id.*, 354:17-19 ("Q. And earlier you pointed to the in

memory cache. What is that?  A. That's the buffering in my view.").)[4]

### 4. NexStep Presented No Substantial Evidence that the Operation of the My Account Functionality on Xfinity Set-top Boxes Infringes Any Asserted Claim

NexStep failed to present substantial evidence of direct infringement of the asserted device claims in relation to Xfinity X1 Set-top boxes.  The entire testimony of NexStep's infringement expert, Dr. Selker, regarding the My Account set-top box functionality consists of a reference to a "picture split across" pages 5-6 of PTX-516, which Dr. Selker described as "showing these different devices, the account details, excuse me, the home, the Internet, the phone."  9/21/2021, Trial Tr. 377:17-378:13.  That picture, however, does not show "the home," "the Internet," or "the phone," it shows "Account Details," "Balance Due," and "No Appointments":



PTX-516 at 5-6.  And in response to NexStep's counsel's question "how [PTX-516] support[s] your opinion," Dr. Selker stated "[y]eah, so that's right. And you go to a web page and see better pictures, probably."  9/21/2021, 378:10-13.  But such expert testimony contrary to the allegedly

---

[4] Dr. Selker contradicted himself, testifying on re-direct that Convoy/AIQ perform the claimed buffering step.  (9/21/2021 Tr., 454:15-20 ("And that works in conjunction with Convoy; is that right?  A. Right.  Q. And the first thing it does is actually both AIQ and Convoy, they're both going to buffer that device?  A. That's right.").)  But Dr. Selker never alleged that either Convoy or AIQ constitutes a "home gateway" under the claims.

supporting documentary evidence does not constitute substantial evidence.  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

### B.   No Reasonable Jury Could Find that NexStep Has Met Its Burden To Prove Infringement Under The Doctrine Of Equivalents For Any Asserted Claim.

Dr. Selker also testified as to infringement under the doctrine of equivalents ("DOE") in connection with only two claim limitations: (1) the "single action" limitation that appears in all the asserted '009 patent claims, and (2) the final limitation of claim 1 of the '697 patent, which begins "wherein during the interactive support session."[5]  (9/21/2021 Tr., 383:23-385:15, 414:3-416:17.)  His opinions regarding both those limitations are insufficient as a matter of law.

### 1.   Dr. Selker's Conclusory DOE Opinions Are Not Substantial Evidence

Conclusory expert opinions regarding DOE alone are insufficient as a matter of law to sustain a DOE claim.  *See TC Tech. LLC v. Sprint Corp.*, 379 F. Supp. 3d 305, 316 (D. Del. 2019) (granting summary judgment on DOE claim because "[t]he bulk of [the patentee's expert's] testimony is conclusory [and thus] insufficient to support a finding of equivalence").  Here, both of Dr. Selker's equivalents opinions were entirely vague, conclusory, and not specifically tied to any accused components or systems or the specific claim limitation at issue:

**'009 patent "single action performed by a user"**

- **Alleged Function**:  "When you -- when you go to debug your -- to diagnose your device, you're going through a single action. It might be that there's several button

---

[5] Because DOE theories are legally insufficient without "particularized testimony from an expert or person of ordinary skill in the art that … specifically addresse[s] equivalents on a limitation-by-limitation basis," *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1341 (Fed. Cir. 2008) (quotation omitted), NexStep has abandoned any other DOE positions.

presses along the way, but I say that's the same function. And that it's going to have the same purpose which is what I was talking about, I hope. I don't know if I'm …."

- **Alleged Way**: "[I]t's done in the same way in that the stuff is all kept up in the cloud for the purpose of doing this and it's going to go and diagnose it using the home gateway and it's going to solve my problem without me having to go through and put in my model numbers and all of that stuff. So it's really literally using -- using this Concierge as more of a -- somebody to give authorization than to do the actual function. I'm not down there in the machine room, you know, putting instructions into a computer to make it do each of these things."

- **Alleged Result**: "[T]he result is that this thing is going to be restarted, refreshed, whatever is going to have to happen with it without me having to tangle with understanding all of the issues of being an IT professional or whatever it takes to get this thing up. And so it's going to come with a result of my modem working, you know."

### '697 patent "single action performed by a user"

- **Alleged Function**: "So the deal is that, you know, logically the communication is from the Concierge, the person to the device to solve the problem. But in fact, authorizing Convoy and the service agent to set -- to push the button makes it so that it's going to be done exactly that way, have that same function, and it's going to have the same purpose exactly. That is that the person is going to confirm that they're going to want the diagnostic done with audio, they're going to confirm that it's been done with audio. And so we've got this relay happening where the person we're doing it on behalf of which, that their Concierge are in control of this communication and relaying the information to do the reset."

- **Alleged Way**: "I mean, it's substantially the same way. At every point, the person is in control of the process of communicating to the device and using the diagnostic information that's been made available to solve the problem."

- **Alleged Result**: "Yeah, the same result is that the person is in control of the process and that this -- this whatever, this modem doesn't get reset unless they want it to. And they've relayed the information that it's okay to reset it. … And same result is that they have control over it, they get their modem running again."

(9/21/2021 Tr., 383:25-385:9; 415:3-416:17.) Dr. Selker's unfocused, meandering testimony does not constitute substantial evidence. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1331 (Fed. Cir. 2006) (affirming summary judgment where district court "found that the [expert] declaration contained only conclusory and unsupported opinions because it is devoid of

meaningful analysis regarding how one of skill in the art would conclude that the differences in the way the [accused features] perform the [claimed] functions are insubstantial").

### 2. NexStep's "Single" Action DOE Theory Vitiates Claim Limitations

NexStep's DOE argument concerning the "single action" or "single user action" limitations of the asserted claims is foreclosed as a matter of law because they would vitiate those claim limitations. (JTX-2 ['009 patent], claims 1 (claimed steps occur "responsive to a single action performed by a user"), 16 (same), and 22 (same); JTX-6 ['697 patent], claim 1 (claimed steps occur "responsive to a single user action").)

Dr. Selker conceded on cross-examination that the asserted claims require that all of the claimed steps occur in response to a "single" action performed by a user. (*See* 9/21/2021 Tr., 430:24-431:3 ('009 Patent); 434:24-435:11 ('697 Patent).) Yet, he opined under the doctrine of equivalents that multiple actions taken by a user satisfy the single-action requirement. (*See* 9/21/2021 Tr., 383:25-384:10 ("When you -- when you go to debug your -- to diagnose your device,... [i]t might be that there's several button presses along the way, but I say that's the same function.").) Such an equivalents theory is improper because it "entirely vitiate[s] [the] ... claim element," as it renders "inconsequential or ineffective" the requirement of a single action. *Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 923 (Fed. Cir. 2021); *see also, e.g.*, *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500-GHW, 2021 WL 4066596, at *16 (S.D.N.Y. Sept. 1, 2021) ("[Patentee's] equivalents theory relies on a single camera ..., a position that ... vitiates the requirement [of] multiple cameras ....").  Accordingly, JMOL should enter in Comcast's favor.

### 3. NexStep's DOE Theories Would Ensnare the Prior Art

NexStep's DOE theories are barred because they would ensnare the prior art. *Intendis GmbH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016) ("A patentee may

not assert 'a scope of equivalency that would encompass, or ensnare, the prior art.'"); D.I. 323 [Defendant's Proffer on Equitable Defenses] at 3. Ensnarement is a legal question "to be determined by the court," and may be decided on a motion for judgment as a matter of law. *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1288 (Fed. Cir. 2017); *see also Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1363 (Fed. Cir. 2000); *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 15 F. Supp. 3d 499, 518 n.18 (D. Del. 2014). Moreover, "[t]he ensnarement inquiry ... has no bearing on the validity of the actual claims." *Jang*, 872 F.3d at 1288 (quoting *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323 (Fed. Cir. 2009)).

One method by which a court can assess whether a DOE theory ensnares the prior art is through a hypothetical-claim analysis, which is a two-step process. *Id.*, 1286 n. 4; *see also Intendis GMBH*, 822 F. 3d at 1363. First, the patent owner "construct[s] a hypothetical claim that literally covers the accused device." *Jang*, 872 F.3d at 128. Second, the court assesses the prior art "to 'determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art.'" *Id.*

As the patentee, NexStep "bears the burden of proving that it is entitled to 'the range of equivalents which it seeks.'" *Id.* NexStep failed to meet its burden when it failed to come forward with a "hypothetical claim that literally covers the accused device" but that is "patentable over the prior art." *Id.* at 1285; *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *see also Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2020 WL 7024867, at *15 (D. Del. Nov. 30, 2020) ("Plaintiff does not propose a hypothetical claim and the Court will not draft one to remedy Plaintiff's failure.").

NexStep cannot argue that it was unaware of Comcast's ensnarement defense. Comcast

provided notice that NexStep's infringement theories ensnared the prior art at least by February 5, 2021.[6]  Ex. 1, Villasenor Rpt. ¶ 40.  And Dr. Villasenor explained the prior art rendered the claims invalid under NexStep's infringement theories.  *See, e.g.*, *id.* ¶¶ 796, 1007; *id.* §§ XII.B, XII.C; *see also Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2021 WL 292033, at *8 (N.D. Cal. Jan. 28, 2021) ("Patent owner does not contend it is not on notice of defendant's ensnarement defense.  So, it must articulate an adequate hypothetical claim.").  But despite this notice, NexStep opted not to address ensnarement or construct a hypothetical claim in its rebuttal expert reports. *See* Balakrishnan Rebuttal Rpt.  In fact, NexStep explicitly declined to do so in its reply expert reports.  (*See* Ex. 2, Selker Reply Rpt., ¶¶ 193, 254.)  Comcast is therefore entitled to JMOL of no infringement under DOE.  *See Jang*, 872 F.3d at 1287 ("Because … Dr. Jang failed to submit a proper hypothetical claim for consideration, he was unable to meet his burden of proving that his doctrine of equivalents theory did not ensnare the prior art.  The district court thus correctly vacated the jury verdict of infringement under the doctrine of equivalents.").

### 4.    NexStep's DOE Theories Are Barred by Prosecution History Estoppel

NexStep is barred from pursuing a doctrine of equivalents theory in connection with the last limitation of claim 1 of the '697 patent: "wherein during the interactive support session the concierge device relays diagnostic requests from the determined service center to the particular device and relays responses by the particular device back to the determined service center via the second two-way non-audio data channel."

That limitation was added during prosecution to overcome the prior art.  (*See* Ex. 3, DTX-0627 at NexStep 0004176-NexStep 0004192 (adding '697 patent, claim 1, element (d-e)), NexStep

---

[6] The Federal Circuit has explained that a patent owner is "not prejudiced by any lack of pretrial discovery as to ensnarement."  *Jang*, 872 F.3d at 1289.  And at any rate, NexStep never asked for additional discovery on this defense, which it could have done.  *Id.*

0004756-NexStep 0004767 (same).)  NexStep is therefore presumed to have added it for reasons

of patentability.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1377

(Fed. Cir. 2007) ("The burden is on the patentee to establish that the reason for the amendment

was unrelated to patentability…. If the patentee fails to meet [its] burden, the court must presume

that the patentee 'had a substantial reason related to patentability for including the limiting element

added by amendment.'").  However, NexStep has failed to offer any evidence to rebut that

presumption, having presented none at trial and having never adduced during fact or expert

discovery any evidence relating to the reasons for amendment.  Accordingly, JMOL should enter

in Comcast's favor as to NexStep's DOE theories relating to this limitation.  *See id.* ("If there is a

substantial reason related to patentability prosecution history estoppel would bar the application

of the doctrine of equivalents as to that element.").

### C. No Reasonable Jury Could Find that NexStep Has Met Its Burden To Prove Induced Infringement of Claim 1 of the '009 Patent.

NexStep has failed to offer substantial evidence from which a reasonable jury could find

induced post-suit infringement.[7]  To demonstrate active inducement, NexStep bears the burden to

prove, among other requirements, that (1) a third party directly infringed; (2) Comcast induced

that infringement; and (3) Comcast possessed the specific intent to encourage the infringement.

*See Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407-08 (Fed. Cir.

2018).  NexStep has failed to satisfy each element.

*First*, NexStep offered no substantial evidence of direct infringement of the asserted claims

(by Comcast or anyone else) for the reasons described above.  *See supra* Section I.  This alone

---

[7] The Court dismissed NexStep's indirect infringement claims in relation to pre-suit conduct.
(D.I. 306 (Pretrial Order) at 5 ("The Court dismissed in their entirety all claims against Comcast
asserting … pre-suit induced infringement ….").)

entitles Comcast to JMOL of no active inducement.  *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement.").  Indeed, NexStep has not even offered any evidence that any customer or other third party has ever committed an alleged act of infringement (i.e., using the My Account App in the particular way that, according to NexStep, infringes the Asserted Patents).

*Second*, NexStep offered no evidence that Comcast possessed "specific intent" to induce infringement, which requires proof that Comcast not only "knew of the patent," but also "actively and knowingly aid[ed] and abett[ed] another's direct infringement."  *Id.*, 1305.  Dr. Selker offered conclusory assertions about induced infringement, including that Comcast "encourage[s]" customers to "load" the My Account App from "the app store" through the use of a "nice little flashy page."  (9/21/2021 Tr., 310:24-311:4.)  He also asserted that Comcast knew about the Asserted Patents after the Complaint was filed.  (9/21/2021 Tr., 314:17-19.)  But this, at most, suggests that Comcast, with knowledge of the Asserted Patents, desired that customers download the My Account App—i.e., that Comcast "generally intend[s] to cause acts that produce [alleged] infringement"—which is insufficient to show inducement.  *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1354 (Fed. Cir. 2008) ("Proof of intent to cause infringing acts is a necessary but not sufficient condition for induced infringement.  Inducement additionally requires 'evidence of culpable conduct, directed to encouraging another's infringement ….'"); *see also DSU*, 471 F.3d at 1305 ("The mere knowledge of possible infringement by others does not amount to inducement ….").  There is no testimony or other record evidence indicating, as required to prove induced infringement, that Comcast "possessed a specific intent to cause infringement of [NexStep's] patent[s]."  *Kyocera Wireless*, 545 F.3d at 1354.  NexStep did not offer evidence that, for example, Comcast "knew … the [allegedly] induced acts constitute patent infringement."

*Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).  The record accordingly "falls short of the necessary intent showing for inducement."  *Kyocera Wireless*, 545 F.3d at 1354.

**Third**, NexStep has failed to offer substantial evidence showing "actual inducement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016) ("[T]o prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants' actions led to direct infringement of the [patent-in-suit].").  Again, Dr. Selker offered only conclusory testimony regarding Comcast's alleged encouragement to use the My Account App.  (9/21/2021 Tr., 310:24-311:4.)  But NexStep failed to provide any evidence demonstrating that conduct actually induced any customer to perform an allegedly infringing act.

## II.  THE COURT SHOULD GRANT JMOL THAT THE ASSERTED CLAIMS ARE INVALID.[8]

Comcast demonstrated by clear and convincing evidence, including the testimony of Dr. John Villasenor, that U.S. Patent No. 7,260,597 ("Hofrichter") and U.S. Patent Application Publication No. 2011/0022641 ("Werth") render obvious claims 1, 16, and 22 of the '009 patent. (DTX-0629; DTX-0588.)  Dr. Villasenor established that both references qualify as prior art. (9/22/2021 Tr., 612:25-614:2, 657:19-23; DTX-0629 at 1 (filed November 2, 2000); DTX-0588 at 1 (filed July 23, 2010).)  Dr. Villasenor also demonstrated that the Hofrichter-Werth combination discloses every element of claims 1, 16, and 22 of the '009 patent, and one of ordinary skill in the art would have been motivated to combine the teachings of Hofrichter and Werth.  (9/22/2021 Tr., 605:22-615:20, 652:14-666:21.)  Dr. Villasenor also showed by clear and convincing evidence that Hofrichter and U.S. Patent Application Publication No.  2005/0039214 ("Lorenz") render

---

[8] The Court decided on JMOL that the asserted claims of the '009 patent are not entitled NexStep's alleged March 2010 priority date and that that issue will not go to the jury.  (*See* September 22, 2021 Email Order ("I don't think the earlier conception date goes to the jury.").  Accordingly, there is no dispute that the Werth reference is prior art to the '009 patent.

obvious claim 1 of the '697 patent.  (*See also*, DTX-0629; DTX-0123.)  Dr. Villasenor established

that both references qualify as prior art.  (9/22/2021 Tr., 609:22-610:19; 668:12-18; DTX-0629 at

1 (filed November 2, 2000); DTX-0123 at 1 (filed February 21, 2001).)  Dr. Villasenor showed

that the Hofrichter-Lorenz combination discloses every element in claim 1 of the '697 patent and

that one of ordinary skill in the art would have been motivated to combine the teachings of

Hofrichter and Lorenz.   (9/22/2021 Tr., 605:22-615:20,  652:14-656:24,  666:24-669:21.)

Accordingly, no reasonable jury could have concluded that claims 1, 16, and 22 of the '009 patent

and claim 1 of the '697 patent are valid.

## III.   COMCAST IS ENTITLED TO JMOL OF NO LIABILITY BECAUSE THERE ARE NO DAMAGES[9]

Because NexStep has failed to prove damages and did not seek equitable relief in the

pretrial order, Comcast is also entitled to JMOL of no liability for infringement of the asserted

claims of the '009 and '697 patents.  Without any showing of harm, NexStep has failed to establish

any basis for a finding of liability.  *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d

Cir. 1991) ("We conclude that the plaintiffs failed to adduce at trial that quantum of evidence on

the issue of damages required to withstand a directed verdict on any of the theories of liability

alleged.  We find that the district court's grant of a directed verdict can be sustained with reference

to damages alone and will, therefore, affirm the order of the district court.").

---

[9]  The Court has decided that NexStep has not provided any viable damages claim, resulting in a
judgment of no damages.  (*See* September 17, 2021 Email Order ("I exclude from the trial all
testimony and/or evidence solely offered to prove damages. I do not think any viable damages
theory has been properly and timely disclosed. Thus, the jury coming in Monday will not
consider damages."); *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d
1403, 1406 (Fed. Cir. 1990) (where the record lacks any evidence of damages, "zero damages" is
appropriate because "[t]he statute [35 U.S.C. § 284] requires the award of a reasonable royalty,
but to argue that this requirement exists even in the absence of any evidence from which a court
may derive a reasonable royalty goes beyond the possible meaning of the statute." (quotation
omitted).

## CONCLUSION

Comcast respectfully requests that the Court grant it JMOL of no infringement for all asserted claims, and invalidity of those claims.

<table>
<tr><td>

OF COUNSEL:
William F. Lee
Sarah B. Petty
Kate Saxton
WILMER CUTLER PICKERING HALE AND DORR
LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Amy Kreiger Wigmore
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6096

Mary (Mindy) V. Sooter
Nora Q.E. Passamaneck
WILMER CUTLER PICKERING HALE AND DORR
LLP
1225 17th Street, Suite 1660
Denver, Colorado 80202
Tel: (720) 274-3135
September 23, 2021

</td><td>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O.  Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
*Attorneys for Defendant*

</td></tr>
</table>

19

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 23, 2021, upon the following in the manner indicated:

Philip A. Rovner, Esquire          *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON, LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Paul J. Andre, Esquire          *VIA ELECTRONIC MAIL*
Lisa Kobialka, Esquire
Greg Proctor, Esquire
Hien Lien, Esquire
Missy G. Brenner, Esquire
James Hannah, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
*Attorneys for Plaintiff*

Jonathan S. Caplan, Esquire          *VIA ELECTRONIC MAIL*
Aaron M. Frankel, Esquire
Marcus A. Colucci, Esquire
Benu Wells, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
*Attorneys for Plaintiff*

*/s/ Brian P. Egan*
_____
Brian P. Egan (#6227)