IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NEXSTEP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1031 (RGA) (SRF) |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S
OPENING BRIEF IN SUPPORT OF ITS
<u>POST-JUDGMENT MOTION UNDER RULES 50(B) AND 59</u>**

OF COUNSEL:

William F. Lee
Sarah B. Petty
Kate Saxton
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Amy Kreiger Wigmore
WILMER CUTLER PICKERING HALE
A    ND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6096

Mary (Mindy) V. Sooter
Nora Q.E. Passamaneck
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1225 17th Street, Suite 1660
Denver, CO  80202
(720) 274-3135

October 26, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ...........................................................................................................1

II.    LEGAL STANDARDS ...................................................................................................1

III.   THE COURT SHOULD GRANT JMOL OF NONINFRINGEMENT OF THE
       '009 PATENT UNDER THE DOE OR ALTERNATIVELY A NEW TRIAL.................2

       A.     The Court Should Grant JMOL of Noninfringement Under the DOE
              Pursuant to Rule 50(b) and Rule 59(e) Because NexStep's DOE Theory
              Regarding the Claimed "Single Action" Is Legally and Factually Deficient .........2

       B.     The Court Should Grant JMOL of Noninfringement Under the DOE
              Pursuant to Rule 50(b) Because NexStep Failed to Prove that Additional
              Claim Limitations Are Satisfied ................................................................................10

       C.     The Court Should Grant JMOL of Noninfringement Under the DOE
              Pursuant to Rule 50(b) and Rule 59(e) Because NexStep's DOE Theory
              Ensnares the Prior Art ...............................................................................................12

       D.     In the Alternative, the Court Should Order a New Trial on Infringement
              Under the DOE Pursuant to Rule 59(a) Because Dr. Selker's Testimony
              Should Have Been Excluded Under *Daubert* as Inconsistent with the Plain
              Meaning of "Single" ..................................................................................................13

IV.    THE COURT SHOULD GRANT JUDGMENT OF NO DAMAGES BECAUSE
       NEXSTEP HAS NO VIABLE DAMAGES CLAIM.......................................................14

V.     IF THE COURT UPHOLDS THE VERDICT ON INFRINGEMENT OF THE
       '009 PATENT UNDER THE DOE, IT SHOULD GRANT JUDGMENT THAT
       THE ASSERTED CLAIMS OF THE '009 PATENT ARE INVALID AS
       OBVIOUS.........................................................................................................................15

       A.     The Court Should Grant Judgment of Invalidity .....................................................15

       B.     In the Alternative, the Court Should Order a New Trial on Invalidity
              Because Dr. Balakrishnan Should Not Have Been Permitted to Testify
              Regarding Secondary Considerations of Nonobviousness .......................................18

VI.    CONCLUSION.................................................................................................................19

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agrofresh Inc. v. Essentiv LLC*,
No. 16-662 (MN), 2020 WL 7024867 (D. Del. Nov. 30, 2020)..............................................12

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
651 F.3d 1318 (Fed. Cir. 2011).................................................................................5

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)...............................................................................14

*AquaTex Indus., Inc. v. Techniche Sols.*,
479 F.3d 1320 (Fed. Cir. 2007).................................................................................6

*Bayer Healthcare Pharms., Inc. v. Watson Pharms., Inc.*,
713 F.3d 1369 (Fed. Cir. 2013)...............................................................................19

*Bosch Auto. Serv. Sols., LLC v. Matal*,
878 F.3d 1027 (Fed. Cir. 2017), *as amended on reh'g in part* (Mar. 15, 2018),
*as corrected* (Mar. 28, 2018) ................................................................................19

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993).................................................................................................9

*Carrier Corp. v. Goodman Glob., Inc.*,
162 F. Supp. 3d 345 (D. Del. 2016).........................................................................19

*Cot'n Wash, Inc. v. Henkel Corp.*,
56 F. Supp. 3d 626 (D. Del. 2014)...........................................................................18

*Deere & Co. v. Bush Hog, LLC*,
703 F.3d 1349 (Fed. Cir. 2012).................................................................................5

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006).................................................................................2

*Fluidigm Corp. v. IONpath, Inc.*,
No. C 19-05639 WHA, 2021 WL 292033 (N.D. Cal. Jan. 28, 2021)....................12

*Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*,
618 F.3d 1294 (Fed. Cir. 2010)...............................................................................18

*Henny Penny Corp. v. Frymaster LLC*,
    938 F.3d 1324 (Fed. Cir. 2019)............................................................................18

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
    540 F.3d 1337 (Fed. Cir. 2008)............................................................................13

*Intendis GMBH v. Glenmark Pharms. Inc., USA*,
    822 F.3d 1355 (Fed. Cir. 2016)............................................................................12

*Jang v. Bos. Sci. Corp.*,
    872 F.3d 1275 (Fed. Cir. 2017)......................................................................12, 13

*Kewazinga Corp. v. Microsoft Corp.*,
    --- F. Supp. 3d ---, No. 1:18-CV-4500-GHW,
    2021 WL 4066596 (S.D.N.Y. Sept. 1, 2021)..........................................................6

*Lear Siegler, Inc. v. Sealy Mattress Co. of Mich.*,
    873 F.2d 1422 (Fed. Cir. 1989)..............................................................................6

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993)......................................................................................1

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
    895 F.2d 1403 (Fed. Cir. 1990)............................................................................14

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
    62 F. Supp. 3d 368 (D. Del. 2014)........................................................................13

*MiiCs & Partners Am., Inc. v. Toshiba Corp.*,
    282 F. Supp. 3d 844 (D. Del. 2017)........................................................................7

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021)............................................................................14

*Montgomery Ward & Co. v. Duncan*,
    311 U.S. 243 (1940)................................................................................................2

*Motionless Keyboard Co. v. Microsoft Corp.*,
    486 F.3d 1376 (Fed. Cir. 2007)..............................................................................7

*Northeast Women's Center, Inc. v. McMonagle*,
    689 F. Supp. 465 (E.D. Pa. 1988)........................................................................14

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998)..............................................................................1

*Planet Bingo, LLC v. GameTech Int'l, Inc.*,
    472 F.3d 1338 (Fed. Cir. 2006)..............................................................................5

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
    225 F.3d 1349 (Fed. Cir. 2000) ........................................................................ 19

*Sowell v. Butcher & Singer, Inc.*,
    926 F.2d 289 (3d Cir. 1991) ........................................................................... 15

*TC Tech. LLC v. Sprint Corp.*,
    No. 16-153-RGA, 2019 WL 2515779 (D. Del. June 18, 2019) ........................ 7

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ...................................................................... 3, 7

*TQ Delta, LLC v. ADTRAN, Inc.*,
    No. 14-954-RGA, 2019 WL 5626638 (D. Del. Oct. 31, 2019) ...................... 13

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998) ....................................................................... 5

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*,
    212 F.3d 1377 (Fed. Cir. 2000) ....................................................................... 6

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ..................................................................... 14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ....................................................................................... 5, 7

*Watcher v. Pottsville Area Emergency Med. Servs., Inc.*,
    248 F. App'x 272 (3d Cir. 2007) ............................................................ 1, 6, 13

**Rules and Statutes**

Fed. R. Civ. P. 26 .................................................................................................. 14

Fed. R. Civ. P. 50 .......................................................................................... *passim*

Fed. R. Civ. P. 59 .......................................................................................... *passim*

## I.   INTRODUCTION

After a four-day trial, the jury returned a verdict of (1) no literal infringement of claims 1, 16, and 22 of the '009 patent and of claim 1 of the '697 patent; (2) infringement under the doctrine of equivalents ("DOE") of claims 1, 16, and 22 of the '009 patent but not of claim 1 of the '697 patent; and (3) no invalidity of claims 1, 16, and 22 of the '009 patent.  (D.I. 331.)

Comcast respectfully submits that the Court should (1) grant judgment as a matter of law ("JMOL") of noninfringement of the '009 patent under the DOE pursuant to Federal Rule of Civil Procedure 50(b) or Rule 59(e); and (2) grant JMOL of no damages.  Alternatively, the Court should order a new trial on infringement under the DOE under Rule 59(a).  If the Court upholds the jury verdict of infringement of the '009 patent under the DOE, it should grant JMOL that the '009 patent is invalid, or alternatively order a new invalidity trial under Rule 59(a) due to improperly admitted secondary considerations evidence.

## II.   LEGAL STANDARDS

**JMOL Under Rule 50(b)**: "To prevail on a renewed motion for JMOL following a jury trial, a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings."  *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quotation marks omitted).  "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (quotation marks omitted).

**Altering/Amending Judgment Under Rule 59(e)**: Rule 59(e) "allows a trial court to correct a verdict that is incorrect as a matter of law."  *Watcher v. Pottsville Area Emergency Med. Servs., Inc.*, 248 F. App'x 272, 275 (3d Cir. 2007).

**New Trial Under Rule 59(a)**: The Court may grant a new trial based on "substantial errors in admission or rejection of evidence." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

## III.   THE COURT SHOULD GRANT JMOL OF NONINFRINGEMENT OF THE '009 PATENT UNDER THE DOE OR ALTERNATIVELY A NEW TRIAL

Comcast does not infringe asserted claims 1, 16, and 22 of the '009 patent for numerous reasons: (1) NexStep's DOE theory vitiates the "single action" claim requirement and is unsupported by substantial evidence; (2) NexStep failed to prove other claim requirements, including that the claimed "single action" causes the claimed steps, the "determin[ing] a support center" requirement, and the "buffer[ing]" requirement; and (3) NexStep's DOE theory ensnares the prior art.[1]   The Court should therefore grant judgment of noninfringement under the DOE. Alternatively, the Court should order a new trial on infringement under the DOE because NexStep's expert testimony should have been excluded under *Daubert*.

### A.   The Court Should Grant JMOL of Noninfringement Under the DOE Pursuant to Rule 50(b) and Rule 59(e) Because NexStep's DOE Theory Regarding the Claimed "Single Action" Is Legally and Factually Deficient

The jury found infringement of the '009 patent only under the DOE.  (D.I. 331.)  That verdict should not stand for multiple independent reasons: NexStep's argument that multiple actions are collectively equivalent to a "single action" vitiates the claim language; and Dr. Selker's confusing and conclusory testimony does not constitute substantial evidence.

#### 1.   NexStep's DOE Theory

NexStep asserts that Comcast infringes based on Comcast's Xfinity My Account app operating on a mobile device (*i.e.*, a smartphone or tablet), or on a set-top box, in connection with

---

[1] In addition, the Court should grant JMOL of no indirect infringement because "the patentee always has the burden to show direct infringement for each instance of indirect infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006).

other Comcast devices and systems.  Each asserted claim of the '009 patent requires either a method performed "using a concierge device" or a "concierge device … configured to perform" a method.  (JTX-2, 42:45-63, 43:43-44:8.)  All three asserted claims require that "responsive to a single action performed by a user, the concierge device communicat[es] with a home gateway," which "cause[s]" the "home gateway" to perform four specific steps.  (JTX-2, 42:45-63, 43:43-44:8.)  The "single action" requirement is the only '009 patent claim limitation for which NexStep presented any DOE analysis.[2]  (D.I. 346-349 [Trial Transcript] ("Tr.") 382:19-385:15.)

The'009 patent includes two passages of examples of user actions that may constitute the claimed "single action."  It first states that "[t]he single action could be a button press, a single or double tap of a pad, a wave of the device or spoken word(s)."  (JTX-2, 12:15-24.)  Similarly, the patent later explains that a concierge device "can accept single user actions … such as button presses, menu selections or verbal responses to … verbal prompts."  (JTX-2, 4:33-42.)

The claims require that the "single action" "caus[e]" the "home gateway" to perform four specific steps: "buffer consumer device identification information for the selected consumer device," "determine a support center for a support session," "initiate the support session for the consumer device," and "forward automatically the consumer device identification information during the support session."  (JTX-2, 42:45-63, 43:43-44:8.)  At trial, NexStep's expert Dr. Selker agreed that the claims require the "single action" to cause *all* of those four specified steps to occur. (Tr. 432:8-21 ("Q. … If there is a single action which only causes three of the four to happen, no infringement; correct? A. Correct. Q. If there is a single action that only requires two of the four to happen, no infringement; correct? A. Correct. Q. If there's a single action that only makes one of the four happen, no infringement; correct? A. Correct.").)  Likewise, Dr. Selker agreed that "if

---

[2] DOE evidence "must be presented on a limitation-by-limitation basis." *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

there's a product that has all four things occur but they're not the result of a single action, there's no infringement."  (Tr. 432:22-25.)

Comcast does not infringe the asserted claims because, among other reasons (*see infra* § III(B)), the My Account app does not satisfy the "single action" requirement.  Instead, the accused troubleshooting processes in the My Account app require multiple discrete actions, such as separate button presses.  Dr. Selker acknowledged as much; he testified that the four required events are (allegedly) satisfied by My Account app processes that require a *series* of actions. (*See generally* Tr. 318-326, 329-330, 340-345.)  For one example, Dr. Selker testified that the precipitating "single action" for the device restart process is the following *series* of actions: (1) "opening" the app; (2) "click[ing]" a "home" icon; (3) "making a single click on the TV [icon]"; and (4) selecting a "restart" option.  (Tr. 343:16-344:3.)  Dr. Selker failed to explain how any of the four claimed steps that must be performed by the "home gateway" are caused by any specific alleged "single action."  (*See generally* Tr. 349:16-369:19.)  And on cross-examination, Dr. Selker agreed that restarting a cable modem requires the user to "press a button to make something happen" for "each of … five steps," and that restarting a set-top box also requires "five different steps."  (Tr. 439:21-444:1 (discussing PTX-233).)

Accordingly, Comcast's expert Dr. Villasenor explained that "there's no single action that causes all of the required events."  (Tr. 624:7-20; *see generally id.*, 624-644.)  As Comcast's Chief Customer Experience Officer Mr. Karinshak testified, there is no "single action a user can take that" causes both required steps of "initiat[ing] a support session and determin[ing] a support center …."  (Tr. 597:25-598:4.)

In addition to his unsuccessful literal infringement position, Dr. Selker testified that "the single action element is met by the doctrine of equivalents."  (Tr. 383:25-384:10.)  Dr. Selker's DOE theory was that "to diagnose your device, you're going through a single action" even though

"there's several button presses along the way …." (Tr. 383:25-384:10.) Dr. Selker then testified—briefly, vaguely, and superficially—as to purported application of the "function-way-result" test. (Tr. 383:25-385:15.)

### 2. NexStep's DOE Theory Vitiates the "*Single* Action" Requirement

A DOE theory is improper if it "would entirely vitiate a particular claim element." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17, 39 n.8 (1997). Vitiation is "a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012) (quoting *Warner-Jenkinson*, 520 U.S. at 39 n.8). In *Tronzo v. Biomet, Inc.*, for example, the Federal Circuit rejected a DOE theory under which "*any* shape would be equivalent to [a] conical limitation" because "it would write the [conical] limitation out of the claims." 156 F.3d 1154, 1160 (Fed. Cir. 1998) (emphasis in original).

According to NexStep's expert Dr. Selker, "several button presses along the way" through the My Account app troubleshooting processes are the same as a "single action." (Tr. 383:25-384:10.) That interpretation necessarily equates "several actions" with a "single action," and therefore "write[s] the [single action] limitation out of the claims." Dr. Selker's DOE theory is also contradicted by his own testimony that "single" means one, as well as by Dr. Balakrishnan's acknowledgment that "'single' is not the same as 'multiple.'" (Tr. 449-51, 771:5-24.) Indeed, in this context, multiple is the direct opposite of single.

Where, as here, the accused feature is the "antithesis" of what is claimed, the DOE cannot supply a missing limitation. *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006) (affirming summary judgment of noninfringement where the DOE theory "would change 'before' to 'after'"). In fact, courts have rejected Dr. Selker's very theory—equating single and plural—in varying technical contexts. *See Am. Calcar, Inc. v. Am. Honda Motor Co*., 651 F.3d

1318, 1339 (Fed. Cir. 2011) ("finding a signal from one source to be equivalent to 'signals from a plurality of sources' would vitiate that claim limitation by rendering it meaningless"); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1378, 1382 (Fed. Cir. 2000) (affirming summary judgment of noninfringement because the "claim language expressly requires two springs" but the accused device "contains a single spring"); *Kewazinga Corp. v. Microsoft Corp.*, --- F. Supp. 3d ---, No. 1:18-CV-4500-GHW, 2021 WL 4066596, at *16 (S.D.N.Y. Sept. 1, 2021) ("[Patentee's] equivalents theory relies on a single camera …, a position that … vitiates the requirement [of] multiple cameras ….").

The troubleshooting processes of the accused My Account app undisputedly require ***multiple*** user actions precisely of the sort—*e.g.*, "button presses"—that the '009 patent describes as "***single***" actions.  (*E.g.*, Tr. 443:24-444:1 ("Q. Depending on how you count them, there are approximately five different steps; correct? A. Yes, that's right."); JTX-2, 4:33-42, 12:15-24.) Although Dr. Selker attempted to explain away his collapsing of "single" and "several," his explanations ranged from irrelevant (Tr. 444:22-445:4 (analogizing to picking up and throwing a baseball)) to self-defeating (Tr. 438:18-22 (asserting that "no single action does anything in the world," which only reinforces that his theory vitiates the "single action" requirement)).

Accordingly, judgment of no infringement under the DOE should be granted, either under Rule 50(b) or under Rule 59(e), which "allows a trial court to correct a verdict that is incorrect as a matter of law."  *Watcher*, 248 F. App'x at 275.

### 3.    Dr. Selker's Testimony Is Not Substantial Evidence of Equivalence

Under the "function, way, result" test, all three requirements must be met.  *See Lear Siegler, Inc. v. Sealy Mattress Co. of Mich.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989) ("[A] jury must be separately directed to the proof of each … element" of the function, way, result test.).  The DOE also requires "particularized testimony."  *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320,

6

1328 (Fed. Cir. 2007).  That testimony must include "analysis of the role played by each element in the context of the specific patent claim." *Warner-Jenkinson*, 520 U.S. at 40.  Conclusory DOE testimony is not substantial evidence. *See Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1382 (Fed. Cir. 2007) (affirming summary judgment because plaintiff "only presented the district court with conclusory statements about equivalents").  Application of the function, way, result test also requires "linking argument … between the claimed invention and the accused device or process." *Texas Instruments*, 90 F.3d at 1567.

Dr. Selker's testimony on ***each*** of the three prongs of the function, way, result test—spanning a total of less than two pages of trial transcript—was conclusory and insufficient. (Tr. 383:25-385:15.)  It cannot sustain a jury verdict. *See TC Tech. LLC v. Sprint Corp.*, No. 16-153-RGA, 2019 WL 2515779, at *11 (D. Del. June 18, 2019) (excluding expert testimony regarding doctrine of equivalents because it was "wholly conclusory" given the offering party's "fail[ure] to show that those conclusions [were] based on sufficient facts or data"); *MiiCs & Partners Am., Inc. v. Toshiba Corp.*, 282 F. Supp. 3d 844, 851 (D. Del. 2017) (granting summary judgment of no infringement under the DOE because "Plaintiffs offer[ed] only their expert's conclusory statement that their proposed equivalent meets the function-way-result test").  And far from providing "linking argument," Dr. Selker's testimony was untethered from the claim language and the details of the operation of the My Account app.

**Alleged "function"**:  The function of the "single action" in the asserted claims is to "cause" the "home gateway" to perform four specific steps.  (JTX-2, 42:45-63, 43:43-44:8.)  Dr. Selker testified that "several button presses along the way" in the My Account app perform "the same function" as the claimed "single action," but he did not explain how any specific set of "several

button presses" causes any particular alleged home gateway to perform those steps.[3]  (Tr. 383:25-384:12.)  In fact, he did not explain the "function" of *either* the "button presses" or the claimed "single action."  What he did say was superficial and circular: "I say that's the same function.  And that it's going to have the same purpose which is what I was talking about, I hope."  (Tr. 383:25-384:10.)  Dr. Selker then stated he "was confused by that."  (Tr. 384:11-12.)

Moreover, Dr. Selker presented no evidence that the "several button presses" he referred to even *exist* in the My Account functionality of Comcast set-top boxes.  Dr. Selker's entire testimony regarding the My Account set-top box functionality consisted of a reference to a "picture split across" pages 5-6 of PTX-516, which he described as "showing these different devices, the account details, excuse me, the home, the Internet, the phone."  (Tr. 377:17-378:13.)  That picture, however, does not show "the home," "the Internet," or "the phone"; it shows "Account Details," "Balance Due," and "No Appointments":



---

[3] On cross-examination, Dr. Selker acknowledged that his DOE theory contradicted his expert report.  (Tr. 444:22-445:4, 445:14-446:5 (stating that "multiple single actions" in his report was "a typo" and he "meant multiple single steps").)

(PTX-516 at 5-6 (modified to combine top and bottom half of image).)   And when NexStep's counsel asked "how [PTX-516] support[s] your opinion," Dr. Selker stated "[y]eah, so that's right. And you go to a web page and see better pictures, probably."  (Tr. 378:10-13.)  Expert testimony unsupported by the cited documentary evidence is not substantial evidence.  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

**Alleged "way"**:  Dr. Selker testified that the "way" the "several button presses" of the My Account app allegedly achieve the same function as the claimed "single action" is that "the stuff is all kept up in the cloud for the purpose of doing this and it's going to go and diagnose it using the home gateway and it's going to solve my problem without me having to go through and put in my model numbers and all of that stuff."  (Tr. 384:13-385:1.)  That testimony leaves entirely unexplained how a user performing "several button presses" is supposedly the same "way" of performing the claimed method as a user performing a "single action."[4]  As to that necessary predicate for his DOE theory, Dr. Selker said nothing at all.  In addition, the "single action" requirement has nothing to do with the user "put[ting] in … model numbers and all of that stuff." To the extent the claims relate to "model numbers" at all, it is through requirements relating to "consumer device identification information," which must be "buffer[ed]" and "forward[ed] automatically" by the "home gateway."  (JTX-2, 42:45-63, 43:43-44:8.)

**Alleged "result"**:  Dr. Selker testified that "the single action achieves substantially the same result" because "this thing is going to be restarted, refreshed, whatever is going to have to

---

[4] The remainder of Dr. Selker's testimony on the "way" prong did not provide the missing reasoning: "[I]t's really literally using … this Concierge as more of a – somebody to give authorization than to do the actual function.  I'm not down there in the machine room, you know, putting instructions into a computer to make it do each of these things."  (Tr. 384:17-385:1.)

happen with it without me having to tangle with understanding all of the issues of being an IT professional or whatever it takes to get this thing up. And so it's going to come with a result of my modem working, you know." (Tr. 385:2-9.) But the result of the ***claimed*** "single action" is that the "home gateway" performs four specific steps. (JTX-2, 42:45-63, 43:43-44:8.) Dr. Selker's DOE testimony did not address that result at all.

**B.     The Court Should Grant JMOL of Noninfringement Under the DOE Pursuant to Rule 50(b) Because NexStep Failed to Prove that Additional Claim Limitations Are Satisfied**

**1.     The Claimed Events Are Not "Responsive to" a "Single Action Performed by a User"**

NexStep failed to carry its DOE burden in at least three other ways. First, no reasonable jury could have found that the four claimed events are "responsive to a single action." Dr. Selker did not identify any alleged "single action" that causes those events, and he admitted that all of the My Account app processes involve multiple user actions. *See supra* § III(A)(1). NexStep's failure to set forth substantial evidence showing the four events occur "responsive to a single action" warrants JMOL of noninfringement.

**2.     No "Determin[ing] a Support Center for a Support Session"**

Second, Dr. Selker failed to provide any comprehensible explanation as to how any feature of the My Account app "determin[es]" a "support center." When asked how this limitation was satisfied for the '009 patent, he stated that "[b]asically the idea is that this gateway up there has this information and it's going to keep it at the ready and add to it to make – to make this, to solve this problem for this person we call a support session." (Tr. 349:16-350:4; *see also id.* at 358:8-17 ("Q. [H]ow does this support your opinion … that it's meeting the element of … determin[ing] a support center for a support session? A. Well, it is definitely very engaged in identifying. It's so engaging that they're using medical terminology about what's going to be the problem."),

351:3-10 (asked whether the "support center" can be "in the cloud," stating "I have Xfinity solving problems for Xfinity," which is "what we call home gateway").)  Thus, NexStep failed to present substantial evidence of how any functionality relating to the My Account app chooses a particular support center among multiple options, as the asserted claims require.

In addition, Dr. Selker never explained how any "determin[ation]" of a "support center" occurred in response to anything he identified as the claimed "single action performed by a user." (*See* Tr. 349:22-350:4, 358:8-17.)  Thus, JMOL of noninfringement is warranted.

### 3.  No "Buffer[ing] Consumer Device Identification Information"

Finally, all asserted claims of the '009 patent require that, when the user performs the "single action," it causes "the home gateway to buffer consumer device identification information for the selected consumer device."  (JTX-2, 42:45-63, 43:43-44:8.)  Dr. Selker asserted that this limitation is met when a Comcast subscriber performs a series of troubleshooting actions on the My Account app, such as "pressing Xfinity Assistant."  (Tr. 345:5-14.)  But Dr. Selker never identified a specific "home gateway" that allegedly performs the required buffering step.  Instead, he testified that the alleged "home gateway" is "everything in service of the home," *i.e.*, "all of the, you know, stuff that's known about you and about your devices and all of the machinery to make decisions about how to solve those problems and, you know, the ways of solving them with support centers."  (Tr. 342:22-343:8; *see also id.* ("a bunch of servers at Xfinity that can communicate anywhere to anybody"), 312:17-313:7 ("[A] cloud is just a bunch of computers that are somewhere else that everybody can use").)

Indeed, Dr. Selker testified on direct examination that the alleged buffering occurs ***without any user action***.  (Tr. 350:16-351:2 ("Q…. [C]an you just explain … how this is demonstrating this limitation to causing home gateway to buffer limitation that ends in a support session? ... A. What you're seeing here is, without the person involved, right, it's kind of a shadow.  We're

11

already -- we're out there doing it.  We're out there looking at this thing and getting information and sending it back and forth and figuring out that there's -- if there's problems or not.").)  Without substantial evidence that the claimed buffering step is "responsive to" a "single action performed by a user," JMOL is warranted.

C.     **The Court Should Grant JMOL of Noninfringement Under the DOE Pursuant to Rule 50(b) and Rule 59(e) Because NexStep's DOE Theory Ensnares the Prior Art**

NexStep's DOE theory is also separately barred because it would ensnare the prior art. *Intendis GMBH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016) ("A patentee may not assert a scope of equivalency that would encompass, or ensnare, the prior art." (quotation marks omitted).)  Ensnarement is a legal question "to be determined by the court." *Jang v. Bos. Sci. Corp.*, 872 F.3d 1275, 1288 (Fed. Cir. 2017) (quotation marks omitted).

One method by which the Court can assess whether a DOE theory ensnares the prior art is through a two-step hypothetical-claim analysis.  *Intendis*, 822 F.3d at 1363.  The patent owner "construct[s] a hypothetical claim that literally covers the accused device," and the Court then assesses the prior art "to 'determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art.'"  *Id.* (quotation marks omitted).

NexStep failed to "carr[y] its burden of persuading the court that the hypothetical claim," which must "contain[] both the literal claim scope and the accused device," "is patentable over the prior art."  *Id.* (quotation marks omitted); *see also Agrofresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2020 WL 7024867, at *15 (D. Del. Nov. 30, 2020) ("Plaintiff does not propose a hypothetical claim and the Court will not draft one to remedy Plaintiff's failure."); *Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2021 WL 292033, at *8 (N.D. Cal. Jan. 28, 2021) ("Patent owner does not contend it is not on notice of defendant's ensnarement defense.  So, it must articulate an adequate hypothetical claim.").  Accordingly, under Rule 59(e), the Court should

amend the judgment to reflect noninfringement under the DOE, as the current judgment "is incorrect as a matter of law." *Watcher*, 248 F. App'x at 275; *see Jang*, 872 F.3d at 1287 ("Because, as a threshold matter, Dr. Jang failed to submit a proper hypothetical claim for consideration, he was unable to meet his burden of proving that his doctrine of equivalents theory did not ensnare the prior art.  The district court thus correctly vacated the jury verdict of infringement under the doctrine of equivalents.").[5]

> **D.** **In the Alternative, the Court Should Order a New Trial on Infringement Under the DOE Pursuant to Rule 59(a) Because Dr. Selker's Testimony Should Have Been Excluded Under *Daubert* as Inconsistent with the Plain Meaning of "Single"**

As Comcast explained in support of its Motion for Summary Judgment and to Exclude Expert Opinions—and as is apparent from his trial testimony, *see supra* § III(A)(2)—Dr. Selker's opinions are inconsistent with the plain meaning of the word "single." (D.I. 198 at 16-17.)  Those opinions should have been excluded under *Daubert* because expert testimony based on an incorrect claim interpretation is "unreliable and unhelpful to the finder of fact."  *TQ Delta, LLC v. ADTRAN, Inc.*, No. 14-954-RGA, 2019 WL 5626638, at *1 (D. Del. Oct. 31, 2019).

Comcast's *Daubert* motion was denied in relevant part.[6]  (D.I. 267 at 13-15, 45-46.)  That decision relied on "testimony from the inventor" as to what "the words 'single action' were 'meant to convey'" (D.I. 267 at 15), but "inventor testimony as to the inventor's subjective intent is

---

[5] As Comcast explained in its pretrial proffer (D.I. 323), NexStep cannot argue that it was unaware of Comcast's ensnarement defense.  Comcast provided notice that NexStep's infringement theories ensnared the prior art at least by February 5, 2021.  (D.I. 328-1, Ex. 1 [Villasenor Rpt.], ¶¶ 40, 796, 1007; *see also id.* §§ XII.B, XII.C.)  NexStep opted not to address ensnarement or construct a hypothetical claim in its rebuttal or reply expert reports.  (Ex. B; D.I. 328-1, Ex. 2 [Selker Reply Rpt.], ¶¶ 193, 254.)

[6] Comcast did not object to Judge Fallon's Report & Recommendation on this issue.  However, "appellate rights … are not waived by a failure to object to a Magistrate Judge's decision."  *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 374 (D. Del. 2014).

irrelevant to the issue of claim construction." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008).

Because Dr. Selker's testimony should have been excluded, if the Court does not grant judgment in Comcast's favor, it should at the very least order a new trial before a jury untainted by Dr. Selker's unreliable testimony. *See Northeast Women's Center, Inc. v. McMonagle*, 689 F. Supp. 465, 468 (E.D. Pa. 1988) (new trial may be justified by "substantial errors … in the admission or rejection of evidence"), *aff'd in relevant part*, 868 F.2d 1342 (3d Cir. 1989).

## IV.   THE COURT SHOULD GRANT JUDGMENT OF NO DAMAGES BECAUSE NEXSTEP HAS NO VIABLE DAMAGES CLAIM

Prior to trial, the Court properly excluded the opinions of NexStep's damages expert as premised on an arbitrary 50/50 cost-split methodology contrary to well-established Federal Circuit law, including *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014).  (D.I. 313, 314.) The Court also correctly decided that NexStep did not otherwise properly or timely disclose any viable damages claim.  (Ex. A, 9/17/2021 Email Order ("I exclude from the trial all testimony and/or evidence solely offered to prove damages. I do not think any viable damages theory has been properly and timely disclosed. Thus, the jury coming in Monday will not consider damages.").)  *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1369 (Fed. Cir. 2021) (affirming exclusion of damages evidence where plaintiff failed to make a timely disclosure of damages information pursuant to Rule 26(a)(1)(A)(iii)).

Thus, at trial, NexStep, presented no evidence of damages.  As a result, the Court should enter judgment of no damages.  *See Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990) ("[T]o argue that [the reasonable royalty] requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute." (quotation marks omitted)); *see also Apple Inc.*

*v. Motorola, Inc.*, 757 F.3d 1286, 1328 (Fed. Cir. 2014) ("in a case completely lacking any evidence on which to base a damages award, the record may well support a zero royalty award")*, overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).[7] Further, as explained in Comcast's motion pursuant to Rule 50(a) (D.I. 327 at 18), Comcast is also entitled to JMOL of no liability for infringement because NexStep failed to make any showing of harm.[8]  *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 302 (3d Cir. 1991) ("[T]he plaintiffs failed to adduce at trial that quantum of evidence on the issue of damages required to withstand a directed verdict on any of the theories of liability alleged.").

## V.   IF THE COURT UPHOLDS THE VERDICT ON INFRINGEMENT OF THE '009 PATENT UNDER THE DOE, IT SHOULD GRANT JUDGMENT THAT THE ASSERTED CLAIMS OF THE '009 PATENT ARE INVALID AS OBVIOUS

### A.   The Court Should Grant Judgment of Invalidity

Comcast demonstrated by clear and convincing evidence that the combination of U.S. Patent No. 7,260,597 ("Hofrichter") and U.S. Patent Publication No. 2011/0022641 ("Werth") renders obvious claims 1, 16, and 22 of the '009 patent.  (DTX-0629; DTX-0588.)  No reasonable jury could find the '009 patent not invalid in light of that combination.

The '009 patent is directed to enhancing customer service and troubleshooting, which was already a crowded field before the patent's priority date.  (Tr. 143:5-13, 305:12-18, 606:16-19.) Hofrichter (filed November 2, 2000) and Werth (filed July 23, 2010) are prior art to the '009 patent (filed January 5, 2012).  (DTX-0629 at 1; DTX-0588 at 1; JTX-2 at 1; Tr. 612:25-614:2, 657:19-23).  As Dr. Villasenor testified, the field of automated customer support was "flourishing"—

---

[7] Unlike here, where NexStep had no damages evidence to present, in *Apple v. Motorola* "not all of [Apple's] damages expert testimony … was excluded," such that "Apple presented admissible evidence that it is entitled to a non-zero royalty."  *Apple*, 757 F.3d at 1328-30.

[8] Because the jury correctly determined that Comcast does not literally infringe, and Comcast is also entitled to judgment of noninfringement under the DOE, the Court need not decide the effect on liability of NexStep's failure to present any damages evidence.

"robust, thriving, [and] full of activity"—prior to the '009 patent.  (Tr. 606:20-607:6, 614:3-615:2.) Dr. Villasenor also testified that the specification of the '009 patent itself acknowledges prior art such as IBM's smart home technology and GM's well-known and "analogous" OnStar one-button help.  (Tr. 605:22-606:15, 614:13-615:9; JTX-2 at 2:20-27, 22:37-40.)    As a result, as Dr. Villasenor explained, all the building blocks of the '009 patent were known before NexStep filed its application, including (1) automated troubleshooting; (2) selecting a support center (including as taught by Werth); (3) customer support apps for smartphones; (4) remote device restart; (5) one-touch help; and (6) home gateways.  (Tr. 605:22-608:11, 614:13-615:20, 652:14-656:24; *see also* JTX-2 at 2:20-27, 22:37-40.)

Like the '009 patent, both Hofrichter and Werth describe remote one-touch help for consumer devices using remote controls and home gateways.  (DTX-0629 at Fig. 1, Fig. 3, Fig. 4, Fig. 9, 3:1-4, 5:4-29, 7:48-56, 8:35-58, 9:17-33, 9:57-61, 15:9-16:37; DTX-0588 at Abstract, Fig. 1, Fig. 2, Fig. 5, [0005], [0030], [0041], [0046], [0054], [0056], [0081], [0086], [0088], [0089], [0107].)    And as Dr. Villasenor explained, Hofrichter teaches the claimed single action troubleshooting technique using a home gateway located within a customer's home, while Werth teaches a system using a home gateway located outside a customer's home (*e.g.*, in the cloud), thus disclosing all elements of the asserted claims, including the "cloud-based" home gateway of dependent claim 22.  (Tr. 653:6-17, 655:14-21, 659:4-663:24; DTX-0629 at Figs. 1, 3, 7:30-47, 7:57-58, 8:35-39; DTX-0588 at Fig. 1, Fig. 2, Fig. 5, [0005], [0030], [0041], [0046], [0054], [0056], [0081], [0086], [0088], [0089], [0107].)    It would have been obvious to modify Hofrichter's single action troubleshooting technique to move the home gateway outside of the home to the cloud, as Werth discloses.  (Tr. 656:6-14; 663:5-23; 664:6-16.)    Indeed, as Dr. Stepanian testified, by the "spring of 2010" (shortly before the July 23, 2010 filing of the Werth application), "everything was moving to the ***cloud***," and the '009 patent itself acknowledges that,

in September 2010, "IBM ha[d] published 'The IBM vision of a smarter home enabled by *cloud*

technology'." (Tr. 185:1-17 (emphasis added), 186:17-20; JTX-2 at 2:20-27 (emphasis added).)

Further, Dr. Villasenor demonstrated that a skilled artisan would have been motivated to

combine the teachings of Hofrichter and Werth, which are "in the same field of endeavor and in

the same technology field." (Tr. 664:6-16.) Hofrichter originated at Sony, a large "consumer

electronics company." (Tr. 608:25-609:14; DTX-0629 at cover.) And Plumchoice, which filed

the Werth application and was later acquired by Allstate, was "a company involved in technology-

assisted customer support." (Tr. 612:25-613:18.)

Moreover, the teachings of Hofrichter and Werth are very similar. Hofrichter discloses "a

button that says e-service" (*i.e.*, a "single-action help button"), "automated troubleshooting," and

"a home gateway device … connected to a series of consumer devices." (Tr. 653:6-13, 654:3-9,

656:6-14.) Similarly, Werth discloses "a button on a personal digital assistant" such as a

smartphone and determining a support center using "centralized service that can select from"

varying types of support. (Tr. 653:6-20, 655:14-21.) Therefore, given the complementary nature

of Hofrichter and Werth—both of which disclose single-touch help in a system using a concierge

device (*e.g.*, remote control) and home gateway—their combination simply reflects technological

advancement over the decade between them, including the trend to cloud-based technologies, as

evidenced in Werth and confirmed by Dr. Stepanian. A skilled artisan would therefore have been

motivated to combine their teachings, especially in light of the crowded field, and would have

expected success "without doing experimentation." (Tr. 664:6-664:16; 666:2-16.)

Dr. Villasenor also testified to the absence of evidence of secondary considerations—"no

evidence of commercial success," no licensing, and no "industry praise." (Tr. 669:21-671:5.) In

light of that fact and the disclosures in Hofrichter and Werth in a crowded field, no reasonable jury

could have concluded that claims 1, 16, and 22 of the '009 patent are not invalid.

**B.      In the Alternative, the Court Should Order a New Trial on Invalidity Because Dr. Balakrishnan Should Not Have Been Permitted to Testify Regarding Secondary Considerations of Nonobviousness**

Dr. Balakrishnan only provided speculative testimony on secondary considerations of nonobviousness, relying entirely on two IBM documents as allegedly showing industry praise.[9] (Tr. 758:2-762:4 (discussing PTX-0797 and PTX-1178).)  But those two documents cannot be "linked to the patented invention," *Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010), and therefore Dr. Balakrishnan did not "establish a nexus between the industry praise and the patented technology," as opposed to praise the "product received generally." *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 626, 650 (D. Del. 2014), *aff'd sub nom. Cot'n Wash, Inc. v. Sun Products Corp.*, 606 F. App'x 1009 (Fed. Cir. 2015).  NexStep's alleged evidence of industry praise is deficient for two independent reasons.

*First*, the IBM documents do not address the alleged invention of the '009 patent; in fact, both documents predate the '009 patent.  (PTX-1178 at 1 (January 6-9, 2011); PTX-0797 at 1 (August 18, 2011); JTX-2 at 1 (application filed January 6, 2012).)[10]  And PTX-0797 states that "NexStep has technology for a 'cloud remote' that IBM is looking to use … with clients," while PTX-1178 purportedly discusses "the NexStep cloud," but both are silent as to any specific NexStep technology.  (PTX-0797 at 3; PTX-1178 at 8; Tr. 201:7-10; Tr. 760:25-762:4.)  Dr. Balakrishnan thus testified that IBM was "saying that ***something*** is substantial and important," but could not identify what IBM was referring to.  (Tr. 761:25-762:4 (emphasis added).)  The two documents therefore cannot constitute industry praise.  *See Henny Penny Corp. v. Frymaster LLC*,

---

[9] The Final Jury Instructions identified long-felt need and industry praise as the two relevant secondary considerations of nonobviousness.  (D.I. 337 at 15.)  However, NexStep presented no evidence of a long-felt need by others or how the alleged inventions satisfied that supposed need.

[10] NexStep filed the provisional application for the '009 patent on January 5, 2011.  (PTX-1171 at 1.)  But, as the Court explained, a provisional application is not a patent, and thus, cannot serve as the basis for industry praise.  (*See* Tr. 568:12-569:7.)

938 F.3d 1324, 1332 (Fed. Cir. 2019) ("[t]o determine whether the patentee has met" "the burden of showing that a nexus exists," the court must "consider the correspondence between the objective evidence and the claim scope" (quotation marks omitted)); *see also Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1038 (Fed. Cir. 2017), *as amended on reh'g in part* (Mar. 15, 2018), *as corrected* (Mar. 28, 2018) ("Bosch presented no evidence to establish that the tools receiving these awards fall within the claimed subject matter ….").

*Second*, by the time of the two 2011 IBM documents, IBM had a years-old partnership with NexStep.  (PTX-0797 at 1; PTX-1178 at 1; Tr. 199:7-10, 206:7-15 ("We started working, IBM and NexStep started working early on from 2008.  And as that relationship advanced, then, you know, we became business partners, obviously, and that continued -- continued through 2015, '16."), 253:2-8.)  Thus, any commentary by IBM on NexStep's technology is "self-referential commendation fall[ing] well short of demonstrating true industry praise."  *Bayer Healthcare Pharms., Inc. v. Watson Pharms., Inc.*, 713 F.3d 1369, 1377 (Fed. Cir. 2013).

Because the jury was impermissibly allowed to consider legally insufficient evidence of industry praise, if the Court does not grant judgment for Comcast of noninfringement under the DOE, it should grant a new trial on invalidity.  *See Carrier Corp. v. Goodman Glob., Inc.*, 162 F. Supp. 3d 345, 379-80 (D. Del. 2016) (granting new trial in part because jury was presented with irrelevant secondary considerations evidence); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1358-59 (Fed. Cir. 2000) (reversing denial of JMOL in part because there was no nexus between the secondary considerations and the claimed invention).

## VI.   CONCLUSION

The Court should grant judgment of no infringement of the '009 patent under the DOE and no damages.  In the alternative, the Court should order a new trial on DOE infringement of the '009 patent at which Dr. Selker's testimony inconsistent with the plain meaning of "single" should

be excluded.  If the Court upholds the jury verdict as to infringement under the DOE, it should

grant JMOL on invalidity of the '009 patent, or alternatively order a new trial on invalidity of the

'009 patent and exclude irrelevant evidence of secondary considerations.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

William F. Lee
Sarah B. Petty
Kate Saxton
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA  02109
(627) 526-6000

Amy Kreiger Wigmore
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6096

Mary (Mindy) V. Sooter
Nora Q.E. Passamaneck
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO  80202
(720) 274-3135

October 26, 2021

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

Attorneys for Defendant

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 26, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 26, 2021, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                                   *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON, LLP
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Paul J. Andre, Esquire                                                      *VIA ELECTRONIC MAIL*
Lisa Kobialka, Esquire
Greg Proctor, Esquire
Hien Lien, Esquire
Missy G. Brenner, Esquire
James Hannah, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
*Attorneys for Plaintiff*

Jonathan S. Caplan, Esquire                                                 *VIA ELECTRONIC MAIL*
Aaron M. Frankel, Esquire
Marcus A. Colucci, Esquire
Benu Wells, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
*Attorneys for Plaintiff*

*/s/ Brian P. Egan*
_____
Brian P. Egan (#6227)