IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEXSTEP, INC., a Delaware Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 19-1031-RGA-SRF |
| ) | |
| COMCAST CABLE COMMUNICATIONS, ) | **PUBLIC VERSION** |
| LLC a Delaware Limited Liability Company ) | |
| ) | |
| Defendant. ) | |

### NEXSTEP'S OPENING BRIEF IN SUPPORT OF ITS <u>RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Jonathan S. Caplan
Aaron M. Frankel
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: October 26, 2021
Public version dated: November 1, 2021

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff*
*NexStep, Inc.*

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II. INTRODUCTION .................................................................................................................. 1

III. STATEMENT OF THE FACTS ........................................................................................... 2

IV. ARGUMENT ......................................................................................................................... 5

    A. Comcast Did Not Dispute the Evidence Demonstrating That it Satisfied All the Claim Elements, Other Than the Single Action Element ........................................ 6

    B. Comcast's My Account App Satisfies Each of the Undisputed Claim Limitations .................................................................................................................... 9

    C. The My Account App Initiates Automated Troubleshooting Based on a Single Action ......................................................................................................................... 15

V. CONCLUSION .................................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*,
    297 F.3d 294 (3d Cir. 2002)........................................................................................................6

*Johnson v. Comm'r of Soc. Sec.*,
    529 F.3d 198 (3d Cir. 2008)........................................................................................................6

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)...................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 50(b)...............................................................................................1

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff NexStep, Inc. ("NexStep") filed this action on June 3, 2019, asserting that Defendant Comcast Cable Communications, LLC ("Comcast") infringes multiple patents.  D.I. 1.  The Court presided over a jury trial on infringement and validity of the Asserted Claims of U.S. Patent Nos. 8,280,009 ("'009 Patent") and 9,866,697 ("'697 Patent").[1]  The jury found that (1) Comcast infringes the Asserted Claims of the '009 Patent under the doctrine of equivalents, (2) Comcast does not literally infringe the Asserted Claims of the '009 Patent, (3) Comcast does not infringe the Asserted Claims of the '697 Patent, and (4) all of the Asserted Claims are valid.  D.I. 331 (Verdict Form); D.I. 341 (Trial Verdict).[2]

After the close of Comcast's case-in-chief, NexStep moved for judgment as a matter of law ("JMOL"), *inter alia*, that Comcast literally infringes the Asserted Claims of the '009 Patent.  Trial Tr.[3] at 789:9-794:19; D.I. 329.  The Court reserved decision on NexStep's motion for JMOL.  Pursuant to Federal Rule of Civil Procedure 50(b), NexStep now renews its motion for JMOL that Comcast directly infringes the Asserted Claims of the '009 Patent.

II.     **INTRODUCTION**

JMOL that Comcast's My Account App literally infringes the '009 Patent is warranted.  NexStep presented overwhelming evidence that the My Account App satisfies every element of the Asserted Claims of the '009 Patent.  Indeed, Comcast essentially conceded that its My

---

[1] The Asserted Claims were Claims 1, 16, and 22 of the '009 Patent and Claim 1 of the '697 Patent.

[2] The parties' objections to Judge Fallon's Report and Recommendation on the parties' summary judgment and *Daubert* motions as to the '132, '669, '802, and '964 Patents are still pending. Thus, those patents were not addressed at trial and remain at issue in this case.  D.I. 267 (Report and Recommendation); D.I. 343 (Joint Status Report).

[3] "Trial Tr." refers to the Corrected Trial Transcripts at D.I. 346-349.

Account App meets every element except for the "responsive to a single action" claim element ("Single Action Element"). But on cross-examination, Comcast's corporate representative and technical experts admitted that only a single tap—which is undisputedly a single action—is needed to trigger the performance of every claimed action. Therefore, the jury's verdict of no literal infringement is not supported by any evidence, let alone substantial evidence, and the Court should find literal infringement as a matter of law.

### III.   STATEMENT OF THE FACTS

NexStep's '009 Patent is directed to a "concierge device," which allows consumers to obtain efficient and intelligent customer support for home devices, such as set top boxes, televisions, and home security systems. Trial Tr. at 145:8-147:22 (technology tutorial testimony of Dr. Reinman). Claim 1 is a method claim directed to initiating a support session for a consumer device using a concierge device. JTX-2 ('009 Patent) at Claim 1; Trial Tr. at 308:12-20 (infringement opinion testimony of Dr. Selker). Claim 16 claims a concierge device itself. JTX-02 ('009 Patent) at Claim 16; Trial Tr. at 308:16-23. Claim 22 depends from Claim 16 and adds the requirement that a home gateway is a cloud-based device to which the concierge device sends messages via a network that extends outside the home. JTX-2 ('009 Patent) at Claim 22; Trial Tr. at 379:25-380:8.

NexStep accused Comcast's My Account App of infringement. The My Account App operates on smartphones, tablets and set top boxes and troubleshoots customers' devices, such as set top boxes, routers, and home security devices (collectively, "Consumer Devices"). Trial Tr. at 328:8-329:3. It provides streamlined troubleshooting for customers' devices in a single process where it obtains device identification and diagnostic data, selects and contacts an

appropriate support center, initiates a support session, and uses device data to troubleshoot the various Consumer Devices.  *See, e.g.*, *id.* at 318:19-322:17.

Comcast essentially conceded that its My Account App satisfied all the elements of the Asserted Claims, except the Single Action Element.  For example, it was undisputed that the My Account App is a "concierge device," as the Court had construed that term.  *Id.* at 684:25-686:6 (Comcast's noninfringement expert: "I did not dispute that. That's right.").  Thus, Comcast's only defense to infringement was its contention that the My Account App did not buffer Consumer Device identification information, initiate a support session, and forward the identification information during the support session in response "to a single action."  *Id.* 428:14-432:25.

NexStep, however, offered into evidence multiple scenarios in which the My Account App performs these actions after a single button push.  For example, in the screen captures below, the My Account App home screen is shown on the left.  *Id.* at 484:22-485:11.  A single tap on the Xfinity Assistant icon (in the top left corner of the screen in the screen below on the left), launches the Xfinity Assistant function.  *Id.* at 527:22-531:19 (agreeing that "[o]ne single action" will launch Xfinity Assistant), 354:2-5 ("Q. And if you click on just the button that you showed us earlier to run Xfinity Assistant, just . . . on that single button, would it also run a system check? A. Yes.").  As shown in the screen capture on the right (below), after a single tap, Xfinity Assistant has started a troubleshooting session, identified a malfunctioning device ("TV issues have been detected"), and offered to provide troubleshooting help.  *See, e.g.*, *id.* at 354:2-5.



| **My Account App Home Screen.** | **Xfinity Assistant after a single tap from** |
| *See* Trial Tr. at 527:22-531:18. | **the user.**  *See* Trial Tr. at 527:22-531:18. |

NexStep also demonstrated additional scenarios where a single tap of the My Account App causes a troubleshooting protocol to launch. In the example below on the left, if the customer taps the "Continue" button, an automated protocol launches to troubleshoot a television. *See, e.g.*, Trial Tr. at 353:15-354:1. In the example below on the right, tapping the "Run Diagnostic Check" button launches a diagnostic and troubleshooting protocol for a customer's Internet router. *Id.* at 329:13-330:16.




PTX-522 at COM_NEX000218326 (on left, annotated to show "continue" button); PTX-512 at COM_NEX000165606 (on right, annotated to show "Run Diagnostic Check" button).

Thus, NexStep presented substantial evidence that in response to a single action, i.e., a single tap, the My Account App performs all of the claimed actions, satisfying the Single Action Element.

IV.     **ARGUMENT**

NexStep's motion for JMOL that Comcast literally infringes the '009 Patent should be granted because the verdict of no literal infringement was "not supported by substantial evidence." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1326

(Fed. Cir. 2016) (citation omitted). Here, considering "the evidence in the light most favorable to [Comcast], . . . the record [fails to] contain[] the 'minimum quantum of evidence from which a jury might reasonably'" could have found non-infringement, warranting JMOL. *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 299 (3d Cir. 2002) (citation omitted). In particular, NexStep provided unrebutted evidence that under multiple scenarios, a single tap of the screen, which is undisputedly a single action, causes all of the claimed actions to be automatically performed, thereby satisfying that Single Action Element.

Comcast did not offer any relevant evidence that a reasonable mind might accept as adequate to support a conclusion of noninfringement. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Comcast proffered only two witnesses. Its first, corporate representative Mr. Karinshak, admitted that he did not know the technical details of how the My Account App works, and confirmed that a single tap was sufficient to start the My Account App's Xfinity Assistant functionality which, as shown below, performs all of the recited actions. *See, e.g.*, Trial Tr. at 516:3-517:25 (unfamiliar with technical details), 528:1-531:18 (agreeing that "[o]ne single action" will launch Xfinity Assistant). The conclusory and unsupported testimony of Comcast's expert, Dr. Villasenor, was insufficient to stave off JMOL, particularly given that he conceded on cross-examination that the Single Action Element is satisfied, as discussed below. Thus, the verdict of no literal infringement of the '009 Patent was not based on substantial evidence and should be set aside as a matter of law.

A. **Comcast Did Not Dispute the Evidence Demonstrating That it Satisfied All the Claim Elements, Other Than the Single Action Element**

In its case-in-chief, NexStep presented detailed, element-by-element evidence demonstrating that Comcast's My Account App practices each of the claim elements in the Asserted Claims of the '009 Patent. In the table below, NexStep summarizes the testimony of

Comcast's technical expert conceding that each limitation is satisfied and representative evidence in the record establishing infringement.

| Limitation | Element | Status | Representative Infringement Support |
|---|---|---|---|
| **'009 Patent Claim 1** | | | |
| 1[pre] | A method of initiating a support session for a consumer device using a concierge device | **Undisputed** *see* Trial Tr. at 684:8-14 | Trial Tr. at 327:25-333:24 |
| 1[a] | associating the concierge device with a selected consumer device | **Undisputed** *see* Trial Tr. at 684:25-686:4 | Trial Tr. at 334:7-340:10 |
| 1[b] | responsive to a single action performed by a user, the concierge device communicating with a home gateway, including | Disputed only as to "responsive to a single action" | Trial Tr. at 340:11-349:15 |
| 1[c] | causing the home gateway to buffer consumer device identification information for the selected consumer device and determine a support center for a support session; and | **Undisputed** *see, e.g.,* Trial Tr. at 695:15-700:24, 701:9-707:7 | Trial Tr. at 349:16-360:18 |
| 1[d] | causing the home gateway to initiate the support session for the consumer device and to forward automatically the consumer device identification information during the support session, | **Undisputed** *see, e.g.,* Trial Tr. at 695:15-700:24, 701:9-707:7 | Trial Tr. at 360:19-369:19 |
| 1[e] | thereby allowing the support session either to bypass an automated attendant or interactive voice recognition system or to initiate an automated support protocol. | **Undisputed** *see* Trial Tr. at 686:5-10 | Trial Tr. at 369:20-372:4 |
| **'009 Patent Claim 16** | | | |
| 16[pre] | A concierge device comprising | **Undisputed** *see* Trial Tr. at 685:7-24 | Trial Tr. at 373:12-18 |
| 16[a] | at least one wireless data communication adapter, one or more input sensors, one or more outputs, and memory; and | **Undisputed** *see* Trial Tr. at 686:11-18 | Trial Tr. at 373:19-375:17 |

| Limitation | Element | Status | Representative Infringement Support |
|---|---|---|---|
| 16[b] | at least one processor configured to perform operations including: | **Undisputed** *see* Trial Tr. at 686:19-23 | Trial Tr. at 373:19-375:17 |
| 16[c] | associating the concierge device with a selected consumer device including selecting the consumer device from a menu of candidate consumer devices known to a home gateway; | **Undisputed** *see* Trial Tr. at 686:24-687:3 | Trial Tr. at 373:12-18, 376:5-378:24 |
| 16[d] | responsive to a single action performed by a user, the concierge device communicating with the home gateway, including | Disputed only as to "responsive to a single action" | Trial Tr. at 373:12-18, 378:25-379:24 |
| 16[e] | causing the home gateway to buffer consumer device identification information for the selected consumer device and determine a support center for a support session; and | **Undisputed** *see, e.g.,* Trial Tr. at 695:16-700:24, 701:9-707:7 | Trial Tr. at 373:12-18, 378:25-379:24 |
| 16[f] | causing the home gateway to initiate a support session for the consumer device and to forward automatically the consumer device identification information during a support session, | **Undisputed** *see, e.g.,* Trial Tr. at 695:15-700:24, 701:9-707:7 | Trial Tr. at 373:12-18, 378:25-379:24 |
| 16[g] | thereby allowing the support session either to bypass an automated attendant or interactive voice recognition system or to initiate an automated support protocol. | **Undisputed** *see* Trial Tr. at 687:4-7 | Trial Tr. at 373:12-18, 378:25-379:24 |
| **'009 Patent Claim 22** | | | |
| 22[a] | The concierge device of claim 16, wherein the home gateway is a cloud-based device to which the concierge device sends messages via a network that extends outside the home. | **Undisputed** *see* Trial Tr. at 687:8-16 | Trial Tr. at 379:25-382:18 |

As described in further detail below with references to the table, Comcast cannot reasonable contend that there is no direct infringement given its admissions and the evidence at trial.

### B. Comcast's My Account App Satisfies Each of the Undisputed Claim Limitations

NexStep proved with substantial, unrebutted evidence that the My Account App satisfies each of the undisputed claim limitations.

**Concierge Device [Elements 1pre, 16pre]**: Comcast's My Account App is a concierge device that initiates a support session to automatically diagnose or troubleshoot Consumer Devices, such as set-top boxes, routers, modem, gateways, and home security devices. PTX-381 at NexStep 0154316-17 (Comcast support documents illustrating an exemplary troubleshooting session in the My Account App for internet services); PTX-522 at COM_NEX000218360 (Comcast internal document on digital repairs providing support options); Trial Tr. at 315:14-322:17, 322:18-326:16 (discussing evidence that My Account App satisfies the preamble limitations). This element is undisputed, as Dr. Villasenor agreed that Comcast's My Account App satisfied the concierge device element. Trial Tr. at 684:8-23 (agreeing he did not challenge that the My Account App satisfies the preamble limitations).

**Association with Selected Consumer Devices [Elements 1a, 16c]:** The My Account App satisfies Elements 1a and 16c because it is associated with consumers' devices, as is evidenced by its display of a menu of the associated Consumer Devices and its ability to control and troubleshoot those devices. For example, in the screen capture reproduced below, several set top boxes (Consumer Devices) from the consumers' home are shown and capable of being controlled by the My Account App, which confirms that they are registered with and, thereby, associated with the My Account App. PTX-187 at NexStep 0147458 (testing screenshot showing the various devices associated with the My Account App user), NexStep 0147459, NexStep 0147463; Trial Tr. at 334:7-340:10 (discussing how My Account App is associated with Consumer Devices).

- 9 -



PTX-187 at NexStep 0147458 (showing three set top boxes associated with the My Account App, which have been assigned names "Master Bedroom," "TV1," and "TV2").

     NexStep offered into evidence multiple documents showing that Comcast's My Account App controls and can display information about Consumer Devices that it is associated with, such as PTX-393, which shows Internet routers registered with a customer's account that are known to and capable of being repaired by the My Account App. PTX-393 at NexStep 0154397 (showing touch screen device associated with My Account App); *see also* PTX-626 at NexStep 0008884 (Comcast support document showing various devices that can be associated with the

My Account App); PTX-637 at COM_NEX_SC00000097.  Comcast's corporate designee confirmed during his deposition that the My Account App has information such as device ID, serial number, and Wi-Fi settings for Consumer Devices, further confirming that those devices are registered with and, therefore, associated with the My Account App.  Trial Tr. 257:1-262:15 (Saylor Video Clip) (confirming My Account App has access to and displays data for associated Consumer Devices), 340:11-349:15 (same).  Again, Comcast did not dispute that the My Account App satisfies this limitation.  *Id.* at 684:25-685:6 ("associating the Concierge device with the selected consumer device.  You don't dispute that element . . . I did not dispute that.  That's right.").

**Concierge Device Communicating With a Home Gateway [Elements 1(b) and 16(d)].**  During support sessions, Comcast's My Account App (concierge device) communicates with Comcast's Xfinity Backend, which is a home gateway.  This architecture is shown in PTX-68, a Comcast architecture document, showing the direct communication between the My Account App and Comcast's CX Layer home gateway.  PTX-68 at COM_NEX000011019; Trial Tr. at 345:15-347:24 (undisputed testimony discussing communications between My Account App and Comcast's CX Layer home gateway).  Comcast did not dispute this element, and its expert agreed that the My Account App communicates with the CX Layer home gateway.  Trial Tr. 690:25-691:18.

**Buffering Identification Information and Determining a Support Center [Elements 1(c) and 16(e)].**  Comcast's My Account App causes the Xfinity Backend (including its AIQ and CONVOY servers) to buffer identification information for each of the Consumer Devices, including device serial number and MAC address.  Trial Tr. at 349:16-356:7 (testimony regarding the buffering limitation); PTX-522 at COM_NEX000218326 (showing that the My

Account App performs a system check, which requires communication with the Xfinity Backend, following the single press of the continue button); *see* § III at 5, *supra*. Comcast's internal architecture diagram shows the location of CONVOY's memory cache which buffers the device identification data. PTX-68 at COM_NEX000011019; Trial Tr. at 354:6-19. NexStep presented source code for the My Account App showing that it loads the identifier for a Consumer Device into memory, which is buffering identification information. PTX-637 at COM_NEX_SC00000142, lines 227-235 (source code showing "an identifier [for a Consumer Device] getting loaded into" memory); Trial Tr. at 355:21-356:15 (explaining significance of the source code).

NexStep further presented source code showing that Comcast's servers, also in response to the command from the My Account App, determine the appropriate service option (support center) for the particular device and problem. PTX-637 at COM_NEX_SC00000150 (source code showing decision commands related to issue diagnosis, prediction, and recommendation); PTX-637 at COM_NEX_SC00000126 (source code illustrating different support center options for different devices). Comcast's engineer Mr. Saylor confirmed that Comcast's CONVOY server uses diagnostic data and business rules to determine the appropriate support center for Consumer Devices. Trial Tr. at 257:1-262:15. Thus, the My Account App causes buffering and selection of a support center in response to a single action.

**Initiating a Support Session and Forwarding Consumer Device Identification Information [Elements 1(d) and 16(f)].** In response to the support request command from the My Account App, the Xfinity Backend initiates problem detection functionality and forwards automatically the Consumer Device identification information. *Id.* at 360:19-369:19 (testimony regarding the initiating a support session and forwarding identification limitation). For example,

after detecting a problem with a device, the Xfinity Backend servers will instruct the My Account App's Xfinity Assistant functionality to start the process to reboot a malfunctioning Consumer Device, such as a home router. PTX-381 at NexStep 0154316.

Comcast's documents show the process flows for these support sessions. For example, PTX-512 instructs customers on how to use My Account App's Xfinity Assistant to start a troubleshooting support session. PTX-522 (at COM_NEX000218360) shows the My Account App's process for initiating a support session with a single button press. And PTX-637 (at COM_NEX_SC00000126) is source code for AIQ, the artificial intelligence functionality supporting Xfinity Assistant, showing the decision commands related to issue diagnosis and troubleshooting recommendations, further confirming the initiation of support sessions. Comcast's 30(b)(6) witness Jeanine Heck further corroborated the support session functionality, testifying that when errors are detected on the gateway, a troubleshooting card is automatically sent to the Xfinity Assistant. Trial Tr. at 296:22-297:24 (Heck deposition testimony as Comcast's designee).

Indeed, Comcast and its expert conceded that the My Account App initiates support sessions for Consumer Devices, such as by restarting or refreshing malfunctioning Consumer Devices. *Id.* at 684:8-17 (conceding My Account App initiates support sessions for Consumer Devices), 593:11-594:22, 637:5-12, 695:22-696:6.

**Initiating Automated Support Protocols [Elements 1e, 16g]:** Comcast's expert Dr. Villasenor admitted that Comcast's My Account App offers automated troubleshooting protocols. *Id.* at 686:5-10 (agreeing he did not dispute the "bypass an automated attendant or interactive voice recognition system or initiate an automated support protocol" limitations). For example, if it detects a problem with a Consumer Device, a troubleshooting card appears in the

Xfinity Assistant, and provides a suggested solution to fix the solution, such as by restarting or refreshing the Consumer Device, which is an automated support protocol.  *Id*. at 368:9-369:9 (agreeing that when "there are errors found on the gateway and then [Comcast's servers are] going to kick off a troubleshooting card").  This process also permits customers to obtain customer support while bypassing an automated attendant or interactive voice recognition system, further satisfying Elements 1(e) and 16(g).  *Id.*  Thus, it is undisputed that Comcast's My Account App initiates automated support protocols.

**Device Components [Elements 16a, 16b]**: Comcast's My Account App satisfies elements 16a and 16b because it operates on smartphones that include wireless data communication adapters (e.g., radios, such as WiFi and Bluetooth adapters), input sensors (e.g., touchscreens, sensors, effectors), outputs (e.g., touchscreen displays and speakers), processors (e.g., CPUs), and memory (e.g., Flash memory and RAM).  *Id*. at 257:1-258:3, 372:5-376:4 (discussing the claim elements relating to device components).  It further satisfies these elements because it operates on Comcast's set-top boxes, which include wireless data communication adapters (e.g., for wireless communication with remote controls), input sensors (e.g., IR, RF inputs for remote controls and cable inputs), outputs (e.g., outputs to the television display and to communicate with remote controls), processors (e.g., CPUs), and memory (e.g., Flash memory and RAM).  *Id*.

**Cloud-Based Home Gateway [Element 22a]:** Claim 22 adds the additional limitation that "the home gateway is a cloud-based device to which the concierge device sends messages via a network that extends outside the home."  JTX-2 at Claim 22.  Comcast's My Account App satisfies this limitation because it uses the Internet (a network that extends outside a customer's home) to send messages to Comcast's Xfinity Backend, which is a cloud-based device.  PTX-68

at COM_NEX000011019 (showing My Account App's communications with cloud-based CX layer gateway); Trial Tr. at 379:25-382:18 (testimony regarding Claim 22's additional limitation). Comcast did not dispute that its My Account App meets this element. Trial Tr. at 687:8-12 ("Q. And now for Claim 22, you don't dispute that, do you? . . . A. In my direct testimony, I did not address Claim 22. That's right.").

### C. The My Account App Initiates Automated Troubleshooting Based on a Single Action

A reasonable jury could only find that Comcast's My Account App satisfies remaining Elements 1(b) and 16(d), which require that responsive to a single action, the concierge device communicates with a home gateway and causes the home gateway to buffer device information, determine a support center, initiate a support session, and forward the Consumer Device identification information. As discussed above, Comcast conceded that its My Account App communicates with a home gateway (the Xfinity Backend) and that the Xfinity Backend performs the buffering, determining, initiation, and forwarding actions, and disputed only the Single Action Element, i.e., that this occurs in response to a single action.

NexStep presented multiple scenarios where a single button press from a customer launched all of these functions on the My Account App. These scenarios include (1) opening the Xfinity Assistant, (2) selecting "continue" on a troubleshooting page for a selected device, which starts a troubleshooting support session, and (3) selecting "Run Diagnostics" for a device, which initiates a diagnostic protocol. Trial Tr. at 329:13-330:16, 353:15-354:5, 527:22-531:19. Each of these processes is started by a single tap of a button, as Dr. Selker explained during his detailed analysis of each of the scenarios, where a single button push causes the required actions to take place. *Id*. at 340:11-341:8, 353:15-354:5.

Comcast's corporate representative and expert conceded on cross-examination that each of these processes is started with a single button push. For example, Comcast's representative, Mr. Karinshak, admitted that a single click starts the Xfinity Assistant function. *Id.* at 531:10-19 (agreeing that "[o]ne single action" will "launch the Xfinity Assistant"). Comcast's expert, Dr. Villasenor, admitted that pressing the Xfinity Assistant button, "pressing th[e] continue button," and selecting the "run diagnostic button," the three infringement scenarios discussed above, are each "a single action." *Id.* at 696:17-697:1 (Xfinity Assistant button is a "single action"), 689:10-20 (continue button is a "single action"), 700:25-701:21 (run diagnostic button is a "single action").

In each of the scenarios discussed above, after the press of a single button, the My Account App communicates with the Xfinity Backend cloud servers (undisputedly a home gateway). This starts a process in the Xfinity Backend that proceeds without further action from the customer and includes checking the customer's devices for problems. *Id.* at 342:19-349:15 (testimony of Dr. Selker regarding the communication between Comcast's My Account App and its CX layer home gateway). Comcast's internal architecture document illustrates the communication between My Account App and the CX Layer home gateway after the customer presses a button initiating a support session. PTX-68 at COM_NEX000011019; Trial Tr. at 345:15-347:24 (describing architecture). Testing screenshots of the My Account App shows the communications with the home gateway, indicated by the circular loading icon, which appears prior to the display of device status. PTX-393 at NexStep 0154395-97; Trial Tr. at 344:8-345:4 (explaining loading icon). The communication is further evidenced by Comcast documents (illustrating a screenshot taken after the single button press to load Xfinity Assistant), which report the detection of Internet issues and recommend that the gateway reboot to resolve the

problem, which further confirms the performance of the requisite troubleshooting actions. PTX-381 at NexStep 0154316; Trial Tr. at 345:5-14 (describing troubleshooting actions).

Thus, even for the "single action" limitation that Comcast disputed, a reasonable jury could only find that it is satisfied by the My Account App.

## V. CONCLUSION

For the foregoing reasons, the Court should grant NexStep's Renewed Motion for Judgment as a Matter of Law and find that Comcast's My Account App literally infringes Claims 1, 16, and 22 of the '009 Patent.

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Jonathan S. Caplan
Aaron M. Frankel
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: October 26, 2021
Public version dated: November 1, 2021
7447042

POTTER ANDERSON & CORROON LLP

By: /s/ Philip A. Rovner
  Philip A. Rovner (#3215)
  Jonathan A. Choa (#5319)
  Hercules Plaza
  P.O. Box 951
  Wilmington, DE 19899
  (302) 984-6000
  provner@potteranderson.com
  jchoa@potteranderson.com

*Attorneys for Plaintiff*
*NexStep, Inc.*