IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NEXSTEP, INC.,                                       )
                                                     )
                        Plaintiff,                   )
                                                     )
            v.                                       )      C.A. No. 19-1031 (RGA) (SRF)
                                                     )
COMCAST CABLE COMMUNICATIONS,                        )
LLC,                                                 )
                                                     )
                        Defendant.                   )

**DEFENDANT COMCAST CABLE COMMUNICATIONS, LLC'S
ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF NEXSTEP, INC.'S
<u>RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

OF COUNSEL:

William F. Lee
Sarah B. Petty
Kate Saxton
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Amy Kreiger Wigmore
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6096

Mary (Mindy) V. Sooter
Nora Q.E. Passamaneck
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1225 17th Street, Suite 1660
Denver, CO  80202
(720) 274-3135

November 9, 2021

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................1

II.     LEGAL STANDARD.................................................................................................2

III.    BACKGROUND .........................................................................................................2

IV.     THE JURY REASONABLY FOUND NO LITERAL INFRINGEMENT OF THE
        '009 PATENT.............................................................................................................4

        A.      Comcast Presented Substantial Evidence that the My Account App Does
                Not Satisfy the "Single Action" Claim Requirement ...............................5

        B.      Comcast Presented Substantial Evidence that None of the Accused Single
                Actions Causes a Home Gateway to "Determine a Support Center" ...................12

V.      CONCLUSION.........................................................................................................14

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Hospira, Inc.*,
   944 F.3d 1327 (Fed. Cir. 2019)............................................................................... 5, 9, 13

*Applera Corp. – Applied Biosystems Grp. v. Illumina, Inc.*,
   375 Fed. App'x 12 (Fed. Cir. 2010) ............................................................................... 9

*EMC Corp. v. Zerto, Inc.*,
   No. 12-cv-956 (GMS), 2016 WL 1291757 (D. Del. Mar. 31, 2016)........................... 10

*Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*,
   554 F.3d 1010 (Fed. Cir. 2009)...................................................................................... 7

*Leader Techs., Inc. v. Facebook, Inc.*,
   770 F. Supp. 2d 686 (D. Del. 2011) ............................................................................ 10

*Lightning Lube, Inc. v. Witco Corp.*,
   4 F.3d 1153 (3d Cir. 1993)............................................................................................. 2

*Marra v. Phila. Housing Auth.*,
   497 F.3d 286 (3d Cir. 2007)........................................................................................... 2

*Mas-Hamilton Grp. v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998)...................................................................................... 5

*Mihalchak v. Am. Dredging Co.*,
   266 F.2d 875 (3d Cir. 1959)................................................................................... 10, 13

*NTP, Inc. v. Rsch. In Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005)............................................................................... 11, 13

*Orion IP, LLC v. Hyundai Motor Am.*,
   605 F.3d 967 (Fed. Cir. 2010)........................................................................................ 5

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998)...................................................................................... 2

*Reeves v. Sanderson Plumbing Prod., Inc.*,
   530 U.S. 133 (2000) ..................................................................................................... 10

**Rules**

Federal Rule of Civil Procedure 50(b) ............................................................................... 2

## I.      INTRODUCTION

The jury's verdict of no literal infringement of claims 1, 16, and 22 of the '009 patent is amply supported by substantial evidence.[1]  Contrary to NexStep's arguments, the record contains both fact and expert testimony from which the jury could conclude that no "single action" in the accused My Account app causes an alleged "home gateway" to perform all four of the resulting steps required by the claims.  Comcast's Chief Customer Experience Officer, Mr. Karinshak, demonstrated the operation of the My Account app in detail, and explained that "single action" troubleshooting would not make sense for Comcast and that no single action in the accused My Account app performs all four required steps.  Likewise, Comcast's technical expert, Dr. Villasenor confirmed that there is no single action causing the four required steps and rebutted each of NexStep's alleged "single actions."  And Dr. Villasenor explained that, in any event, the accused features of the My Account app do not cause any "determin[ation] of a support center."

In its Opening Brief in Support of its Renewed Motion for Judgment as a Matter of Law (D.I. 354 ("Br.")), NexStep ignores the evidence supporting the jury's verdict, including not only the testimony of Mr. Karinshak and Dr. Villasenor, but also its own expert's admissions.  And the testimony and documents NexStep cites do not support its arguments, leading NexStep to advance interpretations and characterizations that are—at best—strained, and that the jury was entitled to reject.  For these reasons, the Court should deny NexStep's motion and uphold the verdict of no literal infringement of the '009 patent.[2]

---

[1] NexStep does not challenge the jury's verdict of noninfringement of the '697 patent.

[2] In contrast, for the reasons explained in Comcast's Opening Brief in Support of its Post-Judgment Motion, the jury's verdict of infringement under the doctrine of equivalents is unsupported by substantial evidence and is contrary to law.  (D.I. 351.)

## II.    LEGAL STANDARD

After a jury trial, to prevail on a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), "a party must show that the jury's findings, presumed or express, are not supported by substantial evidence …." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998). Such a motion "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find" in the nonmovant's favor. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). In evaluating such a motion, the Court must "refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

## III.   BACKGROUND

Each asserted claim of the '009 patent requires either a method performed "using a concierge device" or a "concierge device … configured to perform" a method.[3] (JTX-2, 42:45-63, 43:43-44:8.) That method requires that "responsive to a single action performed by a user, the concierge device communicat[es] with a home gateway," which "cause[s]" the "home gateway" to perform four specific steps. (JTX-2, 42:45-63, 43:43-44:8.) Specifically, the claims require that the "single action" "caus[e]" the "home gateway" to (1) "buffer consumer device identification information for the selected consumer device," (2) "determine a support center for a support

---

[3] NexStep's assertion that "Dr. Villasenor agreed that Comcast's My Account App satisfied the concierge device element" (Br. 9) misstates both its own position and Comcast's—the My Account app is accused ***only in conjunction with hardware***, as is clear from the parties' experts' testimony. Dr. Selker identified the My Account app "running on an iPhone" as a "concierge device" (Tr. 328:8-17), and Dr. Villasenor agreed that "the My Account App running on a cell phone" satisfies the "concierge device" requirement (though "it doesn't do the other things in the claim") (Tr. 685:6-24).

session," (3) "initiate the support session for the consumer device," and (4) "forward automatically the consumer device identification information during the support session." (JTX-2, 42:45-63, 43:43-44:8.)

It is undisputed that the same "single action" must cause a home gateway to perform all four of those steps. At trial, Dr. Villasenor testified that the claims "very specifically require[] all four of those things to happen," and that "[i]f the only way to get those four things to occur was through a combination of user actions, then it wouldn't be the claimed single action." (D.I. 346-349 [Trial Transcript] ("Tr.") 618:19-620:18.) And NexStep's expert, Dr. Selker, confirmed that "[i]f there is a single action which only causes three [or fewer] of the four to happen," there is "no infringement," and that "[i]f there's a product that has all four things occur but they're not the result of a single action, there's no infringement." (Tr. 432:8-25.)

Comcast focused its presentation of evidence on two reasons the accused My Account app does not infringe the asserted claims of the '009 patent. First, a user cannot perform any "single action" in the My Account app that causes a "home gateway" to perform all four required steps; rather, to the extent those steps are performed at all, they are performed in response to multiple separate user actions. Second, none of the accused actions within the My Account app causes any "home gateway" to "determine a support center"; rather, each of the My Account app processes addressed in Dr. Selker's testimony sends requests to a single server.

Comcast supported those positions with the testimony of two witnesses. Mr. Karinshak is "responsible for looking across the company to make sure we're providing the best possible experience for all of our customers and across all of our products and services." (Tr. 461:11-22.) He provided an overview of various features of the My Account app, as well as step-by-step demonstrations of the Xfinity Assistant automated chat service and device troubleshooting processes as they are available in the My Account app on mobile devices. (Tr. 469-491, 494-503.)

Through those demonstrations, Mr. Karinshak showed and explained that there is no "single action" in the My Account app that causes all four steps to occur.  (Tr. 481:16-19, 597:25-598:4.) In addition, Mr. Karinshak also explained that neither Xfinity Assistant nor device troubleshooting features are available through the My Account functionality of Comcast set-top boxes.[4]  (Tr. 503-506.)

Dr. Villasenor, a professor at UCLA with academic and industry experience relating to complex networks, troubleshooting, and customer support, then explained his analysis of NexStep's evidence, as well as additional evidence, relating to the details of the operation of the My Account app.  (Tr. 599-602, 624-651.)  Dr. Villasenor explained that none of the alleged user actions NexStep identified constitutes a "single action" as claimed because none of them causes the four required steps, and further that none of the features of the My Account app NexStep accused involves any "determin[ation of] a support center."  (Tr. 626:15-627:8, 646-650.)

Consistent with Mr. Karinshak's and Dr. Villasenor's testimony, the jury returned a verdict of no literal infringement of the claims of the '009 patent.  (D.I. 331.)

## IV.    THE JURY REASONABLY FOUND NO LITERAL INFRINGEMENT OF THE '009 PATENT

Each asserted claim of the '009 patent includes both the "single action" and "determine a support center" requirements.  (JTX-2, 42:45-63, 43:43-44:8.)  As discussed below, the jury reasonably could find that either or both of these requirements is not satisfied.  The absence of

---

[4] NexStep asserts that that set-top boxes satisfy the hardware requirements of claim 16 of the '009 patent (Br. 14), but makes no effort to show that the My Account functionality of Comcast set-top boxes satisfies any other requirement of any asserted claim.  And Dr. Selker's entire testimony regarding the My Account set-top box functionality consisted of a description of a picture as "showing these different devices, the account details, excuse me, the home, the Internet, the phone" but which actually shows "Account Details," "Balance Due," and "No Appointments."  (D.I. 351 at 8-9 (quoting Tr. 377:17-378:13).)

either limitation is a sufficient basis for the jury's verdict of no literal infringement.[5]  *See, e.g.*, *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) ("If even one limitation is missing or not met as claimed, there is no literal infringement.").  The following two sections address each of these two independent bases for non-infringement.

### A.    Comcast Presented Substantial Evidence that the My Account App Does Not Satisfy the "Single Action" Claim Requirement

Comcast addressed the "single action" claim requirement in detail through both fact and expert witness testimony.  That testimony constitutes substantial evidence supporting the jury's verdict of no literal infringement.  *See Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 975-977 (Fed. Cir. 2010) (reversing denial of JMOL based in part on accused infringer's fact witness testimony); *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1343 (Fed. Cir. 2019) (affirming denial of patentee's motion for JMOL of infringement where parties proffered competing expert testimony and the jury was free to credit the accused infringer's expert's testimony).

### 1.    Mr. Karinshak Demonstrated that the My Account App Does Not Satisfy the "Single Action" Claim Requirement

Mr. Karinshak explained the operation of the three features of the My Account app that NexStep contends infringe the claims of the '009 patent—the use of Xfinity Assistant, the process of troubleshooting a set-top box, and the process of troubleshooting internet access.  (Tr. 472-491, 494-503.)  Mr. Karinshak explained that, for each feature, when the user takes action to "initiate a support session," the user is not connected with any "support center" at all, such that there is ***no***

---

[5] The "single action" requirement is the only '009 patent claim limitation for which NexStep presented any analysis under the doctrine of equivalents.  (Tr. 382:19-385:15.)  The jury's verdict of no literal infringement, in combination with its (flawed) verdict of infringement under the doctrine of equivalents, therefore demonstrates the jury's recognition that the My Account app does not literally satisfy the "single action" requirement.

"determin[ation of] a support center."  (*Id.*)  Consequently, there is no single action that causes all four events to occur.

First, using a video he created, Mr. Karinshak illustrated the use of the Xfinity Assistant feature from the perspective of a Comcast subscriber (i.e., a user of the My Account app).  (Tr. 472-483.)  Mr. Karinshak demonstrated a variety of actions a user could take, and what would happen in response to each action.  (*Id.*)  As Mr. Karinshak testified, a user is able to connect with a live agent only after several user actions.  (*Id.*)  Thus, Mr. Karinshak confirmed, the Xfinity Assistant feature does not include any "single button [the user] can push to automatically begin a support session and connect [the user] with a live agent."  (Tr. 481:16-19.)  And, as a result, Mr. Karinshak explained, he is not "aware of any single action a user can take that will" perform all the steps required by the claims.  (Tr. 597:25-598:4.)

Second, Mr. Karinshak illustrated the operation of the My Account app troubleshooting process for a set-top box.  (Tr. 484-491, 494-497.)  Mr. Karinshak demonstrated how a My Account app user would go through the actions required to troubleshoot a set-top box, including the option to either perform a "system refresh or a single TV box restart."  (*Id.*)  As Mr. Karinshak explained, the user "begin[s] their [set-top box] support session" "[i]n the overview portion of the app."  (Tr. 497:9-17.)  The user would then take not a "single action," but several other actions, none of which involves any contact with a live agent or any other "determinat[ion of] a support center for a support session."  (Tr. 484-497, 494-497.)

Third, and again using a series of screen images, Mr. Karinshak demonstrated the process a Comcast subscriber would use to troubleshoot their cable modem, including if they choose to restart it.  (Tr. 497-500.)  Mr. Karinshak explained that "to initiate" an internet access "support session," the user would click "Internet" at the "overview page" followed by several subsequent actions.  (Tr. 497:18-498:6.)  And again, there is no "single action" a user could take that would

cause all four required steps.  (Tr. 497-503; *see also* Tr. 597:20-21 (In "neither of those cases would [the user] connect to an agent.").)  In fact, Mr. Karinshak explained that troubleshooting based on a single user action does not make sense for Comcast given the wide variety of potential subscriber needs.  (Tr. 500:4-501:9.)  Mr. Karinshak's testimony as to how and why the My Account app does not include any single user actions that ***both*** "initiate a support session" ***and*** "determine a support center," as the claims require, was more than sufficient to support the jury's verdict of no literal infringement.[6]  *See Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1023-1024 (Fed. Cir. 2009) (testimony of fact witness regarding characteristics of accused products constituted substantial evidence supporting jury's verdict of noninfringement).

### 2. Dr. Villasenor Explained that the My Account App Does Not Satisfy the "Single Action" Claim Requirement

Dr. Villasenor's expert testimony provided an independently sufficient basis for the jury's finding of no literal infringement.  He testified that in the course of his investigation, he had examined Comcast's source code and technical documents, spoken with Comcast engineers, and analyzed Dr. Selker's theories.  (Tr. 603:14-604:6.)  Dr. Villasenor explained that he had reviewed all of the source code Dr. Selker cited in his expert reports, and additional code Dr. Selker had not cited.  (Tr. 626:1-14.)  Based on that analysis, Dr. Villasenor testified that he "disagreed with [Dr. Selker's] assertion that there is a single action that causes all of the required events to occur" because, Dr. Villasenor explained, "of the single actions that Dr. Selker analyzed," "there was no one step that did all of these required things."  (Tr. 626:15-627:8.)

---

[6] NexStep cites Mr. Karinshak's acknowledgement that "[o]ne single action" opens the Xfinity Assistant (Br. 16), but as Dr. Selker acknowledged, the ***claimed*** "single action" must cause ***four*** specific steps.  (Tr. 432:8-25.)  Mr. Karinshak did not testify that opening the Xfinity Assistant causes any of the claimed steps; rather, Mr. Karinshak simply stated that in his demonstration, "[t]he first action … was to click on the Xfinity Assistant."  (Tr. 531:14-19.)

Dr. Villasenor then analyzed the various My Account app features Mr. Karinshak and Dr. Selker had identified, beginning with the set-top box restart process, followed by the internet access troubleshooting process, and then Xfinity Assistant. (Tr. 627:9-643:10.) For each feature, Dr. Villasenor explained that each user action ***does not*** cause the four steps required by the claims of the '009 patent. (*Id.*) Dr. Villasenor ***specifically ruled out*** the following user actions as the claimed "single action":

- Set-top box troubleshooting process: press "TV"; select a specific set-top box; press "troubleshoot"; press "continue" twice; select a specific set-top box; press restart device. (Tr. 627:9-630:8.)

- Internet access troubleshooting process: press "Internet"; press restart modem; press restart device. (Tr. 630:9-632:6.)

- Xfinity Assistant: launch Xfinity Assistant; subsequent steps in a "back-and-forth exchange between the user and the Xfinity Assistant"; device troubleshooting selection; type "agent" or "representative"; select "a device of interest"; click "chat." (Tr. 632:7-639:25.)

Based on that methodical analysis, Dr. Villasenor explained that none of those processes has any "single action" that causes all four required steps. (Tr. 632:21-633:1 ("Q. Now, in either the Internet troubleshooting process or the television troubleshooting process, did you find any single event that both initiated the customer's support session and selected the customer's support or the service -- the support center or the service center? A. No."), 640:1-5 ("Q. So is there any single action that you found in the Xfinity Assistant or that Dr. Selker pointed to that causes all four of the required events to occur under the '009 patent? A. No.").) Dr. Villasenor further explained that the source code cited by Dr. Selker did not show there was any single action that both determined a customer support center and initiated the customer support session. (Tr. 641:20-642:1 ("Q. And did any of the source code -- what was your conclusion about whether or not Dr. Selker's source code showed that there was any single action that both … determined a

8

customer support center and initiated the customer support session? A. He did not provide source code that shows that.").)

Dr. Villasenor's analysis addressed all three of the alleged "single actions" identified in NexStep's brief.  (Br. 15.)  During his direct examination, Dr. Villasenor explained that neither using the "continue" button in the My Account app, nor launching the Xfinity Assistant, causes the four required steps.[7]  (Tr. 629:4-22, 635:24-636:2.)  And on cross-examination, Dr. Villasenor explained that clicking the "run diagnostics" button does not satisfy the "single action" claim requirement at least because it does not "initiate a support session."[8]   (Tr. 701:3-707:3.)  Dr. Villasenor's rejection of Dr. Selker's infringement theories is alone a sufficient basis for the

---

[7] NexStep does not specify which instance of "continue" it contends constitutes a "single action" as claimed.  (Br. 15.)  And Dr. Selker's redirect testimony regarding "continue" buttons sheds no light; on the contrary, it was rambling, disconnected, conclusory, and easily rejected.  (Tr. 457:19-458:9 ("I guess I want to see the -- yeah, so I have -- I have some scenarios in my mind where actually the first thing I see is -- it's actually -- so what we have is we have a flow, if you remember that chat conversation where we can stop it and let it continue forward. That's really what this is about is this is going to the next step of, okay, you know, you know, you brought this thing up because you checked the normal things, you checked your cables. Okay? Let's go further and really eliminate these simple things that really, you know, can best be figured out separate from having Comcast look into it"), 458:13-459:2 ("So what's going to happen is when I push that continue, it goes through my interactive thing is being held by, is being helped by the -- by AIQ and stuff and it's going to go and look at that buffer information and send that using the logic of Convoy to decide looking out at the device what -- what response or nonresponse it gets, and use the logic in Convoy again to decide what to say to the person relative to this -- this, you know, everything's okay or this is -- you know, I can't get to it or, you know, whatever problem it is discovered and whatever remedy it proposes.").)

[8] Contrary to NexStep's suggestion, Dr. Villasenor did not say that Comcast did not dispute the "initiate a support session" limitation.  (Br. 7-8 (citing Tr. 695:15-700:24, 701:9-707:7).)  To the contrary, he repeatedly *rejected* NexStep's attempt to leverage an unrelated use of the word "session" into infringement evidence.  (Tr. 702:8-17 ("I disagree to the extent that you're suggesting the session was initiated then. The session was initiated when you first opened the app and started going through the buttons, so I disagree with the characterization."), 704:12-20 ("In a sense completely separate and unrelated to the claim, there's -- the term 'session' is sometimes used in relation to information that is exchanged … between servers."), 706:21-707:3 ("They did declare a session ID, but that has nothing at all to do with the support session that's claimed in the patent."); *see also id.* at 697:6-16 ("Q. … Now, you'd agree with me that the exact same flow that we just talked about just happened, right, with that single action? A. I don't agree with you.").)

jury's verdict of no literal infringement.  *See Amgen*, 944 F.3d at 1343 (affirming denial of patentee's motion for JMOL of infringement where parties proffered competing expert testimony and the jury was free to credit the accused infringer's expert's testimony); *see also Applera Corp. – Applied Biosystems Grp. v. Illumina, Inc.*, 375 Fed. App'x 12, 19 (Fed. Cir. 2010) (nonprecedential) (denying JMOL where issue turned on a "credibility battle between the experts" and "[t]he jury apparently found the testimony of Solexa's expert more credible"); *EMC Corp. v. Zerto, Inc.*, No. 12-cv-956 (GMS), 2016 WL 1291757, at *11 (D. Del. Mar. 31, 2016) (denying patentee's motion for JMOL of infringement because "the jury was free to listen to the experts battle over the plain meaning" of a claim term and credit the expert they found most persuasive); *Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 705 (D. Del. 2011) ("The jury was entitled to weigh the credibility of the parties' competing experts ….").[9]

### 3. NexStep Failed to Prove that the My Account App Satisfies the "Single Action" Claim Requirement

NexStep asserts that the jury had to accept its own evidence regarding the "single action" limitation. (Br. 15-17.)  NexStep is incorrect; the court "must disregard all evidence favorable to the moving party that the jury is not ***required*** to believe."  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000) (emphasis added).  And because NexStep bore the burden of proof on infringement, the Court must "test the body of evidence … for its overwhelming effect."  *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959).  Moreover, even if the jury were somehow required to credit the evidence NexStep recites in its brief, that evidence fails to show that any "single action" causes a "home gateway" to perform all four required steps.  Far

---

[9] It is not surprising the jury credited Dr. Villasenor's testimony over Dr. Selker's, given Dr. Selker's sometimes incomprehensible testimony.  (*E.g.*, Tr. 371:10-17 ("Things have been transferred, buffered, blah, blah, blah, blah, now it's time to do it.").)  Indeed, NexStep's counsel referred to Dr. Selker in closing as "kind of quirky" and "a weird Ph.D. guy."  (Tr. 857:7-21.)

from it—there is not a shred of evidence that any one of the three specific user actions NexStep identifies in its brief satisfies that requirement.

In fact, much of NexStep's cited evidence fails to stand for NexStep's desired propositions. For example, contrary to NexStep's assertion that "selecting 'Run Diagnostics' for a device" constitutes a claimed "single action" (Br. 15), Dr. Selker's ***one and only*** reference to selecting "Run Diagnostics" was only that it was a "single click." (Tr. 330:12-16.) Dr. Selker made no attempt whatsoever to tie that "single click" to any alleged home gateway's performance of the four required resulting steps.[10]   Similarly, in testimony NexStep cites without explanation, Dr. Selker testified that the My Account app "Internet troubleshooting" button—which is not one of the three alleged "single actions" NexStep now identifies—and running Xfinity Assistant each trigger a "system check." (Br. 15 (citing Tr. 353:15-354:5).) But Dr. Selker's only explanation of a "system check" was that it "make[s] a list of the things that have to be made available." (Tr. 352:1-11.) Dr. Selker's vague and irrelevant testimony does not justify setting aside the jury's verdict of no literal infringement. *See NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1325 (Fed. Cir. 2005) (affirming denial of JMOL of invalidity there the expert's testimony was "conclusory and failed to analyze and explain the claim language and which components of the prior art embodied each element of the asserted claims"), *abrogated on unrelated grounds*, *Zoltek Corp. v. U.S.*, 672 F.3d 1309, 1320 (Fed. Cir. 2012).

---

[10] At most, Dr. Selker's testimony suggested that clicking "Run Diagnostics" satisfies the "initiate a support session" requirement.  But again his testimony was impenetrable, and there was no reason for the jury to credit it; the jury was certainly not ***required*** to do so.  (Tr. 329:13-330:11 ("But then if I really wanted, I can, you know, ask for more diagnostic check. And you'll see this kind of a faded looking circle here, here's a bright circle, it's kind of subtle, but that faded circle happens for a while it's actually trying to look at that device and tell me that it's okay. So it's a confirmation and shows that the process is going on in the cloud that we've been talking about. And finally it's going to say hey everything's good. And you know, it thinks everything is good from its side. But as a customer, I might want to restart it anyway for a variety of reasons.").)

**B.      Comcast Presented Substantial Evidence that None of the Accused Single Actions Causes a Home Gateway to "Determine a Support Center"**

Comcast also presented evidence in support of a second non-infringement argument, regarding the requirement in claims 1, 16, and 22 of the '009 patent of "determin[ing] a support center for a support session."  (JTX-2 at claims 1, 16, 22; Tr. 644:7-13 [Villasenor] ("[Q.] What was your second reason that you'd like to talk about today that the My Account App does not meet the requirements of the patent claims?   A. So there's no determining -- no single action that determines a support center for a support session as required by the patent claim."); *see also id.* at 597:25-598:4 [Mr. Karinshak], 624:15-20 [Dr. Villasenor], 626:16-23 [Dr. Villasenor], 637:5-8 [Dr. Villasenor], 641:20-642:1 [Dr. Villasenor], 646:12-651:3 [Dr. Villasenor].)

NexStep is incorrect in arguing that the "determin[ing] a support center" requirement is undisputed.  (Br. 7-8 (citing 695:15-700:24, 701:9-707:7).)  The cited testimony does not concede that this limitation is met.  Instead, as explained below, Dr. Villasenor explained in detail how and why none of the features that NexStep accused causes any home gateway to "determine a support center."

**1.      Dr. Villasenor Explained that the My Account App Does Not Satisfy the "Determin[ing] a Support Center" Claim Requirement**

Comcast set forth substantial evidence that neither the device troubleshooting processes nor launching the Xfinity Assistant—the only processes NexStep accused—satisfied the "determin[ing] a support center for a support session" requirement of the claims of the '009 patent.

In particular, Dr. Villasenor explained that all restart requests from the My Account app go to a single place as "there's only one place that that message can be sent.  It's always the same place."  (Tr. 646:17-647:9.)  Based on the source code, Dr. Villasenor explained that the requests from the My Account app include the MAC ID for the device to be restarted and a HTTPS server address for the location to send the request.  (Tr. 647:10-25.)  However, the server address is

"always the same server regardless of the type of device."  (Tr. 647:22-25.)  In other words, whenever the My Account app sends a restart request, it always sends the request to the same server without a determination of where to send the request.  Regardless of the type of device being restarted and regardless of whether the request is coming from a mobile phone or laptop, the requests are always sent to the same server location.  (Tr. 646:12-651:3.)  Since there is only one location where all requests are sent, there is no "determination" of a support center.  Likewise, Dr. Villasenor explained that the Xfinity Assistant chat service does not "determine a customer support center" because messages sent to that service are "always going to the same server." (Tr. 650:3-6.)  Thus, the jury's verdict of no literal infringement for the '009 patent is supported by substantial evidence with respect to the absence of the "determine a support center" limitation.

2.      **NexStep Identifies No Evidence that Would Have Required the Jury to Find that any Single Action in the My Account App "Determine[s] a Support Center"**

NexStep's discussion of its own witnesses' testimony improperly assumes that the jury was required to credit them, which of course is not the correct standard on JMOL.  Even if the jury could reasonably have credited them—which is highly doubtful—it once again was not *required* to do so in the face of Dr. Villasenor's clear and cogent testimony establishing that the My Account app does not "determine a support center for a support session."

NexStep contends that Dr. Selker's testimony includes support for this limitation.  (Br. 7-8 (citing Tr. 349:16-360:18, 373:12-18, 378:25-379:24).)  Of course, merely pointing to some controverting evidence does not warrant JMOL, particularly given NexStep's burden.  *See Mihalchak*, 266 F.2d at 877 (The Court must "test the body of evidence … for its overwhelming effect.").  In any event, Dr. Selker's cited testimony does not identify either any "support center" or any "determination."  (Tr. 349:16-350:4 ("Basically the idea is that this gateway up there has this information and it's going to keep it at the ready and add to it to make -- to make this, to solve

13

this problem for this person we call a support session."), 358:8-14 (unspecified "it" is "definitely very engaged in identifying" … using medical terminology").) That ambiguous and conclusory testimony cannot support an infringement finding, *see NTP*, 418 F.3d at 1325, especially in light of Dr. Villasenor's substantial evidence supporting the jury's verdict, *see Amgen*, 944 F.3d at 1343. And the source code and documents NexStep cites also do not show any "determin[ation of] a support center," as evidenced by NexStep's own attempt to modify the claim language. (Br. 12 ("determine the appropriate *service option* (support center)" (emphasis added)) (citing PTX-637).)

NexStep also points to Mr. Saylor's testimony as support for this claim requirement. (Br. 12 (citing Tr. 257:1-262:15).) But Mr. Saylor did *not* testify that the Convoy system "uses diagnostic data and business rules *to determine the appropriate support center*."[11] (Br. 12 (emphasis added).) Rather, Mr. Saylor explained that the "Convoy" system "aggregates … diagnostics" and then may provide "a status of what's going on inside the customer's home and/or provide a recommendation of a set of steps …." (Tr. 258:10-23.) Accordingly, Mr. Saylor's statements likely would not even qualify as substantial evidence of "determin[ing] a support center," and they come nowhere close to upending the jury's well-supported finding of no literal infringement.

## V.    CONCLUSION

Comcast presented substantial evidence that the accused My Account app does not satisfy either the "single action" or the "determine a support center" requirements of the claims of the '009 patent. Because the claims require both, either of Comcast's arguments is a sufficient basis

---

[11] Mr. Saylor testified that Comcast's "Vader" system includes functionality for routing customers to agents. (Tr. 260:13-261:4.) But Dr. Selker discussed the Vader system only in relation to the '697 patent, not the '009 patent (Tr. 396:24-412:25), and NexStep does not rely on the Vader system in its brief in relation to the "determine a support center" limitation or any other.

to sustain the jury's verdict of no literal infringement and to deny NexStep's Renewed Motion for

Judgment as a Matter of Law.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

William F. Lee
Sarah B. Petty
Kate Saxton
WILMER CUTLER PICKERING HALE
   AND DORR LLP
60 State Street
Boston, MA  02109
(627) 526-6000

Amy Kreiger Wigmore
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6096

Mary (Mindy) V. Sooter
Nora Q.E. Passamaneck
WILMER CUTLER PICKERING HALE
   AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO  80202
(720) 274-3135

November 9, 2021

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

Attorneys for Defendant

15

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 9, 2021, upon the following in the manner indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Jonathan A. Choa, Esquire<br>POTTER ANDERSON & CORROON, LLP<br>1313 North Market Street<br>Hercules Plaza, 6th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Paul J. Andre, Esquire<br>Lisa Kobialka, Esquire<br>Greg Proctor, Esquire<br>Hien Lien, Esquire<br>Missy G. Brenner, Esquire<br>James Hannah, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>990 Marsh Road<br>Menlo Park, CA  94025<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Jonathan S. Caplan, Esquire<br>Aaron M. Frankel, Esquire<br>Marcus A. Colucci, Esquire<br>Benu Wells, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY  10036<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Brian P. Egan*
_____
Brian P. Egan (#6227)