**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

NEXSTEP, INC., a Delaware Corporation,       )
                                             )
            Plaintiff,                       )      C.A. No. 19-1031-RGA-SRF
                                             )
      v.                                     )      **PUBLIC VERSION**
                                             )
COMCAST CABLE COMMUNICATIONS,                )
LLC, a Delaware Limited Liability Company,   )
                                             )
            Defendant.                       )


### NEXSTEP'S ANSWERING BRIEF IN SUPPORT OF ITS OPPOSITION TO COMCAST'S POST-JUDGMENT MOTION UNDER RULES 50(B) AND 59

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Jonathan S. Caplan
Aaron M. Frankel
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff
NexStep, Inc.*

Dated: November 9, 2021
Public version dated: November 15, 2021

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................... 1

II.     COMCAST IS NOT ENTITLED TO JMOL OR A NEW TRIAL ON NON-
        INFRINGEMENT UNDER THE DOE.............................................................. 1

        A.      Substantial Evidence Supports the Verdict That Comcast's My Account
                App Satisfies the "Responsive to a Single Action" Limitation Under the
                DOE .................................................................................................... 1

        B.      Dr. Selker Provided Substantial Evidence in Support of the Function-Way-
                Result Test to Support the Verdict of Infringement Under the DOE .................... 4

        C.      Comcast's Infringement Does Not "Vitiate" the Single Action Element.............. 7

        D.      Substantial Evidence Supports Comcast's Infringement of the Remaining
                Limitations of the Asserted Claims........................................................ 10

                1.      There is Substantial Evidence That Comcast's My Account App
                        Causes the Required Actions to Be Performed "Responsive to a
                        Single Action"........................................................................ 10

                2.      There is Substantial Evidence That Comcast's My Account App
                        Determines a Support Center For a Support Session Responsive to
                        a Single Action........................................................................ 10

                3.      There is Substantial Evidence that Comcast's My Account App
                        Buffers Consumer Device Information Responsive to a Single
                        Action..................................................................................... 11

        E.      The Asserted Scope of Equivalency Does Not Ensnare the Alleged Prior
                Art ..................................................................................................... 11

        F.      There is No "Miscarriage of Justice" that Could Justify a New Trial on the
                Single Action Element ......................................................................... 13

                1.      Comcast Waived its Request for a New Trial From the Court ................. 13

                2.      Dr. Selker's Opinions Regarding Infringement Were Based on the
                        Plain and Ordinary Meaning of "Single Action"..................................... 13

III.    THE COURT SHOULD DENY COMCAST'S REQUEST FOR A JUDGMENT
        OF NO DAMAGE ....................................................................................... 14

IV.     THE COURT SHOULD SUSTAIN THE JURY'S VALIDITY VERDICT .................. 16

i

A.      Substantial Evidence Supports the Validity Verdict................................................ 16

B.      Dr. Balakrishnan's Testimony Regarding Secondary Considerations of
        Nonobviousness Was Relevant Evidence............................................................. 19

V.      CONCLUSION................................................................................................................. 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
    811 F.3d 1334 (Fed. Cir. 2016)...................................................................................8

*American Calcar, Inc. v. American Honda Motor Co.*,
    651 F.3d 1318 (Fed. Cir. 2011)............................................................................9, 10

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014).................................................................................16

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
    396 F. Supp. 3d 368 (D. Del. 2019), *aff'd in relevant part by* 967 F.3d 1353
    (Fed. Cir. 2020).........................................................................................................1

*Bio-Rad Labs., Inc. v. 10X Genomics Inc.*,
    967 F.3d 1353 (Fed. Cir. 2020)..............................................................................1, 8

*Carrier Corp. v. Goodman Glob., Inc.*,
    162 F. Supp. 3d 345 (D. Del. 2016)..........................................................................20

*Cephalon, Inc. v. Watson Pharms., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013).................................................................................18

*Cordis Corp. v. Bos. Scientific Corp.*,
    561 F.3d 1319 (Fed. Cir. 2009).................................................................................14

*Dawn Equip. Co. v. Kentucky Farms, Inc.*,
    140 F.3d 1009 (Fed. Cir. 1998))................................................................................5

*Dow Chem. Co. v. Mee Indus., Inc.*,
    341 F.3d 1370 (Fed. Cir. 2003).................................................................................15

*Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*,
    No. 05-422 (GMS), 2011 WL 2222066 (D. Del. June 7, 2011) .................................5

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
    166 F. Supp. 2d 1008 (D. Del. 2001).........................................................................5

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001)...........................................................................12, 13

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014).................................................................................18

iii

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)...................................................................................................18

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
  62 F. Supp. 3d 368 (D. Del. 2014)............................................................................13

*Microsoft Corp. v. Enfish, LLC*,
  662 F. App'x 981 (Fed. Cir. 2016) ...........................................................................18

*MiiCs & Partners Am., Inc. v. Toshiba Corp.*,
  282 F. Supp. 3d 844 (D. Del. 2017)............................................................................7

*Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*,
  No. 15-cv-00451-RGA, 2017 WL 2221178 (D. Del. May 19, 2017) (Andrews,
  J.)..................................................................................................................................7

*Perkin-Elmer Corp. v. Computervision Corp.*,
  732 F.2d 888 (Fed. Cir. 1984)....................................................................................4

*Sincavage v. Barnhart*,
  171 F. App'x 924 (3d Cir. 2006) ..............................................................................13

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*,
  225 F.3d 1349 (Fed. Cir. 2000)................................................................................20

*Sowell v. Butcher & Singer, Inc.*,
  926 F.2d 289 (3d Cir. 1991)......................................................................................16

*TC Tech. LLC v. Sprint Corp.*,
  No. 16-cv-00153, 2019 WL 2515779 (D. Del. June 18, 2019) ...................................7

*TQ Delta, LLC v. ADTRAN, Inc.*,
  No. CV 14-954-RGA, 2019 WL 5626638 (D. Del. Oct. 31, 2019)..........................14

*Waldorf v. Shuta*,
  142 F.3d 601 (3d Cir. 1998)......................................................................................13

*Williamson v. Consol. Rail Corp.*,
  926 F.2d 1344 (3d Cir. 1991)................................................................................1, 14

**Statutes**

35 U.S.C. § 284............................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 50(b) ....................................................................................................15

Fed. R. Civ. P. 54(b) ....................................................................................................15

Fed. R. Civ. P. 59(a) .................................................................................................................15

## I.      INTRODUCTION

NexStep presented substantial evidence at trial to support the jury's verdict that Comcast infringes the asserted claims of the '009 Patent under the doctrine of equivalents ("DOE") and that those claims are valid, including the deposition testimony of Comcast engineers, source code, numerous technical documents, test results, detailed expert analysis, and the admissions of Comcast's expert.  This substantial evidence, viewed with "the benefit of all logical inferences that could be drawn" in favor of the verdict, precludes Comcast's motion for judgment as a matter of law ("JMOL").  *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991).

## II.     COMCAST IS NOT ENTITLED TO JMOL OR A NEW TRIAL ON NON-INFRINGEMENT UNDER THE DOE

### A.      Substantial Evidence Supports the Verdict That Comcast's My Account App Satisfies the "Responsive to a Single Action" Limitation Under the DOE

The record contains substantial evidence to support the jury's verdict that Comcast infringes the '009 Patent under the DOE.  Thus, there is no basis to set aside the verdict or grant a new trial on infringement.  *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 396 F. Supp. 3d 368, 376-79 (D. Del. 2019), *aff'd in relevant part by* 967 F.3d 1353 (Fed. Cir. 2020) (denying motion for JMOL of no infringement under DOE).  Substantial evidence showed that all of the claimed functions take place "responsive to a single action."  Specifically, a single button push by a customer can initiate a troubleshooting process that satisfies all elements of the asserted claims.

Comcast's entire argument is based on its incorrect claim about NexStep's infringement case, namely that "the accused troubleshooting processes in the My Account app require multiple discrete actions, such as separate button presses."  Br. at 4.  NexStep presented at trial multiple different distinct acts of infringement ("Infringement Scenarios") where all of the required actions took place responsive to a single action by the customer, namely a single button push.

Specifically, NexStep's technical expert, Dr. Selker, provided the following three standalone Infringement Scenarios where a single action triggers the specific functionality of the asserted claims:

- opening the Xfinity Assistant (which was the process shown in the test video repeatedly shown to the jury and studiously ignored by Comcast at trial) ("Infringement Scenario 1") (Trial Tr. at 354:2-5, 527:22-531:19, 696:17-697:1),

- selecting "continue" on a troubleshooting page for a selected device, which starts a troubleshooting support session ("Infringement Scenario 2") (*id.* at 353:15-354:1, 689:10-20), and

- selecting "Run Diagnostics" for a device, which initiates a diagnostic protocol ("Infringement Scenario 3") (*id.* at 329:13-330:16, 700:25-701:21).

Dr. Selker provided a detailed analysis of the three different Infringement Scenarios, proving with substantial evidence that all of the required actions occur in response to a single button push.  *Id.* at 340:11-341:8, 353:15-354:5.

Comcast's sole fact witness, Mr. Karinshak, and its infringement expert, Dr. Villasenor, also conceded on cross-examination that each of these processes is started by a ***single*** button push.  Mr. Karinshak and Dr. Villasenor both admitted that a single click starts the Xfinity Assistant function, confirming that Infringement Scenario 1 requires only a single action.  *Id.* at 531:10-19 (Mr. Karinshak agreeing that "[o]ne single action" will "launch the Xfinity Assistant"), 696:17-697:1 (Dr. Villasenor admitting same).  Dr. Villasenor also admitted that pressing the continue button and selecting the run diagnostic button, the basis for Infringement Scenarios 2 and 3 are each also "a single action."  *Id.* at 689:10-20 (continue button), 700:25-701:21 (run diagnostic button is a "single action").

Comcast relies heavily on its contention that additional button pushes after the infringing single action are required to ***complete*** the troubleshooting process.  Completing the process, however, is not relevant because the asserted claims only require that a single action "***initiate[s]***"

2

an "automated support protocol."  JTX-2 ('009 Patent), Claim 1 (emphasis added).  Thus, the

relevant inquiry is how many actions are needed to initiate the troubleshooting protocol, not to

conclude it.  Trial Tr. at 360:19-361:8.

There is substantial evidence (in fact, it is undisputed), that in each of the three unique

Infringement Scenarios discussed above, after the press of a single button, the My Account App

communicates with the Xfinity Backend cloud servers (a home gateway), which performs all of

the actions that must take place "responsive to a single action" (the "Single Action Element").

Each action starts a process in the Xfinity Backend that proceeds without further action from the

customer (including without any further button pushes) and includes initiating the

troubleshooting protocol.  *Id.* at 342:19-349:15 (testimony of Dr. Selker regarding the

communication between Comcast's My Account App and its CX layer home gateway).

Dr. Selker proved all of these facts with substantial evidence at trial.  For example,

Comcast's internal architecture document illustrates the communication between the My

Account App and the CX Layer home gateway after a customer presses a button initiating a

support session.  PTX-68 at COM_NEX011019 (Comcast technical architecture document);

Trial Tr. at 345:15-347:24 (describing architecture).  Testing screenshots of the My Account App

show the communications with the home gateway, indicated by the circular loading icon, which

appears prior to the display of device status, further confirming that the communication with the

home gateway is taking place after just a single button push.  PTX-393 at NexStep 0154395-97;

Trial Tr. at 344:8-345:4 (explaining loading icon).  Comcast documents (illustrating a screenshot

taken after the single button press to load Xfinity Assistant) further demonstrated this

communication, which reports the detection of Internet issues and recommends that the gateway

reboot to resolve the problem.  All of this shows the performance of the requisite troubleshooting

actions.  PTX-381 at 154316; Trial Tr. at 345:5-14 (describing troubleshooting actions).

NexStep's evidence as to the accused functionality of the My Account App on Comcast's set top boxes was unrebutted at trial.  Indeed, Comcast's corporate representative admitted he did not know how it worked and Comcast did not offer any deposition testimony, documents, or source code on the issue.  Trial Tr. at 512:16-517:25; 529:7-531:9.  The jury was not obligated to just accept Comcast's ipse dixit claim that it does not infringe.  However, it was entitled to rely on Dr. Selker's testimony on the functionality of the set top box version, which was based on his testing and review of the technical documents.  *Id*. at 328:8-329:3.

Thus, NexStep provided "relevant evidence from the record [which] taken as a whole . . . might be accepted by a reasonable mind as adequate to supporting the finding" that, at least under the DOE, the My Account App satisfies the "responsive to a single action" limitation, especially viewed in the light most favorable to NexStep.  *Perkin-Elmer Corp. v. Computervision Corp*., 732 F.2d 888, 893 (Fed. Cir. 1984) (affirming infringement verdict and denial of JMOL based on "substantial evidence" of infringement).  Comcast's motion should be denied.

### B.    Dr. Selker Provided Substantial Evidence in Support of the Function-Way-Result Test to Support the Verdict of Infringement Under the DOE

Substantial evidence supports Dr. Selker's opinion and the verdict that the My Account App infringes under the DOE.  Dr. Selker testified that all the required functions were performed in response to a single tap (as NexStep and Dr. Selker contended) and, therefore, that Comcast literally infringed (because a single tap is a single action).  However, after providing the very detailed infringement analysis discussed above, Dr. Selker presented the alternative argument that, to the extent that Comcast was correct that several taps were required to trigger this functionality, that still would literally infringe (because several taps can be a single action) or, at the very least, would infringe under DOE because any difference between the My Account App

4

and the "responsive to a single action" element of the asserted claims was "insubstantial." *Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*, No. 05-422 (GMS), 2011 WL 2222066, at *6, 10-11 (D. Del. June 7, 2011) (denying defendant's JMOL based on "substantial evidence to support the finding of infringement under" DOE).  Substantial evidence of infringement is evidence such that "a reasonable jury, given the facts before it, could have arrived at the conclusion it did."  *Id.* at *3, citing *Dawn Equip. Co. v. Kentucky Farms, Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998).

Dr. Selker employed the correct legal test, explaining that any "differences between the claimed invention and the accused device are insubstantial" because "the element of the accused device at issue performs substantially the same function in substantially the same way, to achieve substantially the same result, as the limitation at issue in the claim.'"  *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008, 1023 (D. Del. 2001) (finding that plaintiff "supported its [DOE] infringement contentions with sufficiently particularized testimony").  Dr. Selker provided detailed testimony in support of each of these elements.  Trial Tr. at 382:20-383:10, 383:25-385:15.

**Same Function:** Dr. Selker testified that the My Account App performed substantially the same function as the Single Action Element because, even if Comcast is correct that a few taps are necessary to complete the claimed process (which is not the case), the My Account App provides a single, streamlined process, for obtaining troubleshooting services for a device.  *Id.* at 383:25-384:10 ("to diagnose your device, you're going through a single action.  It might be that there's several button presses along the way, but I say that's the same function. And that it's going to have the same purpose . . . .").  This testimony followed and was based on all of Dr. Selker's prior testimony about how the My Account App provides a unified, one-stop

troubleshooting process that does not require multiple actions by the customer. *Id.* at 340:11-349:15 (single Xfinity My Assistant button push: is a "single action I have gone over a few times[.] I make a selection and it goes down and it shows that there's a problem with my television".). Comcast's claim that Dr. Selker did not explain how the gateway performs the four required actions in response to a button push on the Concierge device is plainly refuted by a review of his testimony addressing exactly that issue. *Id.* at 342:19-349:15.

**Same Way:** Dr. Selker also testified that the My Account App operated in substantially the same way as the Single Action Element because "[i]t's done in the same way in that the stuff is all kept up in the cloud for the purpose of doing this and it's going to go and diagnose it using the home gateway and it's going to solve my problem without me having to go through and put in my model numbers and all of that . . . [it is] using this Concierge as more of a [device] to give authorization than to do the actual function." *Id.* at 384:13-385:1. Thus, as in the asserted claims, the Concierge device is used to authorize and commence a single streamlined process by accessing functionality located in the cloud that proceeds without further actions from the customer. Dr. Selker provided extensive testimony regarding all of the functionality that happens in the Comcast cloud in response to the customer's initiation of the troubleshooting process in order to support this opinion before addressing the "way" prong of the DOE analysis. *See, e.g.*, *id.* at 315:16-316:7, 340:11-372:4, 326:2-6 (agreeing that "all the steps that just happened with the talking back to the cloud, the cloud going through checking the devices, determining the support, all that happens in response to a single click").

**Same Result:** Finally, Dr. Selker testified that the My Account App provided substantially the same result as the Single Action Element because "the result is that this [device] is going to be restarted, refreshed, [or] whatever is going to have to happen with it without me

6

having to tangle with understanding all of the issues of being an IT professional or whatever it takes to get this thing up." *Id*. at 385:2-9. This conclusion followed and relied upon Dr. Selker's prior extensive testimony on this precise issue where he testified that the result of a customer pressing a single button is the initiation of a troubleshooting protocol and performance of the other claimed actions. *E.g.*, *id*. at 323:4-326:16; 368:9-372:4 (explaining how "gateway initiates a support session that uses consumer identification information" in response to one button press).

The cases Comcast cited to are inapposite because they relied on inadequate opinions at trial that bear no resemblance to Dr. Selker's detailed testimony. For example, the court found DOE opinions inadmissible because they were "wholly conclusory" in that they simply parroted the function-way-result legal standard without any reference to a single fact. *TC Tech. LLC v. Sprint Corp.*, No. 16-cv-00153, 2019 WL 2515779, at *10-11 (D. Del. June 18, 2019). That excluded opinion said nothing in support of its bald conclusion. *Id.* Comcast also relies on *MiiCs & Partners Am., Inc. v. Toshiba Corp.*, 282 F. Supp. 3d 844, 849 (D. Del. 2017), which found a DOE argument to be "irrelevant to the function-way-result analysis because it d[id] not focus on the equivalence of the limitation at issue . . . and ignore[s] the Court's claim construction opinion." That case is inapplicable here because Dr. Selker specifically addressed the Single Action Element and the Court did not construe that term. Comcast has not (and cannot) identify any shortcomings in Dr. Selker's detailed DOE analysis, and there is no basis to grant JMOL of no infringement.

### C.    Comcast's Infringement Does Not "Vitiate" the Single Action Element

Comcast waived its argument regarding vitiation as to infringement under the DOE for the Single Action Element. In response to an interrogatory seeking disclosure of its non-infringement contentions, Comcast did not assert vitiation for the '009 Patent. D.I. 201-1, Ex. 3 (12/23/20 Interrog. Resp.) at 167-177; *Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc*., No.

15-cv-00451-RGA, 2017 WL 2221178, at *2 (D. Del. May 19, 2017) (Andrews, J.) (excluding non-infringement defense not disclosed during discovery because it "would be extremely prejudicial to allow Defendant to proceed at trial with arguments of . . . non-infringement that were presented for the first time in the pre-trial order"). In contrast, Comcast did assert vitiation for other elements in different asserted patents. D.I. 201-1, Ex. 3 at 187. Comcast's belated attempts to raise such an undisclosed defense post-trial should be rejected.

Further, Dr. Selker's infringement analysis under DOE does not vitiate the Single Action Element. "[V]itiation comes into play when the alleged equivalent is 'diametrically opposed' to the missing claim element." *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1367 (Fed. Cir. 2020). "[S]aying that a claim element would be vitiated is akin to saying that there is *no equivalent* to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016) (citations omitted).

As noted above, NexStep and Dr. Selker asserted that a single button push by a customer is sufficient to trigger all of the claimed actions to occur in response. Even if Comcast is correct that a few additional button pushes are required, that short sequence of button pushes is still a single action and, at a minimum, the equivalent of a single action. A few button pushes is not the antithesis of a single action, thus vitiation does not apply. Single actions often involve discrete parts, such as multiple button pushes. Trial Tr. at 444:22-445:4 (describing multiple steps within the single action of throwing a baseball). For example, calling with a phone or unlocking a safe are single actions, but entering a phone number requires nine button pushes and unlocking a safe usually requires turning a lock a few times or pushing multiple buttons on a keypad. Comcast never disputed this.

The preferred embodiments in the '009 Patent, which all include several button pushes, confirms this understanding of the Single Action Element.  For example, the "single [user] action" may include first selecting a device to be supported (shown in Fig. 14A reproduced below), which "causes initiation of a support session," which then transitions to a different screen providing a "suggested fix" (shown in Fig. 14B below), where the user would press another button to "Start Call" to initiate a video or voice call (shown in Fig. 15 below).  JTX-2, Figs. 14A, 14B, 15; 3:27-44; 13:38-14:3; 22:59-23:15 (all describing a device troubleshooting flow, which includes multiple button presses on different screens).  Even the figures in the patent confirm that the claimed process can include multiple button pushes from the user as part of a single action.



JTX-2 ('009 Patent) at Fig. 14A (showing device selection), Fig. 14B (showing suggested fix and button for initiating a support video call), Fig. 15 (showing support video call).

Comcast's cases regarding vitiation dealt with very different facts.  For example, in *American Calcar, Inc. v. American Honda Motor Co.,* 651 F.3d 1318 (Fed. Cir. 2011), the Federal Circuit affirmed a finding that "a signal from one source cannot be equivalent to multiple

signals from multiple sources" because the patent owner failed to provide any "particularized testimony and linking argument" to establish equivalence and because the claims were specifically construed to require multiple sources in view of the specification. *Id.* at 1338-39. Here, Dr. Selker provided detailed testimony in support of equivalence and the specification confirms that a single action can encompass multiple button pushes.

      **D.    Substantial Evidence Supports Comcast's Infringement of the Remaining Limitations of the Asserted Claims**

              **1.    There is Substantial Evidence That Comcast's My Account App Causes the Required Actions to Be Performed "Responsive to a Single Action"**

As set forth in Section II(F) below, NexStep presented substantial evidence that Comcast's My Account App causes all of the required actions to be performed "responsive to a single action," when the customer initiates a troubleshooting request.

              **2.    There is Substantial Evidence That Comcast's My Account App Determines a Support Center For a Support Session Responsive to a Single Action**

NexStep provided substantial evidence to show that Comcast's My Account App determines a support center in response to the customer's single button push that initiates a support session (as discussed above). Trial Tr. at 349:16-360:18. For example, Dr. Selker relied on source code showing that Comcast's servers in response to the command from the My Account App determine the appropriate service option (support center) for the particular device and problem. PTX-637 at COM_NEX_SC00000150 (source code showing decision commands related to issue diagnosis, prediction, and recommendation); *id.* at COM_NEX_SC00000126 (source code illustrating different support center options for different devices). Dr. Selker also relied on the testimony of Comcast's engineer, Mr. Saylor, confirming that after a customer initiates a support session on the My Account App, Comcast's CONVOY server uses diagnostic data and business rules to determine the appropriate support center for Consumer Devices. Trial

Tr. at 257:1-262:15.  Thus, NexStep presented substantial evidence that the My Account App causes the selection of a support center in response to a single action.

> **3.      There is Substantial Evidence that Comcast's My Account App Buffers Consumer Device Information Responsive to a Single Action**

NexStep presented substantial evidence that the My Account App satisfies the buffering limitation.  Specifically, Dr. Selker explained that it causes the Xfinity Backend (including its AIQ and CONVOY servers) to buffer identification information for each of the Consumer Devices, including the device serial number and MAC address, in response to the customer's single action of a button push that starts the troubleshooting process.  Trial Tr. at 349:16-356:7 (testimony regarding the buffering limitation); PTX-522 at COM_NEX000218326 (showing that the My Account App performs a system check, which requires communication with the Xfinity Backend, following the single press of the continue button).  Furthermore, Comcast's internal architecture diagram shows the location of CONVOY's memory cache that buffers the device identification data.  PTX-68 at COM_NEX000011019; Trial Tr. at 354:6-19.  NexStep also presented source code showing that the My Account App loads an identifier for a consumer device into memory, which is buffering identification information.  PTX-637 at COM_NEX_SC00000142, lines 227-235 (showing device identifier being loaded into memory); Trial Tr. at 355:21-356:15 (explaining significance of the source code).  Thus, NexStep presented substantial evidence that the My Account App causes buffering in response to a single action.

> **E.      The Asserted Scope of Equivalency Does Not Ensnare the Alleged Prior Art**

Comcast's ensnarement argument is waived for several reasons.  NexStep proposed a hypothetical claim which would both cover the accused device and remain patentable over the prior art, but Comcast never addressed it at trial, even though it had the burden of proof to do so.

Dr. Selker gave an opinion that, to the extent the asserted claims required any broadening at all to cover a single action consisting of several taps, the broadened hypothetical claim still would not cover the prior art, even if the entire Single Action Element were removed from the claim:

> Dr. Villasenor contends that my analysis of the '009 Patent would ensnare the prior art.  I disagree. Dr. Villasenor states that if the claims are broadened as I have interpreted them as to the single action and automatically forwarding limitations, then they would sweep in the prior art discussed in his invalidity report.  But Dr. Villasenor does not identify any particular reference that he contends would be ensnared based on my view of the '009 Patent as set forth in my Opening Report. Nor am I aware of any such reference.  Dr. Balakrishnan provided a rebuttal report on validity, demonstrating that each claim of the '009 Patent is valid over the prior art that Dr. Villasenor identifies.  I note that there are no references Dr. Villasenor asserted against the '009 Patent for which Dr. Balakrishnan relied on only the single action and automatically forwarding elements to distinguish.  Therefore, even if my analysis is broadening the scope of the claims (which I do not agree is the case), it would not sweep in any prior art that Dr. Villasenor has identified.

D.I. 328-1, Ex. 2 (Selker Reply) at ¶ 193 (citations omitted).  NexStep therefore proposed a hypothetical claim that would literally cover the My Account App (to the extent it was not already literally covered).  *Id.*

Specifically, Dr. Selker contended that, even if the Single Action Element is broadened to cover multiple taps (to the extent not already included) or even removed from the claims, it would not ensnare any prior art.  *Id.*  Comcast then bore the burden as the accused infringer "of producing evidence of prior art to challenge [the] hypothetical claim."  *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001) (affirming verdict of infringement under DOE where the accused infringer failed to come forward at trial with prior art that would have been ensnared by the hypothetical claim).  Comcast's experts did not do so in their reports and Comcast did not do so at trial or in its Motion.  Moreover, as discussed in Section IV below, at trial NexStep's validity expert Dr. Balakrishnan distinguished all of Comcast's purported prior art on multiple grounds, and his opinion still applies even if the Single Action Element were removed from the asserted claims.  Trial Tr. at 739:23-751:21

(distinguishing asserted prior art).  Thus, there is no basis to find ensnarement because Comcast

never came forward with prior art that would be ensnared by the proposed hypothetical claim.

### F.     There is No "Miscarriage of Justice" that Could Justify a New Trial on the Single Action Element

#### 1.     Comcast Waived its Request for a New Trial From the Court

Comcast's argument for a new trial on infringement rests upon its theory that Dr. Selker's

opinions on the Single Action Element should have been excluded under *Daubert* as supposedly

inconsistent with the plain meaning of the word "single."  Br. at 13.  Judge Fallon rejected this

exact argument in her Report & Recommendation (R&R) and Comcast did not object to that

portion of the R&R (*id*. at n.6), abandoning the right to seek review from the Court of this issue.

D.I. 267 at 45-46 and 65 (requiring the filing of objections to preserve the right to review from

the Court), citing *Sincavage v. Barnhart,* 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *see also*

*Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 374 (D. Del. 2014) (failure to

object to R&R waives the "right to further review of the recommendation or determination in the

District Court by a District Judge.")  Comcast further waived this request by not objecting to Dr.

Selker's testimony on the Single Action Element at trial.  *Waldorf v. Shuta*, 142 F.3d 601, 629

(3d Cir. 1998) ("[I]t is clear that a party who fails to object to errors at trial waives the right to

complain about them following trial.").  Thus, Comcast cannot seek a new trial based on its

waived argument that Dr. Selker's testimony should have been excluded under *Daubert.*

#### 2.     Dr. Selker's Opinions Regarding Infringement Were Based on the Plain and Ordinary Meaning of "Single Action"

To the extent the Court even reaches the issue, Comcast fails to identify any "substantial

error" in the admission of Dr. Selker's testimony regarding the Single Action Element that could

possibly justify a new trial.  A court should grant a new trial in a jury case only if "the verdict

was against the weight of the evidence . . . [and] a miscarriage of justice would result if the

13

verdict were to stand." *Williamson*, 926 F.2d at 1352.  Comcast falls far short of that heavy burden.

Comcast simply states that Dr. Selker's "opinions are inconsistent with the plain meaning of the word 'single,'" referring back to its denied *Daubert* motion and noting that it disagrees with Dr. Selker as to the factual question of the plain and ordinary meaning of the Single Action Element.  Br. at 13, citing D.I. 198 at 16-17.  NexStep incorporates its opposition to Comcast's *Daubert* motion, which established that Dr. Selker's opinions are based on the plain and ordinary meaning of "responsive to a single action," as confirmed by the intrinsic record, and to its discussion of this issue in Section II(A).  D.I. 214 (Opp. to *Daubert*) at 9-13.

Dr. Selker's opinions regarding "responsive to a single action" are consistent with the plain and ordinary meaning of the term and the intrinsic record, and the Court did not commit substantial error in admitting them.  *TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 5626638, at *1, n.2 (D. Del. Oct. 31, 2019) (explaining that expert testimony on the ordinary meaning of a claim term to a skilled artisan is helpful to the jury so long as it does not cross the line into claim construction) (citing *Cordis Corp. v. Bos. Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009)).

## III.   THE COURT SHOULD DENY COMCAST'S REQUEST FOR A JUDGMENT OF NO DAMAGE

Comcast's request that the Court grant a judgment of no damages should be denied because it is procedurally improper and contrary to the law.  Indeed, the Court already heard and rejected this same request by Comcast before entering the Trial Verdict.  D.I. 341 (Trial Verdict entered without a judgment of no damages despite Comcast's request that it include a judgment of no damages); D.I. 343 (Joint Status Report) at 3, Ex. A (Comcast's denied request for a judgment of no damages).

*First*, Comcast's request for a judgment of no damages is not available under either Rule 50(b) or 59, upon which Comcast moves.  Rule 50(b) only applies to issues submitted to the jury, but the issue of damages was not before the jury.  D.I. 352-1, Ex. A ("the jury . . . will not consider damages.").  Nor does Rule 59(a) apply, because Comcast is not requesting a new trial concerning damages.

*Second,* to the extent Comcast instead seeks entry of judgment pursuant to Rule 54(b), which it does not reference in its Motion or Brief, the request is premature.  NexStep has a number of pending claims that are unresolved and may require further trial, such as its claims for infringement of the Voice Remote and Device Enrollment Patents, which are before the Court.  D.I. 343 (Joint Status Report) at 1-2 (describing open issues in the case).  Because it would be inefficient for the Court to address post-judgment piecemeal with partial judgments, the Court should not enter judgment until those claims are adjudicated.  Moreover, the Court has not yet issued an Opinion on damages, which should precede any judgment on the issue.

*Third*, a judgment of no damages would be contrary to the law.  NexStep is entitled by statute to recover a reasonable royalty for Comcast's infringement.  35 U.S.C. § 284; D.I. 326 (NexStep's damages proffer).  "The statute is unequivocal that the district court must award damages in an amount no less than a reasonable royalty."  *Dow Chem. Co. v. Mee Indus., Inc*., 341 F.3d 1370, 1381-82, n.4 (Fed. Cir. 2003) (reversing award of no damages, which was based upon a lack of admissible expert evidence, and remanding for determination of royalty).  In the *Apple* case that Comcast cites, the Federal Circuit denied defendant's summary judgment motion for no damages.  The Court found that the absence of expert evidence alone does "not support a finding that zero is a reasonable royalty," particularly where, as here, there is "no evidence or argument to support a zero royalty," such as evidence that NexStep "would have been willing to

accept no payment" for Comcast's infringement or that Comcast "concluded that the [asserted]

patent had no value," and where there is evidence that, at a minimum, NexStep "is entitled to a

non-zero royalty." *Apple Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1329-30 (Fed. Cir. 2014).

Finally, the Court's exclusion of NexStep's damages evidence is not a basis to enter

judgment of no liability.  Comcast cites no authority standing for the proposition that if there is

no proof of damages a defendant is entitled to a finding of noninfringement.  Comcast relies only

on *Sowell*, a non-patent case involving RICO and securities fraud claims, where the elements of

the claims themselves require "proof of damages flowing from the defendants' conduct."  *Sowell*

*v. Butcher & Singer, Inc*., 926 F.2d 289, 297 (3d Cir. 1991).  Here, NexStep is entitled to

damages by statute.

## IV.    THE COURT SHOULD SUSTAIN THE JURY'S VALIDITY VERDICT

### A.    Substantial Evidence Supports the Validity Verdict

Substantial evidence supports the jury's verdict that Claims 1, 16, and 22 of the '009

Patent are not obvious over the combination of U.S. Patent No. 7,260,597 ("Hofrichter") and

U.S. Patent Pub. No. 2011/0022641 ("Werth").  As NexStep's validity expert, Dr. Balakrishnan,

demonstrated though extensive testimony, Hofrichter and Werth fail to disclose every element of

the asserted claims and a person of ordinary skill in the art ("POSITA") would not have been

motivated to combine those references.  Trial Tr. at 741:7-23; 742:2-744:20; 745:4-750:21

(discussing the Hofrichter and Werth references).

For example, Dr. Balakrishnan testified that Dr. Villasenor failed to show that his

proposed combination of references satisfies the elements of (1) "causing the home gateway to

initiate support session for the consumer device" because the alleged support session is done

locally, not at a support center (Trial Tr. at 742:2-743:5); (2) "forward[ing] automatically the

consumer device identification information during the support session" because the alleged

consumer device identification is not sent *during* the support session (*id* at 743:6-744:20); (3) a "concierge device" (*id.* at 745:4-746:7); and (4) "selecting the consumer device from a menu of candidate consumer devices known to a home gateway" because the alleged menu of candidate consumer devices is located at the alleged home gateway and not at the alleged concierge device (*id.* at 747:17-749:14).  Each of these points was an independent basis upon which the jury reasonably could have found no invalidity and demonstrates the substantial evidence of validity.

Moreover, Dr. Villasenor failed to even provide a prima facie case of obviousness, because he did not provide any testimony that the "aggregator agent," which he contended is a "concierge device," meets all of the elements of Claims 1, 16, and 22 of the '009 Patent.  For example, he did not identify any disclosure in the combination of Hofrichter and Werth that the aggregator agent is associated with a consumer device, takes action in response to a single action performed by a user, causes a home gateway to buffer consumer devices identification information for the selected consumer device, determines a support center for a support session, initiates a support session for the consumer device, forwards automatically the consumer device identification information during the support session, bypasses an automated attendant or interactive voice recognition, or initiates an automated support protocol.  He failed to address these requirements of Claims 1, 16, and 22 of the '009 Patent.  Trial Tr. at 663:11-23.

Dr. Villasenor also failed to show that a combination of Hofrichter with Werth determines a support center for a support session, as is required by the asserted claims, because the references only teach simply downloading a file or a manual in advance of a problem, which is not support session.  *Id*. at 661:19-662:14.

Instead of addressing the requisite claim elements, Comcast simply states that "all the building blocks . . . were known."  Br. at 15-17.  Even if that were true (and it is not, as Dr.

Balakrishnan demonstrated), it is insufficient to say that the building blocks of a claim were known, as Comcast argues. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007) ("[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art."). "This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *Id.* A reasonable jury was free to give more weight and credit to Dr. Balakrishnan's testimony than to Dr. Villasenor's unsupported and incomplete analysis. *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1338 (Fed. Cir. 2013) (concluding that *ipse dixit* statements by an expert are insufficient to sustain an invalidity case).

Comcast also failed to carry its burden to specifically address how and why the references in its proposed combinations would be combined. *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1346-51 (Fed. Cir. 2014). As Dr. Balakrishnan explained, Dr. Villasenor's analysis was premised on an improper hindsight analysis because it used the asserted claims as a blueprint for the proposed combination rather than identify any motivation at the time to combine the references as proposed. Trial Tr. at 749:16-751:21.

Indeed, Comcast did not provide a reason a POSITA would have looked to combine the disparate references, given that Hofrichter is directed to downloading local copies of manuals in advance of a problem for reference during subsequent troubleshooting, while Werth is directed to the very different issue of connecting customer troubleshooting agents with databases. *See, e.g.*, *id*. at 741:7-23. Comcast's argument that Hofrichter is in the same general field of troubleshooting as Werth is insufficient to provide a motivation to combine. *See Microsoft Corp. v. Enfish, LLC*, 662 F. App'x 981, 990 (Fed. Cir. 2016) (finding such reasoning, without more, is

insufficient to show that an "artisan would have recognized some deficiency in one reference or had some other reason to motivate looking to the other and combining them").

Dr. Villasenor's testimony was conclusory at best, and Dr. Balakrishnan's detailed testimony, discussed above, aptly rebutted it and provided substantial evidence for the jury's verdict. There is no basis to set aside the verdict of validity.

### B.   Dr. Balakrishnan's Testimony Regarding Secondary Considerations of Nonobviousness Was Relevant Evidence

To further demonstrate the non-obviousness of the asserted claims, Dr. Balakrishnan identified evidence of industry praise and recognition for NexStep's customer troubleshooting technology, including IBM's selection of NexStep as a partner for trade shows to demonstrate its technology and IBM documents discussing and praising NexStep's inventions. *See e.g.,* PTX-1178 at NexStep 0144289 (IBM document regarding the 2011 Consumer Electronics Show describing NexStep's inventive technology).

Dr. Balakrishnan established a nexus between this praise and the asserted claims, by identifying specific passages in the IBM documents describing NexStep's technology and showing that it corresponded to the inventions of the asserted claims. Trial Tr. at 758:22-760:4, 759:16-23. For PTX-797, an internal IBM document, Balakrishnan identified statements describing NexStep's technology corresponding to the asserted claims of the '009 Patent and IBM's praise of NexStep's patents. Trial Tr. at 760:5-9, 761:8-762:4.

Inventor Dr. Stepanian's testimony further established this nexus as he filed an application for his invention right before the 2011 trade show referenced in the IBM documents because he was about to demonstrate the invention at the trade show. Trial Tr. at 197:2-198:13, 200:13-201:10. Dr. Stepanian also testified that PTX-1178 directly discussed the inventions of

the asserted claims.  *Id*. at 201:7-10.  Thus, the praise and recognition was directly tied to the invention of the asserted claims.

Comcast's Motion ignores this evidence and simply contends there is no nexus, which is incorrect in view of the evidence discussed above.  Comcast also contends that there cannot be a nexus because the IBM documents upon which Dr. Balakrishnan relies predate the filing of the '009 Patent and its parent provisional patent application.  However, these documents came after Dr. Stepanian conceived of his inventions and developed a working prototype, which he was able to then demonstrate at trade shows.  Trial Tr. at 197:8-198:13.  Thus, the documents praise the inventions disclosed in the patent application, which was filed shortly thereafter, and have nexus to the asserted claims.

Comcast's authorities, *Carrier Corp.* and *SIBIA*, do not support the proposition that a new trial would be justified if there is "insufficient evidence of industry praise."  Br. at 19, citing *Carrier Corp. v. Goodman Glob., Inc.*, 162 F. Supp. 3d 345, 379-80 (D. Del. 2016) and *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1358-59 (Fed. Cir. 2000).  In *Carrier Corp.*, industry praise was not even at issue.  A new trial was based on the court's finding that an expert did not properly apply the legal standard for enablement and that there was no foundation for the testimony regarding commercial success because there was insufficient evidence that the patentee practiced its own patent.  162 F. Supp. 3d at 379-80.  In *SIBIA*, the court found that the prior art reference expressly disclosed the claim elements and there was no evidence refuting the obviousness analysis.  225 F.3d at 1359.  Neither case supports awarding a new trial based on Comcast's quibbles with NexStep's proof of nexus.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Comcast's Motion.

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Jonathan S. Caplan
Aaron M. Frankel
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated:  November 9, 2021
Public version dated: November 15, 2021
7462767

POTTER ANDERSON & CORROON LLP

By:  */s/ Philip A. Rovner*
　　 Philip A. Rovner (#3215)
　　 Jonathan A. Choa (#5319)
　　 Hercules Plaza
　　 P.O. Box 951
　　 Wilmington, DE  19899
　　 (302) 984-6000
　　 provner@potteranderson.com
　　 jchoa@potteranderson.com

*Attorneys for Plaintiff*
*NexStep, Inc.*