IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEXSTEP, INC., a Delaware Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1031-RGA-SRF |
| | ) |
| COMCAST CABLE COMMUNICATIONS, | ) |
| LLC a Delaware Limited Liability Company | ) |
| | ) |
| Defendant. | ) |

**NEXSTEP'S REPLY BRIEF IN SUPPORT OF ITS
<u>RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

Jonathan S. Caplan
Aaron M. Frankel
Marcus A. Colucci
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: November 16, 2021

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff
NexStep, Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. A Reasonable Jury Could Only Find that Comcast's My Account App Satisfies the Single Action Element ................................................................. 2

        1. Mr. Karinshak's Testimony is Not Substantial Evidence ..................................... 2

        2. Dr. Villasenor's Testimony is Not Substantial Evidence ..................................... 5

    B. A Reasonable Jury Could Only Find that the My Account App Causes the Comcast Gateway to "Determine a Support Center" ..................................................... 8

III. CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*L.T. Assocs., LLC v. Sussex Cty. Council*,
    No. 11-774-MPT, 2013 WL 3998462 (D. Del. Aug. 5, 2013) .................................................4

*TC Tech. LLC v. Sprint Corp.*,
    No. 16-cv-153-RGA, 2019 WL 2515779 (D. Del. June 18, 2019)............................................5

## I. INTRODUCTION

Judgment as a matter of law that Comcast literally infringes the asserted claims of the '009 Patent is warranted. In its Opposition ("Opp."), Comcast concedes that its accused My Account App satisfies all but two elements of the asserting claims: (1) causing the home gateway to perform actions in response to a single action (the "Single Action Element") and (2) determining a support center for a troubleshooting session. For those two disputed elements, Comcast fails to identify substantial evidence that could support a verdict of non-infringement, and a reasonable jury could only find that Comcast literally infringes.

For the Single Action Element, Comcast relies exclusively on the testimony of Mr. Karinshak and Dr. Villasenor, both of whom testified that no single action by a customer is sufficient to *complete* a troubleshooting process. But no reasonable jury could find non-infringement based on their testimony because the asserted claims only require *initiation* of a troubleshooting process, and do not require *completion* of a troubleshooting process. Mr. Karinshak and Dr. Villasenor also did not dispute that a single button push on the My Account App is sufficient to initiate a troubleshooting process, which is what the asserted claims require.

With respect to the limitation of "determining a support center," Comcast relies only on the *ipse dixit* testimony of Dr. Villasenor. But Comcast's Opposition ignores the clear admissions by Dr. Villasenor that, at least in certain scenarios, the My Account App does select a support center, which is sufficient to satisfy this limitation.

Thus, JMOL is warranted because of the absence of substantial evidence from which a reasonable jury could find no literal infringement.

## II.     ARGUMENT

### A.     A Reasonable Jury Could Only Find that Comcast's My Account App Satisfies the Single Action Element

NexStep demonstrated that a reasonable jury could only find that Comcast's My Account App literally satisfies the Single Action Element because a single button push by a customer causes the My Account App to send a troubleshooting request signal to Comcast's home gateway, which then performs the four required actions.  D.I. 354 (Opening Brief, "Br.") at 15-17.  Comcast does not offer any substantial evidence in response.  Notably, Comcast does not cite to any technical documents or source code as evidence supporting the verdict.  As discussed below, the testimony of Mr. Karinshak and Dr. Villasenor cannot sustain the verdict.

#### 1.     Mr. Karinshak's Testimony is Not Substantial Evidence

Comcast relies heavily on Mr. Karinshak's testimony, which amounted to conclusory testimony on direct examination that multiple button pushes are required to complete a troubleshooting process or to be connected to a service agent.  There are multiple reasons this is not substantial evidence of non-infringement.

*First*, on cross-examination, Mr. Karinshak conceded that a single button push, which is a "single action," is sufficient to start the Xfinity Assistant functionality.  For example, he testified as follows:

> Q. Now we're going to tap that Xfinity Assistant button.
>
> * * *
>
> A. The first action that we took was to . . . launch the Xfinity Assistant.
>
> Q. Right . . . . Whatever has happened behind the scenes, you don't know about. It's taken one tap to get there, not seven, not three, and not six.  ***One single action will get to that screen; correct?***
>
> A. ***Yes.  The first action that we did was to click on the Xfinity Assistant.***

Trial Tr. at 530:10-531:19 (emphasis added). As shown in NexStep's opening brief, the Xfinity Assistant causes all of the required actions to be performed. Br. at 15-17; Trial Tr. at 354:2-5, 527:22-531:19, 696:17-697:2. Thus, Mr. Karinshak confirmed that the My Account App satisfied the Single Action Element.[1]

*Second*, Mr. Karinshak's testimony focused on the number of steps required to *complete* the troubleshooting process or speak with a customer service agent, not the number of actions to *initiate* the troubleshooting process. *See, e.g.*, Trial Tr. at 485:2-497:17 ("Q. And how many actions did it take the customer to *complete* the troubleshooting process? A. Ultimately seven."), *id.* at 481:16-19 (there is no "single button [the user] can push to automatically begin a support session and *connect [the user] with a live agent*.") (emphasis added). The asserted claims of the '009 Patent do not, however, require completion of a troubleshooting protocol in response to a single action and do not require a connection to a live agent. They only require initiation of an automated troubleshooting protocol:

> responsive to a single action performed by a user, the concierge device communicating with a home gateway, including . . . causing the home gateway to initiate the support session for the consumer device . . . , thereby allowing the support session . . . ***to initiate an automated support protocol***.

JTX-2 ('009 Patent) at Claim 1 (emphasis added). Thus, Mr. Karinshak's testimony about the number of actions required to finish a support protocol or to connect to a live agent is not relevant evidence of non-infringement, let alone substantial evidence.

---

[1] Mr. Karinshak's direct examination was focused on contrived troubleshooting scenarios where there was no technical problem to be detected and multiple button pushes were necessary to conclude the troubleshooting process. Trial Tr. at 527:8-21 (admitting his scenarios were limited to using the My Account App with a system that was correctly operating). Those scenarios are different from and do not negate the scenarios that NexStep relies on to show infringement. Br. at 15-17 (summarizing infringing scenarios).

***Third***, on cross-examination, Mr. Karinshak admitted that he did not know any details about the actions that take place in Comcast's home gateway.  Because Mr. Karinshak did not know this information, his testimony is not substantial evidence regarding whether Comcast's home gateway takes the required actions in response to button pushes on the My Account App. *L.T. Assocs., LLC v. Sussex Cty. Council*, No. 11-774-MPT, 2013 WL 3998462, at *5 (D. Del. Aug. 5, 2013) ("For lay opinion as to technical matters . . . to be admissible, it must derive from a sufficiently qualified source as to be reliable and hence helpful to the fact finder.") (citation omitted).

Specifically, Mr. Karinshak admitted that he had no understanding of the functionality of the Xfinity Assistant and if it is a Comcast cloud service.  Trial Tr. at 529:7-14 ("Q. [Do you] understand that Xfinity Assistant [is] the Comcast cloud service where it collects information about the devices, determines their status and then makes recommendations?  A. No.  And again, I'm not a technical expert on all of the cloud and the backend of the Xfinity Assistant.").  This is a critical admission because the disputed factual issue was what actions the Comcast Cloud (which is the accused home gateway) takes.  Because Mr. Karinshak had no understanding of the Comcast Cloud, he could not have provided any evidence regarding the home gateway.  Indeed, he also admitted that he:

- was not aware whether the My Account App even communicates with the Comcast home gateway.  *Id.* at 524:19-526:13 ("Q. And the My Account App communicates with the Comcast gateway and specifically the customer experience gateway, that's the CX [layer] gateway; right? . . . A. So I cannot speak to the specifics around all the different platforms, the CX layer and all of the different communications and data that go there.").

- did not understand the Xfinity Assistant operation from a technical perspective, which is one of the primary infringing features NexStep is relying on.  *Id.* at 517:15-18 ("Q. [Y]ou don't understand within the Xfinity Assistant how it's working in a technical perspective? A. No, I'm not a technical expert for the Xfinity Assistant.").

- did not have an understanding of the flow of information between the Xfinity Assistant, the My Account App, and the Comcast Cloud, including during the troubleshooting

process. *Id.* at 516:3-19 ("Q. [B]ut you don't have any understanding as far as what information is moving [between the My Account App and the Xfinity Assistant in the Comcast cloud] during the troubleshooting process? A. I do not have all the information around the data that is going back and forth during the troubleshooting process.").

- did not have an understanding at a technical or technology level of the interactive troubleshooting guides, which are another key feature accused of infringement. *Id.* at 516:20-517:6 ("Q. But you can't speak to [the ITGs] at a technical level? A. No, I cannot speak to the ITGs at a technical or technology level.").

- did not have an understanding of the interworkings or details of the My Account App, including technical operation and source code. *Id.* at 513:2-15 ("Q. Okay. And you don't know the interworkings or the details of how the My Account App actually works; right? . . . A. When you say interworkings, I do know the experiences, but in terms of the interworkings of the technology and all that, no, I do not. Q. So the technical parts of how the My Account App actually works, that's not part of your expertise? A. No.").

- did not "have direct ownership for the My Account App and the usage of features or interaction within it" in response to being asked "which operations originate within the My Account App." *Id.* at 512:16-513:1.

Given Mr. Karinshak's lack of knowledge on key aspects of the My Account App, Mr. Karinshak did not provide the jury with substantial evidence of non-infringement.

## 2.  Dr. Villasenor's Testimony is Not Substantial Evidence

Dr. Villasenor's *ipse dixit* conclusion that Comcast does not infringe is not substantial evidence to support the verdict. *TC Tech. LLC v. Sprint Corp.*, No. 16-cv-153-RGA, 2019 WL 2515779, at *10-11 (D. Del. June 18, 2019) (excluding patentee's technical expert's opinions on doctrine of equivalents since the opinions were "wholly conclusory").

Dr. Villasenor's testimony was based on the same flawed premise as Mr. Karinshak's testimony. Specifically, Dr. Villasenor discussed three scenarios and counted the number of button pushes by the customer to either complete the troubleshooting process or to be connected with a live agent. *See, e.g.*, Trial Tr. at 596:2-14 ("Q. So yesterday, what did we actually describe to the jury, generally? A. So we walked through, on the board, two examples . . . [one of which] is the actions that a customer could take from a TV troubleshooting perspective, which had seven steps."); Opp. at 7-8 (summarizing Dr. Villasenor's testimony). However, this is not

substantial evidence of non-infringement because, as discussed above, the asserted claims only require initiation of an automated troubleshooting protocol, not conclusion of a troubleshooting protocol or connection to a live agent.

Indeed, Dr. Villasenor's testimony confirms that the Court should grant this motion for JMOL as he conceded on cross-examination that only a single action is needed to start the troubleshooting protocol in each of NexStep's infringement scenarios:

- **Scenario 1:** Only a single action is required to start the Xfinity Assistant troubleshooting protocol. Trial Tr. at 696:22-697:5 ("Q. And you agree, just like everyone here so far, that if I hit on that little black circle, that's a single action; right? A. Yes, that is . . . *a single action* after you've already opened . . . .") (emphasis added).

- **Scenario 2:** Selecting "continue" on a troubleshooting page for a selected device, which starts a troubleshooting support session, is a single action. *Id.* at 689:10-20 ("Q. You'd agree with me that pressing that continue button is a single action; correct? A. It is. ***It is one action***, that's right.").

- **Scenario 3:** Selecting "Run Diagnostics" for a device, which initiates a diagnostic protocol, is a single action. *Id.* at 701:8-21 ("Q. Okay. So when you click on the run diagnostic button, in your view, that would be a single click; right? . . . You'd agree ***that's a single action***? A. ***Yes, that's right.***").

Moreover, even if Dr. Villasenor had been correct that the claims require completion of a troubleshooting protocol (which they do not), the claim that a customer would need a short sequence of button pushes to complete the protocol is not substantial evidence of non-infringement. The short sequence is in and of itself a single action. For example, single actions, such as throwing a baseball or dialing a phone number, often involve discrete parts, such as the different motions a body makes to launch the baseball or the multiple number button pushes to enter a phone number. *Id.* at 444:22-445:4 (describing multiple steps within the single action of throwing a baseball).

The '009 Patent confirms that the claimed "single action" can include a sequence of button pushes. The preferred embodiments in the '009 Patent all disclose several button pushes.

For example, the "single [user] action" consists of launching a troubleshooting protocol by first selecting a device to be supported (shown in Fig. 14A reproduced below), which "causes initiation of a support session," which then transitions to a different screen providing a "suggested fix" (shown in Fig. 14B below), where the user would press another button to "Start Call" to initiate a video or voice call (shown in Fig. 15 below). JTX-2, Figs. 14A, 14B, 15; 3:27-44; 13:38-14:3; 22:59-23:15 (all describing a device troubleshooting flow, which includes multiple button presses on different screens). Thus, the '009 Patent considers this short sequence of button pushes to be a single action to start the troubleshooting process, which would equally apply to the examples that Dr. Villasenor testified about.



FIG. 14A    FIG. 14B    FIG. 15

JTX-2 ('009 Patent) at Fig. 14A (showing device selection button push), Fig. 14B (showing suggested fix and button for initiating a support video call), Fig. 15 (showing support video call).

Thus, Dr. Villasenor's testimony is not substantial evidence that can sustain the verdict of no literal infringement.

### B. A Reasonable Jury Could Only Find that the My Account App Causes the Comcast Gateway to "Determine a Support Center"

A reasonable jury could only find that the My Account App causes the Comcast home gateway to "determine a support center" in response to a customer's single action (a button push). Trial Tr. at 349:16-360:18; Br. at 11-12 (collecting unrebutted evidence). For example, Dr. Selker relied on source code showing that Comcast's servers in response to a command from the My Account App determine the appropriate service option (support center) for the particular device and problem. PTX-637 at COM_NEX_SC00000150 (source code showing decision commands related to issue diagnosis, prediction, and recommendation); *id.* at COM_NEX_SC00000126 (source code illustrating different support center options for different devices); Trial Tr. at 690:8-18, 695:2-14.

Dr. Selker also relied on the testimony of Comcast's engineer, Mr. Saylor, who testified that after a customer initiates a support session on the My Account App, Comcast's CONVOY server uses diagnostic data and business rules to determine the appropriate support process (a support center) for the particular device and problem. Trial Tr. at 257:1-262:15 ("Convoy is a platform that aggregates a lot of diagnostics . . . . It takes that information and then, based on business rules . . . [it will] provide a recommendation of a set of steps to . . . help determine what's going on inside the customer home.").

Dr. Villasenor's trial testimony *confirms* that this element is satisfied and is, therefore, not substantial evidence to support non-infringement. Dr. Villasenor conceded that Comcast's home gateway (referred to in this testimony as the "back-end"), which provides the automated troubleshooting protocols, is indeed a "support center." *Id*. at 690:8-18 ("Q. When you hit that button, a request is sent to the back-end to a support server; right? A. [T]here is a request sent

back to . . . move forward with the process.  That's right.  Q. And it's called the support center; right?  A. Yes.").

Dr. Villasenor then conceded on cross-examination that there are different server addresses ("URLs") for restarting different devices, which correspond to multiple support centers, from which one is selected.  *Id*. at 695:2-14 ("Q. And [Dr. Selker] actually pointed to the different URL's that said for restart, and in particular for the home device, for the security device, because that came in through a different server, different architecture; correct?  A. He did, but he pointed to source code that wasn't used *in some cases*.") (emphasis added).  Each of these servers is a different support center because it provides a different support protocol.  *Id.* at 354:6-360:16.

Even if the jury credited Dr. Villasenor's statement on cross-examination when confronted with this evidence that, "in *some* cases" this code is not used, neither Dr. Villasenor nor anyone else testifying on behalf of Comcast ever contended that the different URL options are *never* used.  Indeed, Dr. Villasenor did not identify the portions of the relevant code he contends are sometimes not used, did not identify the scenarios where those portions of code are not used, and did not provide any basis for his assertion.  *Id*. at 695:2-10 (emphasis added).  Thus, Dr. Selker's testimony that the various URL options correspond to multiple support centers from which one is selected is unrebutted.  Therefore, a reasonable jury could only find that the "determine a support center" limitation is satisfied by the My Account App.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant NexStep's Renewed Motion for JMOL and find that Comcast's My Account App literally infringes Claims 1, 16, and 22 of the '009 Patent.

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Paul J. Andre<br>Lisa Kobialka<br>James Hannah<br>KRAMER LEVIN NAFTALIS<br>& FRANKEL LLP<br>990 Marsh Road<br>Menlo Park, CA 94025<br>(650) 752-1700 | By: */s/ Philip A. Rovner*<br>    Philip A. Rovner (#3215)<br>    Jonathan A. Choa (#5319)<br>    Hercules Plaza<br>    P.O. Box 951<br>    Wilmington, DE  19899<br>    (302) 984-6000<br>    provner@potteranderson.com<br>    jchoa@potteranderson.com |
| Jonathan S. Caplan<br>Aaron M. Frankel<br>Marcus A. Colucci<br>KRAMER LEVIN NAFTALIS<br>& FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>(212) 715-9100 | *Attorneys for Plaintiff*<br>*NexStep, Inc.* |

Dated:  November 16, 2021
7493857