IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEXSTEP, INC., <br><br> Plaintiff; <br><br> v. <br><br> COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Defendant. | Civil Action No. 19-1031-RGA |

MEMORANDUM OPINION

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Paul J. Andre, Lisa Kobialka, James Hannah, KRAMER LEVIN NAFTALIS & FRANKEL LLP, Menlo Park, CA; Jonathan S. Caplan, Aaron M. Frankel, Marcus A. Colucci, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, NY;

    Attorneys for Plaintiff.

Jack B. Blumenfeld, Brian P. Egan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; William F. Lee, Sarah B. Petty, Kate Saxton, WILMER CUTLER PICKERING HALE AND DORR LLP, Boston, MA; Amy Kreiger Wigmore, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, DC; Mary (Mindy) V. Sooter, Nora Q.E. Passamaneck, WILMER CUTLER PICKERING HALE AND DORR LLP, Denver, CO;

    Attorneys for Defendant.

March 28, 2022

ANDREWS, U.S. DISTRICT JUDGE:

Before me are NexStep's objections (D.I. 276) and Comcast's unresolved objections (D.I. 273) to the Magistrate Judge's Report and Recommendation. (D.I. 267). I have considered the parties' briefing. (D.I. 273, 276, 286, 287). For the following reasons, NexStep's objections are OVERRULED and Comcast's objections are SUSTAINED-IN-PART.

## I. BACKGROUND

NexStep sued Comcast for infringement of several patents across three groups. (D.I. 1). The parties cross-moved for summary judgment and to exclude expert testimony. (D.I. 196, 197). The Magistrate Judge issued a Report and Recommendation on August 20, 2021. (D.I. 267).

On September 20–23, NexStep tried the patents in the "Customer Troubleshooting" group to a jury. (D.I. 346–49). Before that trial, I considered some of Comcast's objections to the Report and Recommendation. I overruled Comcast's objection to the Report's recommendation regarding the patent eligibility of the Customer Troubleshooting Patents (D.I. 320) and sustained Comcast's objection to the Report's recommendation regarding Mr. Reading's expert testimony on the Customer Troubleshooting Patents. (D.I. 314). This memorandum opinion addresses Comcast's other objections along with NexStep's objections to the Report and Recommendation.

To the extent there is no objection to various of the Magistrate Judge's recommendations, I will adopt them without further discussion.

## II. LEGAL STANDARD

### A. Summary Judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

### B. *Daubert*

Federal Rule of Evidence 702 sets out the requirements for expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's

3

> 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."
>
> By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003) (footnote and internal citations omitted).[1]

### C. Standard of Review

The parties agree that the standard of review for the Magistrate Judge's Report and Recommendation on summary judgment is *de novo*. (D.I. 273 at 1; D.I. 276 at 1). For a motion to exclude expert opinions, the standard of review is "clearly erroneous or is contrary to law." (D.I. 273 at 1; D.I. 286 at 3).

## III. DISCUSSION

### A. NexStep's Objections

NexStep objects to the Report's recommendation that I grant summary judgment of noninfringement of U.S. Patent Nos. 8,885,802 ("the '802 patent"), 9,614,964 ("the '964 patent"), 7,697,669 ("the '669 patent"), and 8,494,132 ("the '132 patent"). The '802, '669, and '132 patents are in the "Tether Patents" group and the '964 patent is the "Enrollment Patent." (D.I. 267 at 2).

#### 1. Noninfringement of the '802 Patent

---

[1] The Court of Appeals wrote under an earlier version of Rule 702, but the subsequent amendments to it were not intended to make any substantive change.

4

The '802 patent requires the use of Voice over Internet Protocol ("VoIP"). '802 Patent, Cl. 1. "VoIP" is construed as "[p]rotocols and data formats for transmitting voice conversations over a packet-switched network, such as the Internet." (D.I. 113 at 21; D.I. 261 at 1). NexStep argues that the accused devices' use of HTTP is use of VoIP. (D.I. 276 at 1). The Magistrate Judge disagreed. (D.I. 267 at 20).

There does not appear to be any dispute regarding how the accused devices operate. As Comcast explains, "A user speaks a command (e.g., 'watch NBC') into the microphone of the voice remote, and the captured audio is sent by the set-top box over a protocol called HTTP to Comcast's servers." (D.I. 287 at 6).

NexStep asserts that any protocol that can carry voice data qualifies as VoIP. (*See* D.I. 276 at 2 ("[T]he VoIP element . . . is satisfied because Comcast's accused products use a number of protocols that can carry voice data, i.e., a conversation over the Internet. There is no need to show that the accused products are used for actual two-way conversations . . . .")). NexStep advances several claim construction arguments in support of its theory. (*See* D.I. 276 at 3–4). As the Magistrate Judge noted, however, "The court specifically rejected Plaintiff's effort to broaden the definition to encompass all audio data, instead finding that the industry standard definition of the term limited it to the realm of voice conversations or telephony." (D.I. 267 at 19).

The VoIP limitation requires use of a protocol capable of transmitting a "voice conversation." A conversation requires at least two people. A "voice conversation" transmitted over the internet implies two-way transmission. NexStep has not offered any evidence showing that HTTP can carry out two-way voice conversations. NexStep's expert presents only conclusory statements that HTTP is VoIP. (*See* D.I. 199-2, Ex. 23, ¶¶155–160, 189–192

5

(asserting that transmission over HTTP is VoIP without showing that HTTP is capable of transmitting voice conversations); D.I. 199-2, Ex. 24, ¶ 41 (asserting that "HTTP is a request-response protocol . . . that is capable of transmitting voice conversations"). The dictionary definition of "VoIP" cited by NexStep's expert undermines the expert's conclusory assertion that a person of skill in the art (a "POSITA") would understand that "VoIP protocols and formats for transmitting voice conversations do not require real-time interactive voice conversations." (D.I. 199-2, Ex. 24, ¶ 43; *see also* D.I. 215-1, Ex. K at 979 (defining "VoIP")). As the Magistrate Judge noted, "Plaintiff's dictionary definition confirms that VoIP protocols must be capable of facilitating 'phone calls' and may include additional new services such as voice emails." (D.I. 267 at 21 n.6.). Thus, I will follow the Report's recommendation and grant summary judgment of noninfringement of the '802 patent.

### 2. Noninfringement of the '964 Patent

The '964 patent requires a "control device," which I construed as "a device, not a universal remote control or smart phone capable of acting as a universal remote control, for controlling another device." (D.I. 261 at 3). NexStep argues, "the application of the Court's construction of 'control device' to the Accused Control Devices is a factual dispute that should have precluded summary judgment." (D.I. 276 at 5). Comcast responds that NexStep has waived many of its arguments by failing to raise them before the Magistrate Judge. (D.I. 287 at 1).

Further procedural history is necessary to understand the parties' positions on this point. The Magistrate Judge issued a Report and Recommendation regarding claim construction. (D.I. 113). NexStep objected. (D.I. 128). On August 9, 2021, I issued a Memorandum Order modifying the Magistrate Judge's construction of "control device." (D.I. 261). The Magistrate

Judge had recommended the construction: "a simple apparatus, not a universal remote or smart phone capable of acting as a universal remote control, for controlling a device." (D.I. 113 at 25). I removed the "simple apparatus" language and construed "control device" as "a device, not a universal remote control or smart phone capable of acting as a universal remote control, for controlling another device." (D.I. 261 at 3).

By the time my Memorandum Order issued, the parties had already briefed their motions for summary judgment. On August 10, 2021, the Magistrate Judge ordered the parties to provide a joint status report regarding "their respective positions on the August 9, 2021 Memorandum Order on claim construction and its effect, if any, on the pending motions for summary judgment and Daubert motions." The parties filed a joint status report (D.I. 264) on August 17, 2021 and the Magistrate Judge issued the Report and Recommendation (D.I. 267) three days later.

NexStep's position in the joint status report was: "As set forth in NexStep's Opposition, Comcast's Home App infringes Claim 11 and 21 of the '964 Patent by way of three infringing scenarios, in which the 'control device' can include Comcast's Home App (scenario 1) or Comcast's Xfinity Remotes (scenarios 2 and 3)." (D.I. 264 at 2).

In its objections, NexStep adds an infringing scenario in which the set-top box is a control device. (D.I. 276 at 9). NexStep had the opportunity to tell the Magistrate Judge that the claim construction yielded a new infringement theory. NexStep did not. Thus, NexStep is precluded from arguing the set-top box theory now. *See* Oct. 9, 2013 Standing Order for Objections Filed Under Fed. R. Civ. P. 72, https://www.ded.uscourts.gov/sites/ded/files/general-orders/Objections-filed-under-Fed-R-Civ-P-72.pdf.

In addition, I will not consider new evidence from NexStep's expert's supplemental report, which was not before the Magistrate Judge. (D.I. 276-1, Ex. 2). NexStep identifies the

supplemental expert report as a new argument in its certification pursuant to the Standing Order for Objections Filed Under Fed. R. Civ. P. 72. (D.I. 276-2). NexStep asserts good cause because the parties entered a stipulation "whereby they agreed to exchange addenda to their experts' reports to address the revised claim construction." (*Id.*).

I do not think there is good cause to consider the new evidence. NexStep was asked to disclose what "effect, if any" the modified claim construction had "on the pending motions for summary judgment." (Aug. 10, 2021 Oral Order). In the responsive joint status report, NexStep did not raise the possibility of new summary judgment arguments stemming from a new supplemental expert report. (D.I. 264). Just eight days after NexStep submitted the joint status report, and just five days after the Magistrate Judge issued the Report and Recommendation, the parties proposed the stipulation. (D.I. 269). I granted the stipulation the next day, which allows for limited supplementation of "issues relating directly to the terms 'remote control device' . . . and 'control device'" and provides that the parties' "infringement contentions will be deemed to incorporate their supplementations." (D.I. 270 at 1–2). The stipulation does not state anything regarding summary judgment. Given NexStep's representations to the Magistrate Judge just eight days prior, the stipulation does not give NexStep good cause to raise new arguments in its objections.

I will accordingly only consider NexStep's objections that pertain to the infringement theories before the Magistrate Judge.

### a. Home App

NexStep argues Comcast's Xfinity Home App is a control device. The Home App is software and does not include any hardware. (D.I. 214 at 16). Before the Magistrate Judge, NexStep argued that the Home App infringed under the doctrine of equivalents. (D.I. 214 at 16–

8

17). The Magistrate Judge rejected this argument, because "the Xfinity Home App, by itself, has no hardware that might otherwise render it equivalent to the claimed control device which was defined by the court as an 'apparatus' having a physical structure." (D.I. 267 at 18). Even though the Magistrate Judge's opinion uses the "apparatus" terminology, the reasoning applies equally well under the "device" construction. A device, like an apparatus, is physical. "[N]o jury could reasonably find that software could be equivalent to a physical" claim limitation. *Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp. 3d 532, 544 (W.D. Tex. 2020). Thus, I agree with the Magistrate Judge that the Home App does not infringe the '964 patent.

### b. Home App on a Smartphone or Tablet

NexStep asserts that the Home App in combination with a smartphone is a control device. (D.I. 276 at 6–9). Comcast replies that this argument is waived. (D.I. 287 at 4). Before the Magistrate Judge, NexStep argued that the Home App infringed under the doctrine of equivalents. (D.I. 214 at 16–17). In its objections, NexStep appears to object on the basis that the Home App on a smartphone literally infringes. (D.I. 276 at 7 ("Dr. Selker's opinion under this Court's current construction is that the combination of the Xfinity Home App and a smartphone is literally a 'control device.'" (citations omitted))). I agree with Comcast that the literal infringement argument is waived. In the joint status report, NexStep did not clarify that the modified construction of "control device" gave rise to a literal infringement argument. (D.I. 264 at 3–4). Thus, I will adopt the Magistrate Judge's recommendation to grant Comcast's motion for noninfringement of the '964 patent as it relates to the Home App.

### c. Xfinity Remotes

NexStep argues that the Xfinity Remotes are control devices. (D.I. 276 at 8). The Magistrate Judge disagreed because "the evidence of record demonstrates that the features of the

9

Xfinity Remotes are consistent with the standard features of a universal remote control, as defined by Dr. Selker." (D.I. 267 at 17). Under the claim construction, a control device cannot be a universal remote control. (D.I. 261 at 3). Thus, the Report recommends I grant summary judgment of noninfringement for the Xfinity Remotes.

In its objections, NexStep argues that Dr. Selker opined before the Magistrate Judge that Xfinity Remotes are not a universal remote control because they cannot control "***all*** the functionality" of the controlled devices. (D.I. 276 at 8). The opinion that universal remote controls must control "all" the functionality of a controlled device was not present in the materials cited to the Magistrate Judge. (*See* D.I. 214 at 15–16 (citing 215-1, Ex. E ¶¶ 330–35)). Dr. Selker's opening and reply expert reports on this point were thin. As the Magistrate Judge notes, "Dr. Selker cites only one document in support of his opinion on this topic." (D.I. 267 at 17 n.4). For the reasons explained by the Magistrate Judge, that document is not enough to raise a genuine issue of material fact. (*Id.*). I will not consider new opinions raised in Dr. Selker's addendum. Thus, NexStep has failed to raise a genuine issue of material fact.

For the foregoing reasons, NexStep's objections to the Report's recommendation that I grant summary judgment of noninfringement of the '964 patent are overruled.

### 3. Noninfringement of the '669 and '132 Patents

NexStep accuses Comcast's TV Remote and Stream Apps of infringing the '669 and '132 patents. The Report recommends I grant Comcast summary judgment of noninfringement because the accused products do not satisfy the VoIP limitation of the asserted claims. (D.I. 267 at 25). Under the claim construction, VoIP requires transmission of "voice conversations." (D.I. 113 at 21; D.I. 261 at 1).

NexStep's first infringement scenario involves one-way audio transmission. (*See* D.I. 276 at 10). This does not meet the VoIP limitation for the reasons discussed in § III.A.1 *supra*. NexStep's second infringement scenario involves "streaming video content with encoded voice conversations." (D.I. 276 at 10). As the Magistrate Judge found, this is still one-way audio communication and not a voice conversation as required by the claims. (D.I. 267 at 25). NexStep's third infringement scenario involves the transmission of text that has been converted from a user's speech. (D.I. 276 at 10). Not only is this one-way transmission, but it is not plausible that text is a "voice conversation." NexStep has failed to raise a genuine issue regarding infringement under the doctrine of equivalents because NexStep's expert did not offer a doctrine of equivalents opinion on the VoIP limitation. (*See* D.I. 267 at 24 n.7). Thus, I will adopt the Report's recommendation and grant summary judgment of noninfringement for the '669 and '132 Patents.

## B. Comcast's Objections

Comcast objects to the Report's recommendation that I (1) deny Comcast's motion to exclude Mr. Reading's damages opinions,[2] (2) deny Comcast's motion for summary judgment of no pre-suit damages, and (3) grant NexStep's motion for summary judgment of validity of the '964 patent over the prior art. (D.I. 273).

### 1. Mr. Reading's Damages Opinions

For the reasons stated in my September 16, 2021 Memorandum Opinion (D.I. 313), I will grant Comcast's motion to exclude Mr. Reading's damages opinion based on the hypothetical negotiation of cost savings associated with the Enrollment Patent.

---

[2] I already resolved Comcast's objections to Mr. Reading's testimony regarding the Customer Troubleshooting Patents. (*See* D.I. 314).

Comcast argues that Mr. Reading's royalty base rests on flawed assumptions and should be excluded. (D.I. 273 at 6). Mr. Reading assumes that Comcast saved "at least one or two truck rolls per installed Home system." (*Id.* at 7 (citing D.I. 199-4, Ex. 46 ¶ 126)). This estimate is based on the data Mr. Reading had available. As the Magistrate Judge noted, "Because Defendant does not track the number of devices self-installed by customers, Mr. Reading had no alternative to relying on an estimate for this information." (D.I. 267 at 48). I agree with the Magistrate Judge that this goes to the weight, not the admissibility, of the evidence.

Comcast also objects to the Report's recommendation that I deny Comcast's motion to exclude Mr. Reading's damages opinions for the Tether Patents. (D.I. 273 at 7). In one paragraph, Comcast asserts that the Magistrate Judge erred on four separate grounds. Comcast presents no argument for how the Magistrate Judge erred. Instead, Comcast directs me to its briefing before the Magistrate Judge. (*Id.*). For the reasons stated by the Magistrate Judge, I see no reason to exclude Mr. Reading's damages opinions on the Tether Patents. (D.I. 267 at 50–53).

### 2. Pre-suit Damages

Comcast objects to the Report's recommendation that I deny Comcast's motion for summary judgment of no pre-suit damages. A patentee who makes or sells a patented article must mark the article or notify infringers of the patent to recover damages. 35 U.S.C. § 287(a). "Full compliance" with the § 287(a) requires that "substantially all" of the patented products are "consistently marked." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). NexStep argues that it consistently marked its prototypes since the first asserted patent issued in 2009. (D.I. 214 at 28). Comcast disagrees and points to evidence in the form of photos of unmarked devices. (D.I. 273 at 8). According to the inventor, Dr. Stepanian, these photos

12

depict various items not subject to marking, such as "CAD drawings, design drawings, concept mockup images, or studio photographs of prototypes for potential use in print marketing materials. . . . There are only a few photographs in this compilation of actual demonstration prototypes, and all of the demonstration prototypes are labeled with patent markings." (D.I. 215-1, Ex. R ¶ 8).

Dr. Stepanian also states, "As NexStep began to obtain utility patents that applied to its demonstration prototypes, I would regularly update the patent marking labels to specifically identify the issued patent numbers applicable to each demonstration prototype." (*Id.* ¶ 7). Comcast argues that I should disregard this declaration. (D.I. 273 at 8). According to Comcast, the declaration contradicts Dr. Stepanian's "testimony as NexStep's corporate representative that he did not remember whether he ever demonstrated devices embodying an Asserted Patent that were not properly marked." (*Id.*). I do not think the declaration and deposition testimony are directly contradictory. The statement here is barely inconsistent. Dr. Stepanian does not now say that he remembers that he never demonstrated an unmarked device. Thus, it is not "clear that [the] affidavit is offered solely for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). Because Dr. Stepanian's statements have raised a genuine issue of material fact regarding whether he consistently marked, I will adopt the Report's recommendation that I deny Comcast's motion for no pre-suit damages.

### 3. Validity of the Enrollment Patent over Prior Art

Comcast argues that two pieces of prior art, the iControl and uControl home security systems, render the Enrollment Patent obvious. (D.I. 213 at 21–22). NexStep seeks summary judgment of validity over the iControl and uControl systems, arguing that Comcast has failed to raise a genuine issue of material fact in support of its obviousness contentions. (D.I. 200 at 23).

A patent claim is obvious if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103(a).

The Enrollment Patent requires that the "control device" is registered with a cloud-based service. '964 Patent, Cl. 1. Claim 1 recites, "receiving a second enrollment signal sent by a second control device . . .; registering the second control device with a cloud based service . . . ." *Id.* Comcast's expert opines that the iControl and uControl systems have devices such as keychain remotes or key fobs that meet the "control device" limitation. (D.I. 213 at 29). The Magistrate Judge disagreed, finding that Comcast lacked evidence showing that the devices were registered with a cloud-based system. (D.I. 267 at 44–45).

On my review of the evidence, I think Comcast has raised a genuine dispute of material fact. Much of the evidence comes from Comcast's expert, Dr. Villasenor, who opines:

> [T]he iControl system allows a customer to remotely access and control controllable devices, for example by using a keychain remote or by using the web or mobile portal. . . . A POSITA would have understood based upon their own knowledge and the features of the iControl system, that control devices, like a mobile phone or keychain remote, would have to be registered with the cloud-based service in order for the control devices to be able to access and control the controllable devices.

(D.I. 217-1, Ex. 12 ¶ 572; *see also id.* ¶ 625 (providing the same opinion for the uControl system)). Based on these paragraphs, the Magistrate Judge noted, "Dr. Villasenor offers only a conclusory opinion suggesting that a person of ordinary skill would understand that these 'control devices' are registered with a cloud-based service, relying on documents that show cell phone or Internet connectivity without indicating registration with a cloud-based service." (D.I. 267 at 44–45). Elsewhere in Dr. Villasenor's opinion, however, he gives more detail regarding why a POSITA would understand the keychain remotes and key fobs to be registered with a

14

cloud-based service. Under Dr. Villasenor's theory, the enrollment process results in registration with a cloud-based service. (*E.g.*, D.I. 217-1, Ex. 13 ¶ 362). As Dr. Villasenor summarizes in his reply:

> [T]he iControl system discloses that the enrollment process for controllable devices includes that those devices send identifiers to the back-end servers. A POSITA would have understood that the procedure for enrolling devices in the iControl system is equally applicable to controllable devices and control devices, which would allow the system to track which control and controllable devices a customer has connected to their system and would allow the customer remote access and control of a controllable device. A POSITA would have appreciated that a device identifier from a control device would be necessary to enroll and differentiate the control devices within the system.

(D.I. 217-1, Ex. 13 ¶ 358 (citations omitted); *see also id.* ¶ 398 (giving the same opinion for the uControl system)).

The Magistrate Judge also relied on the deposition testimony of Jim Kitchen, one of the founders of uControl, to find "the evidence confirms that these 'control device' features of the iControl and uControl systems enabled simple functionality and were not cloud-based devices." (D.I. 267 at 45). Mr. Kitchen's testimony included:

> Q. So the key fob wasn't – it wasn't like a cloud-based device. It was kind of more tied to the touchscreen itself, correct?
> A. It is – yeah, it was paired with the touchscreen's Zigbee network in the home. Again, just – just like all the other sensors . . .

(D.I. 252-1, Ex. 71 at 30:4–9). Comcast contests the "cloud-based device" language, arguing that the claims do not require a "cloud-based device" but only that the device be registered with a cloud-based service. (D.I. 273 at 10). I agree with Comcast. Furthermore, the deposition question was compound: (1) whether the key fob "wasn't like a cloud-based device," and (2) whether the key fob "was kind of more tied to the touchscreen itself." Mr. Kitchen only clearly answered the second inquiry. I do not think Mr. Kitchen's answer sheds much light on whether the device was registered with a cloud-based service, as required by the claims.

15

Viewed as a whole, Mr. Kitchen's testimony could lend support to Dr. Villasenor's opinion. Mr. Kitchen testified that the key fob "was paired with the system the same way any other Zigbee system was paired, so similar to the pairing process of a door/window or a motion sensor."[3] (D.I. 252-1 Ex. 71 at 29:18–20). Dr. Villasenor opines that "sensors" are "controllable devices." (*See* D.I. 217-1, Ex. 12 ¶ 554). As explained above, Dr. Villasenor's theory is that a POSITA would have understood that control devices were enrolled in the same way as controllable devices. (*See also id.* ¶ 569). Mr. Kitchen's testimony that control devices and controllable devices were paired using a "similar" process lends support to Dr. Villasenor's theory. Thus, I will sustain Comcast's objection to the Magistrate Judge's recommendation that there is no disputed fact that the Enrollment Patent is not invalid over the iControl and uControl systems.

Comcast also asserts that iControl and uControl apps running on smartphones qualify as control devices. Since I will not allow NexStep to advance the infringement theory based on the Home App running on a smartphone, I will not allow Comcast to advance the invalidity theory based on the iControl and uControl apps operating on a smartphone. *See 01Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742-43 (Fed. Cir. 2018).

## IV. CONCLUSION

An appropriate order will issue.

---

[3] Comcast's expert Dr. Reinman explains that "ZigBee" is a type of communication protocol "intended for use with battery-powered devices." (D.I. 217-1, Ex. 7 ¶ 39).