IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEXSTEP, INC, <br><br> Plaintiff, <br><br> v. <br><br> COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Defendant. | Civil Action No. 19-1031-RGA |

MEMORANDUM OPINION

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Paul J. Andre, Lisa Kobialka, James Hannah, KRAMER LEVIN NAFTALIS & FRANKEL LLP, Menlo Park, CA; Jonathan S. Caplan, Aaron M. Frankel, Marcus A. Colucci, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, NY;

    Attorneys for Plaintiff.

Jack B. Blumenfeld, Brian P. Egan, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; William F. Lee, Sarah B. Petty, Kate Saxton, WILMER CUTLER PICKERING HALE AND DORR LLP, Boston, MA; Amy Kreiger Wigmore, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C.; Mary (Mindy) V. Sooter, Nora Q.E. Passamaneck, WILMER CUTLER PICKERING HALE AND DORR LLP, Denver, CO;

    Attorneys for Defendant.

May 12, 2022

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me are Plaintiff's Renewed Motion for Judgment as a Matter of Law (D.I. 353) and Defendant's Post-Judgment Motion Under Fed. R. Civ. P. 50(b) and 59 (D.I. 350).  I have considered the parties' briefing.  (D.I. 351, 354, 357, 358, 360, 362).  For the following reasons, NexStep's motion is DENIED and Comcast's motion is GRANTED-IN-PART.

## I.     BACKGROUND

NexStep sued Comcast for infringement of six patents.  (D.I. 1).  On September 20–23, 2022, NexStep tried two patents, which it refers to as the "Customer Troubleshooting" patents, to a jury.  (D.I. 346–49).  The jury found that (1) Comcast did not literally infringe any of the four asserted claims, (2) Comcast infringed the three asserted claims of U.S. Patent No. 8,280,009 ("the '009 patent") under the doctrine of equivalents, and (3) the asserted claims of the '009 patent were not proven invalid.  (D.I. 331).  Each party properly moved for judgment at a matter of law ("JMOL") pursuant to Federal Rule of Civil Procedure 50(a) and now renews the motion under Rule 50(b).  (D.I. 327, 329, 350, 353).  Comcast also moves in the alternative for a new trial under Rule 59.  (D.I. 350).

NexStep seeks JMOL that Comcast literally infringes the asserted claims of the '009 patent.  (D.I. 354 at 1).  Comcast seeks JMOL of noninfringement under the doctrine of equivalents (or in the alternative a new trial), JMOL of no damages, and—should I uphold the infringement verdict—JMOL of invalidity.  (D.I. 351 at 1).

## II.    LEGAL STANDARD

### A.  Judgment as a Matter of Law

Judgment as a matter of law is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue.  Fed. R. Civ. P.

2

50(a)(1). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, 'granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).

"To prevail on a renewed motion for JMOL following a jury trial, a party must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied by the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (cleaned up). "'Substantial' evidence is such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984).

In assessing the sufficiency of the evidence, the Court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor and, in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). The Court may "not determine the credibility of the witnesses [nor] substitute its choice for that of the jury between conflicting elements in the evidence." *Perkin-Elmer*, 732 F.2d at 893. Rather, the Court must determine whether the evidence supports the jury's verdict. *See Dawn Equip. Co. v. Ky. Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998); 9B *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2524 (3d ed. 2008) ("The question is not whether there is literally no evidence supporting the party against

whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party.").

Where the moving party bears the burden of proof, the Third Circuit applies a different standard. This standard "requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (quoting *Mihalchak v. Am. Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959)). The Court "'must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.'" *Id.* at 1171 (quoting *Mihalchak*, 266 F.2d at 877).

## B. New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) provides, "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing district court's grant or denial of new trial motion under the "abuse of discretion" standard). Although the standard for granting a new trial is less rigorous than the standard for granting judgment as a matter of law—in that the Court need not view the evidence in the light most favorable to the verdict winner—a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352–53.

### III.     DISCUSSION

#### A.  Literal Infringement

NexStep moves for JMOL that Comcast's My Account app literally infringes the three asserted claims (claims 1, 16, and 22) of the '009 patent.  (D.I. 354 at 1).   All asserted claims require a "home gateway" to perform four specific steps "responsive to a single action performed by the user."  For example, claim 1 states:

> A method of initiating a support session for a consumer device using a concierge device, the method including:
>
>> associating the concierge device with a selected consumer device;
>>
>> responsive to a single action performed by a user, the concierge device communicating with a home gateway, including
>>
>> causing the home gateway to buffer consumer device identification information for the selected consumer device and determine a support center for a support session; and
>>
>> causing the home gateway to initiate the support session for the consumer device and to forward automatically the consumer device identification information during the support session, thereby allowing the support session either
>>
>>> to bypass an automated attendant or interactive voice recognition system or
>>>
>>> to initiate an automated support protocol.

'009 Patent, cl. 1.  The "single action" claim limitation was not construed and is therefore given its plain and ordinary meaning.  *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (articulating a "heavy presumption" that claim terms have its "ordinary and customary meaning").  The "concierge device" is construed as "A device including functionality for the remote control of at least one consumer device and that meets the other claim requirements."  (D.I. 113 at 25).

NexStep points to three scenarios where a single action causes all four required steps and details the evidence presented at trial to support this contention.  (*Id.* at 4–5, 15–16).  NexStep must do more than show that substantial evidence supports its position.  There must be

"insufficient evidence for permitting any different finding." *Fireman's Fund*, 540 F.2d at 1177. I do not think that NexStep has shown that there is insufficient evidence to support the jury's verdict of no literal infringement.

NexStep claims to have "provided unrebutted evidence that under multiple scenarios, a single tap of the screen, which is undisputedly a single action, causes all of the claimed actions to be automatically performed, thereby satisfying that Single Action Element." (D.I. 354 at 6). Comcast responds that NexStep's evidence was indeed rebutted by the testimony of Mr. Karinshak, Comcast's Chief Customer Experience Officer, and Dr. Villasenor, Comcast's noninfringement expert. (D.I. 357 at 3).

Comcast's evidence was directed to two independent bases upon which the jury could find that infringement was not proven. First, that there was no "single action" that performed all four required steps—"rather, to the extent those steps are performed at all, they are performed in response to multiple separate user actions." (*Id.*). Second, there is no "determin[ation] of a support center" as required by the claims because "each of the My Account app processes addressed in Dr. Selker's testimony sends requests to a single server." (*Id.*).

NexStep argues, "on cross-examination, Comcast's corporate representative and technical experts admitted that only a single tap—which is undisputedly a single action—is needed to trigger the performance of every claimed action." (D.I. 354 at 2). I do not think the record supports this. At most, Comcast's witnesses admitted that the "single actions" in NexStep's infringement scenarios are indeed each a "single action." (D.I. 354 at 16). NexStep does not point to concessions that, "responsive to [those] single action[s]," the home gateway performs the four required steps. '009 Patent, cl. 1.

The testimony offered by Comcast's witnesses supports the jury's verdict of no literal infringement.  Mr. Karinshak provided fact testimony regarding the operation of the My Account app.  Comcast argues that his testimony provided substantial evidence that there is no single user action that both "initiate[s] a support session" and "determine[s] a support center," as required by the asserted claims.  (D.I. 357 at 7).

NexStep attacks Mr. Karinshak's testimony because he "admitted that he did not know the technical details of how the My Account App works." (D.I. 354 at 6).  Mr. Karinshak is Comcast's Chief Customer Experience officer and is "responsible for looking across the company to make sure we're providing the best possible experience for all of our customers and across all of our products and services."  (D.I. 347 at 461:19–22).  Based on his role and experience, a reasonable jury could credit Mr. Karinshak's testimony regarding the functionality of the accused app.

NexStep also argues that Mr. Karinshak's testimony wrongly focused on "completion of a troubleshooting protocol" or "connection to a live agent," neither of which is required by the claims.  (D.I. 362 at 3).  Mr. Karinshak walked through user workflows and explained that for each scenario, the Xfinity Assistant feature only connects a user to a live agent several user actions after the customer began their support session.  (D.I. 347 at 472–83).  Drawing all reasonable inferences in Comcast's favor, the testimony regarding connecting with a live agent is relevant to the "determinat[ion of] a support center" claim limitation.  (D.I. 357 at 6).  For another user scenario involving a set-top box, Mr. Karinshak testified that it took seven user actions to "complete the troubleshooting process."  (D.I. 347 at 497:15–17).  During the set-top box scenario, Mr. Karinshak never described connecting to a live agent or a support center.  (*Id.* at 484-497).  Construing this testimony in the light most favorable to Comcast, it is a reasonable

inference that the set-top box scenario does not include "determinat[ion of] a support center" as required by the claims.

Comcast's expert witness on noninfringement, Dr. Villasenor, provided methodical testimony regarding Dr. Selker's infringement scenarios. For each scenario, Dr. Villasenor walked through each step of the user's experience and testified that each user action did not cause the four events that are required by the claims. For instance, one of NexStep's infringement scenarios is when a user presses "continue." (D.I. 354 at 4). Dr. Villasenor testified:

> Q. What's the next action the user takes in this process?
>
> A. So the user will . . . read the information on the screen about tightening the cables and so on, and then the user can continue. In order to continue, the user must press continue.
>
> Q. What did you conclude about whether this action causes all required '009 events?
>
> A. It does not.

(D.I. 348 at 629:4–13). Ultimately, Dr. Villasenor testified that he did not find "any single action . . . in the Xfinity Assistant or that Dr. Selker pointed to that causes all four of the required events to occur under the '009 patent." (*Id.* at 640:1-5). I think this is substantial evidence to support the jury's finding that the accused products did not literally infringe the '009 patent. The parties put forward competing expert testimony regarding infringement. NexStep decries Dr. Villasenor's testimony as merely "*ipse dixit* conclusion" but does not raise contentions that it was unreliable and ought to have been excluded. (D.I. 362 at 5). Dr. Villasenor described the materials he considered in forming his opinions. (D.I. 348 at 603:14–604:6 (listing source code, technical documents, the products themselves, conversations with Comcast engineers, deposition testimony, and Dr. Selker's reports)). The jury was free to credit Dr. Villasenor's testimony over

8

Dr. Selker's. Thus, NexStep has not shown that it is entitled to JMOL on the issue of literal infringement.

### B. Doctrine of Equivalents

Comcast moves for JMOL of noninfringement under the doctrine of equivalents ("DOE"). "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). "[T]he difficulties and complexities of the doctrine require that evidence be presented to the jury . . . through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents." *Id.* at 1329. NexStep's expert, Dr. Selker, testified as to the function/way/result test. (D.I. 347 at 383:25–385:9). The question is whether this was "sufficient particularized testimony . . . such that a reasonable jury could have made an equivalency finding." *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 967 (Fed. Cir. 2018).

> At trial, the jury heard the following testimony from Dr. Selker regarding DOE:
>
> Q. In terms of the elements of the '009 patent, can you explain why the – I understand that you believe that a single action is met literally, but can you explain why at the very least the single action element is met by the doctrine of equivalents? And the –
>
> A. When you – when you go to debug your – to diagnose your device, you're going through a single action. It might be that there's several button presses along the way, but I say that's the same function. And that it's going to have the same purpose which is what I was talking about, I hope. I don't know if I'm –
>
> Q. No, you're doing fine, Doctor. Keep going.

9

> A. I was confused by that.
>
> Q. It's the same function – I'll just help you out here.  So it has the same function and it's a legal doctrine and so we have to go through it.  Okay?  Can you explain to the jury why it's done in substantially the same way?
>
> A. Well, it's done in the same way in that the stuff is all kept up in the cloud for the purpose of doing this and it's going to go and diagnose it using the home gateway and it's going to solve my problem without me having to go through and put in my model numbers and all of that stuff.  So it's really literally using – using this Concierge as more of a – somebody to give authorization than to do the actual function.  I'm not down there in the machine room, you know, putting instructions into a computer to make it do each of these things.
>
> Q. And can you explain why the single action achieves substantially the same result?
>
> A. Yeah, the result is that this thing is going to be restarted, refreshed, whatever is going to have to happen with it without me having to tangle with understanding all of the issues of being an IT professional or whatever it takes to get this thing up.  And so it's going to come with a result of my modem working, you know.

(D.I. 347 at 383:25–385:9).

Comcast argues that Dr. Selker's testimony was "conclusory and insufficient" and "untethered from the claim language and the details of the operation of the My Account app." (D.I. 351 at 7).  I agree.  Dr. Selker's testimony is too vague to support the jury's verdict.

The Federal Circuit has held, "*a patentee must ... provide particularized testimony and linking argument* as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents." *AquaTex*, 479 F.3d at 1328 (quoting *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)).  Dr. Selker's DOE testimony suffers from a lack of precision regarding both the claim limitations and the purported equivalent.  The fatal flaw in Dr. Selker's testimony, however, is failure to provide a linking argument.  While the vagueness regarding the claim limitations and purported equivalent are possibly supplemented with other evidence from

10

the case, NexStep has simply not met its burden of providing the jury with a linking argument, and for that reason the jury's verdict cannot be sustained.

NexStep argues that the jury's verdict is supported by substantial evidence, both from Dr. Selker's DOE testimony and his lengthy and detailed testimony regarding literal infringement. (D.I. 358 at 5–7). Dr. Selker's literal infringement testimony somewhat cures the vagueness of his DOE claim limitation testimony. While "[t]he evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement," *Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan*, 873 F.2d 1422, 1425 (Fed. Cir. 1989), the caselaw makes clear that the plaintiff has flexibility in presenting its evidence on the doctrine of equivalents. *See WCM Indus.*, 721 F. App'x at 966 ("We agree . . . that our precedent does not require opinion testimony, and certainly does not require expert opinion testimony, for a finding of equivalence. Rather, '[p]roof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art.'" (citing *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 609))). Thus, Dr. Selker's literal infringement testimony can support NexStep's DOE contentions.

Assuming for the purposes of this opinion that Dr. Selker's prior testimony and other evidence in the case supply facts regarding each claim limitation, Dr. Selker's DOE testimony still fails to describe what steps in Comcast's app are equivalent to the "single action" limitation. He only mentions "several button presses." Without particularized testimony on what exactly the purported equivalent is, it is difficult to understand how the equivalent can perform substantially the same function in substantially the same way with substantially the same result as the claimed device.

Drawing the inference in NexStep's favor, it is possible that the jury gleaned enough about the accused My Account app through other evidence at trial to identify what "several button presses" they found to be equivalent. "While *Lear Siegler* does not go so far as to require recitation of the magic words 'function', 'way', and 'result', we think that it at least requires the *evidence* to establish *what* the function, way, and result of *both* the claimed device and the accused device are, and *why* those functions, ways, and results are substantially the same." *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1327 n.5 (Fed. Cir. 1991). Here, Dr. Selker failed to identify "*what* the function" of "*both* the claimed device and accused device are." *Id. Malta* requires "evidence," not necessarily testimony from a person of skill in the art (a "POSA"), and it is possible, though NexStep does not argue this point, that the jury had enough of an understanding of Comcast's accused devices to piece together on their own the function, way, and result of the accused devices.[1]

Even if the rest of the evidence sufficiently established the claim limitations and the purported equivalent, NexStep's presentation failed to "provide particularized testimony and linking argument." *AquaTex*, 479 F.3d at 1328. "Absent the proper *Graver Tank* context, i.e., a showing of how plaintiff compares the function, means, and result of its claimed invention with those of the accused device, a jury is more or less put to sea without guiding charts when called upon to determine infringement under the doctrine." *Lear Siegler*, 873 F.2d at 1425–26.

Dr. Selker failed to provide the requisite linking argument. The function of the "single action" limitation is to cause the "home gateway" to perform four steps. Dr. Selker testified that

---

[1] Even if this is the case for some of the accused devices, Comcast contends, "Dr. Selker presented no evidence that the 'several button presses' he referred to even ***exist*** in the My Account functionality of Comcast set-top boxes." (D.I. 351 at 8). I do not need to decide the issue because I agree with Comcast on other grounds.

"several button presses along the way" is the same function. (D.I. 347 at 384:7–8). The extent of his support is: "I say that's the same function." (*Id.*). This is not testimony from a POSA "showing how plaintiff compares" the function of the claimed device and the accused device. *Lear Siegler*, 873 F.2d at 1425.

The Federal Circuit rejected a similarly conclusory statement of function in *Malta v. Schulmerich Carillons, Inc.* 952 F. 2d 1320 (Fed. Cir. 1991). *Malta* was a case about musical handbells. *Id.* at 1321. The asserted patent claimed "striking buttons," a feature which allowed the player to quickly adjust the volume of the bell. *Id.* at 1321–22. The plaintiff's expert testified that the accused handbells had "a plurality of buttons, there's three sets, *buttons or the equivalent thereof* . . ." *Id.* at 1326. Plaintiff's expert further testified:

> Q: Do you find those buttons in [the accused] structure?
>
> A: Yes, there are buttons per se here, the felt, the opposed felt certainly are visible buttons. The opposed locations or surfaces which are related to these long slots are likewise buttons and the opposed pair of solid portions again are buttons.
>
> Q: Do you mean they're buttons or function like buttons?
>
> A: They function like buttons....

*Id*. The Federal Circuit held, "Mr. Malta's offhand and conclusory statements ('buttons or the equivalent thereof' and 'They function like buttons') are not sufficiently particularized evidence. In short, with little guidance, the jury was left to its own imagination on the technical issue of equivalency." *Id.* at 1327.

Dr. Selker's "I say that's the same function" provides about the same amount of detail as the *Malta* plaintiff's expert. It is true that Dr. Selker provides more detail regarding the other two prongs of the function/way/result test. At no point, however, did his testimony cure the fatal flaw of failure to link the functions.

Regarding the way prong, Dr. Selker testified:

> Well, it's done in the same way in that the stuff is all kept up in the cloud for the purpose of doing this and it's going to go and diagnose it using the home gateway and it's going to solve my problem without me having to go through and put in my model numbers and all of that stuff. So it's really literally using – using this Concierge as more of a – somebody to give authorization than to do the actual function. I'm not down there in the machine room, you know, putting instructions into a computer to make it do each of these things.

(D.I. 347 at 384:17–385:1). To the extent this word salad communicated anything to the jury, it did not provide particularized testimony or a linking argument for why several button presses perform the claimed method in the same way as the claimed single action.

For the result prong, Dr. Selker testified, "the result is that this thing is going to be restarted, refreshed, whatever is going to have to happen with it without me having to tangle with understanding all of the issues of being an IT professional or whatever it takes to get this thing up." (*Id.* at 385:4–9). Comcast argues, "the result of the *claimed* 'single action' is that the 'home gateway' performs four specific steps. Dr. Selker's DOE testimony did not address that result at all." (D.I. 351 at 10 (citations omitted)). Because Dr. Selker's testimony regarding the result is untethered from the claim language, it amounts to little more than "generalized testimony as to the overall similarity between the claims and the accused infringer's product." *Texas Instr.*, 90 F. 3d at 1567. In short, Dr. Selker's DOE testimony does not provide the requisite "particularized testimony and linking argument."

Comcast points to several other reasons why I should grant JMOL of noninfringement under the DOE. (D.I. 351 at 2–14). Because I agree that the verdict is not supported by substantial evidence, I need not address Comcast's other arguments.

### C. Judgment of No Damages

Comcast argues that I should grant judgment of no damages because NexStep did not present evidence of damages at the trial. (D.I. 351 at 14–15). NexStep responds, "Comcast's request for a judgment of no damages is not available under either Rule 50(b) or 59, upon which

14

Comcast moves." (D.I. 358 at 15). I agree. Rule 50 allows for judgment on matters submitted to the jury. NexStep was not "fully heard" on the issue of damages because I excluded NexStep's damages evidence prior to trial. Fed. R. Civ. P. 50(a)(1); D.I. 352-1, Ex. A. Thus, I will deny Comcast's motion for judgment of no damages and judgment of no liability for infringement.

### D. Invalidity

Comcast requests JMOL of invalidity "if the court upholds the verdict of infringement of the '009 patent under the DOE." (D.I. 351 at 15; D.I. 360 at 8). Because I find that the infringement verdict is not supported by substantial evidence, I need not rule on Comcast's invalidity contentions.

### E. New Trial

For the foregoing reasons, I will grant Comcast's motion for judgment as a matter of law. "If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c)(1). Comcast argues that a new trial is warranted because Dr. Selker's opinions are "inconsistent with the plain meaning of the word 'single'" and thus "should have been excluded under *Daubert*." (D.I. 351 at 13).

The Magistrate Judge recommended that I deny Comcast's *Daubert* motion on this issue. (D.I. 267 at 45–46). Comcast did not object to this recommendation. (D.I. 273; D.I. 351 at 13 n.6). Thus, I find that Comcast's *Daubert* argument is waived. *See Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 374 (D. Del. 2014) ("The failure to object [to a Magistrate Judge's recommendation] may result in waiver of the right to further review of the

recommendation or determination in the District Court by a District Judge."). I will therefore conditionally deny Comcast's motion for a new trial. (D.I. 350).

## IV. CONCLUSION

An appropriate order will issue.